1  THOMAS M. MCINERNEY, CA Bar No. 162055
   thomas.mcinerney@ogletree.com
2  GRAHAM M. HELM, CA Bar No. 316002
   graham.helm@ogletree.com
3  OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
   One Embarcadero Center, Suite 900
4  San Francisco, CA  94111
   Telephone:    415-442-4810
5  Facsimile:    415-442-4870

6  Attorneys for Defendant
   NXP USA, Inc. (erroneously sued as
7  NXP SEMICONDUCTORS)

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10

11  ANTOINETTE DICKENS,                    Case No. 5:23-cv-01073-BLF

12              Plaintiff,                 **DEFENDANT NXP USA, INC.'S NOTICE
                                           OF MOTION AND MOTION TO DISMISS**
13       v.                                **UNDER F.R.C.P. 12(B)(6) AND *FORUM
                                           NON CONVENIENS*; MEMORANDUM OF**
14  NXP SEMICONDUCTORS,                    **POINTS AND AUTHORITIES IN SUPPORT
                                           THEREOF**
15              Defendant.
                                           Date:         November 2, 2023
16                                         Time:         9:00 a.m.
                                           Location:     Via Remote Appearance
17                                                        Courtroom 3, San Jose Courthouse

18
                                           Complaint Filed: March 9, 2023
19                                         Trial Date:      None Set
                                           Judge:           Hon. Beth L. Freeman
20

21

22

23

24

25

26

27

28

**TO PLAINTIFF ANTOINETTE DICKENS AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 2, 2023, at 9:00 a.m. or as soon thereafter as the matter may be heard via Zoom before the Honorable Beth L. Freeman, in the United States District Court for the Northern District of California at the San Jose Courthouse, Courtroom 3, 280 South 1st Street, San Jose, California, 95113, defendant NXP USA, Inc. (erroneously sued as NXP SEMICONDUCTORS) ("NXP USA" or "defendant") will, and hereby does, move this Court for an order to dismiss plaintiff Antoinette Dickens' Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the doctrine of *forum non conveniens*.  NXP USA moves to dismiss Dickens' claims for failing to state a claim on the following grounds:

NXP USA seeks dismissal of **Counts One through Ten** brought under 42 U.S.C. § 1981 ("Section 1981") for hostile work environment based on race, disparate treatment based on race, denial of promotion based on race, disparate pay based on race, and retaliation based on race because Section 1981 cannot be extraterritorially applied and does not govern conduct which allegedly occurred outside of the United States when Plaintiff did not live in the United States.

NXP USA seeks dismissal of **Counts One through Fifteen** brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") for hostile work environment based on race, disparate treatment based on race, denial of promotion based on race, disparate pay based on race, retaliation based on race, hostile work environment based on sex, disparate treatment based on sex, failure to promote based on sex, disparate pay based on sex, and retaliation based on sex because Title VII exempts from its coverage the foreign operations of an employer that is a foreign person not controlled by an American employer.  The Complaint fails to allege necessary facts that NXP USA employed Dickens and the Complaint does not allege any facts that NXP USA controlled the foreign operations of her employer non-party NXP Semiconductors Germany GmbH ("NXP Germany").  Thus, Counts One through Fifteen in the Complaint fail to state a claim.

NXP USA also moved to dismiss Dickens' entire Complaint based on *forum non conveniens* because Germany provides an adequate alternative forum for Dickens to bring her claims, and private and public interests favor dismissal.

This Motion is based on this Notice of Motion and the below Memorandum of Points and Authorities; and the accompanying Declarations of Graham M. Helm, Dr. Ulrike Conradi, Philippe Monitillet, and Annekathrin Wilkens, and Request for Judicial Notice and the exhibits thereto filed herewith, the proposed Order lodged herewith; the pleadings and papers on file with the Court in this action; and such other evidence or argument as may be presented to the Court at or prior to the hearing of the Motion.

DATED:  May 26, 2023                    OGLETREE, DEAKINS, NASH, SMOAK &
                                        STEWART, P.C.


                                        By:  /s/ Graham M. Helm
                                             THOMAS M. MCINERNEY
                                             GRAHAM M. HELM
                                             Attorneys for Defendant
                                             NXP USA, Inc. (erroneously sued as
                                             NXP SEMICONDUCTORS)

## **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................1

II.  SUMMARY OF FACTS ......................................................................................2

    A.   Dickens Works in Germany for NXP Germany, a Foreign
        Corporation Based in Germany ...............................................................2

    B.   Dickens Claims Her Managers in Germany Harassed, Discriminated,
        and Retaliated Against Her ......................................................................3

    C.   The Relevant Witnesses and Evidence Are Located in Europe .................5

    D.   Dickens Filed Her Complaint Based on Alleged Conduct Occurring in
        Europe While She Lived and Worked in Germany ...................................6

III. LEGAL ARGUMENT ........................................................................................6

    A.   The Complaint Must be Dismissed for Failure to State a Claim Under
        Rule 12 ...................................................................................................6

        1.   Legal Standard ..............................................................................6

        2.   Dickens Cannot State a Claim Under Section 1981 (Counts
            One Through Ten) ........................................................................8

        3.   Dickens Cannot State a Claim Under Title VII (Counts One
            Through Fifteen).........................................................................11

            i.    NXP USA Never Employed Dickens and NXP
                  Germany is Not an American Employer .......................................11

            ii.   Dickens Does Not, and Cannot, Allege NXP USA
                  and NXP Germany are an Integrated Enterprise ..........................13

    B.   Dismissal is Appropriate Based on *Forum Non Conveniens* ..................14

        1.   Legal Standard ............................................................................14

        2.   Germany Provides an Adequate Alternative Forum .....................15

        3.   Private and Public Interests Favor Dismissal ...............................19

IV.  CONCLUSION .................................................................................................23

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS UNDER F.R.C.P. 12(B)(6) AND
*FORUM NON CONVENIENS*

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**CASES**

4

5
*Alltrade, Inc., v. Uniweld Products, Inc.*,
    946 F.2d 622 (9th Cir. 1991) ........................................................................................15

6
*ARC Ecology v. U.S. Dep't of Air Force*,
    411 F.3d 1092 (9th Cir. 2005) .........................................................................................9

7

8
*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................................................7

9

10
*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................................................7

11
*Buchanan v. Watkins & Letofsky, LLP*,
    30 F.4th 874 (N.D. Cal. 2022)..................................................................................12, 13

12

13
*Ridgway v. Phillips*,
    383 F. Supp. 3d 938 (N.D. Cal. 2019)..........................................................................20

14

15
*Carijano v. Occidental Petroleum Corp.*,
    643 F.3d 1216 (9th Cir. 2011) .......................................................................................15

16
*Ceramic Corp. of America v. Inka Maritime Corp.*,
    1 F.3d 947 (9th Cir. 1993) ......................................................................................15, 16

17

18
*Chateau Des Charmes Wines, Ltd. v. Sabate USA, Inc.*,
    No. C-01-4203 MMC, 2003 WL 22682483 (N.D. Cal. Nov. 10, 2003) ....................20

19

20
*Chiu v. Mann*,
    No. C 02-4590 VRW, 2003 WL 716247 (N.D. Cal. Feb. 24, 2003)..........................13

21
*Concat LP v. Unilever, PLC*,
    350 F. Supp. 2d 796 (N.D. Cal. 2004)..........................................................................15

22

23
*Contact Lumber Co. v. P.T. Moges Shipping Co.*,
    918 F.2d 1446 (9th Cir. 1990) .......................................................................................16

24

25
*Coto Settlement v. Eisenberg*,
    593 F.3d 1031 (9th Cir. 2010) .........................................................................................7

26
*Davis v. Inmar, Inc.*,
    No. 21-CV-03779 SBA, 2022 WL 3722122, at *4 (N.D. Cal. Aug. 29, 2022) ............9

27

28
*Dawson v. One Call Med., Inc.*,
    No. 320CV01188LABKSC, 2021 WL 5513516 (S.D. Cal. Sept. 21, 2021) ..........7, 12

*EEOC v. Arabian American Oil Co.*,
   499 U.S. 244 (1991) ...............................................................................................8, 11

*Epstein v. Washington Energy Co.*,
   83 F.3d 1136 (9th Cir. 1996) ..........................................................................................7

*Erickson v. Pardus*,
   551 U.S. 89 (2007) (per curiam) .....................................................................................6

*Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*,
   545 F.3d 357 (6th Cir. 2008) .........................................................................................17

*Force v. Advanced Structural Techs., Inc.*,
   No. CV202219DMGAGRX, 2020 WL 4539026 (C.D. Cal. Aug. 6, 2020) ................................7

*Gates Learjet Corp. v. Jensen*,
   743 F.2d 1325 (9th Cir. 1984) .......................................................................................20

*Gulaid v. CH2M Hill, Inc.*,
   No. 15-CV-04824-JST, 2016 WL 5673144 (N.D. Cal. Oct. 3, 2016) ..................................9, 10

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1947) .................................................................................................2, 15

*Johnson v. Fed. Home Loan Mortgage Corp.*,
   793 F.3d 1005 (9th Cir. 2015) .........................................................................................7

*Johnson v. LKQ Foster Auto Parts, Inc.*,
   No. 2:15-CV-02413-KJM-AC, 2016 WL 3418341 (E.D. Cal. June 22, 2016)......................8, 12

*JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd.*,
   536 U.S. 88 (2002) ......................................................................................................12

*Kang v. U. Lim America, Inc.*,
   296 F.3d 810 (N.D. Cal. 2002) ..................................................................................13, 14

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ...........................................................................................8

*Kleiner v. Spinal Kinetics, Inc.*,
   No. 5:15-CV-02179-EJD, 2016 WL 1565544 (N.D. Cal. Apr. 19, 2016) ......................... *passim*

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) .........................................................................................7

*Laird v. Capital Cities/ABC, Inc.*,
   68 Cal.App.4th 727 (1998) ............................................................................................14

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS UNDER F.R.C.P. 12(B)(6) AND
*FORUM NON CONVENIENS*

*Lavera Skin Care N. Am., Inc. v. Laverana GmbH & Co. KG*,
   No. 2:13-CV-02311-RSM, 2014 WL 7338739 (W.D. Wash. Dec. 19, 2014),
   *aff'd*, 696 F. App'x 837 (9th Cir. 2017) ...................................................................22

*Lazy Y Ranch Ltd. v. Behrens*,
   546 F.3d 580 (9th Cir. 2008) ...................................................................................8

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001), overruled on other grounds by *Galbraith v.
   County of Santa Clara*, 307 F.3d 119 (9th Cir. 2002) ............................................7

*Leetsch v. Freedman*,
   260 F.3d 1100 (9th Cir. 2001) ......................................................16, 17, 19, 22

*Lockman Found. v. Evangelical Alliance Mission*,
   930 F.2d 764 (9th Cir. 1991) ..................................................................................19

*Lueck v. Sundstrand Corp.*,
   236 F.3d 1137 (9th Cir. 2001) ................................................................................15

*Luna v. Universal Studio City Prods. LLLP*,
   No. CV 12-9286 PSG (SSX), 2013 WL 12308198 (C.D. Cal. Aug. 27, 2013) .........13

*Mercier v. Sheraton Int'l, Inc.*,
   981 F.2d 1345 (1st Cir. 1992) .................................................................................16

*Meridian Seafood Prod., Inc. v. Fianzas Monterrey, S.A.*,
   149 F. Supp. 2d 1234 (S.D. Cal. 2001) ......................................................15, 19, 20

*Napear v. Bonneville Int'l Corp.*,
   No. 2:21-CV-01956-DAD-DB, 2023 WL 3025258 (E.D. Cal. Apr. 20, 2023) ...........7

*Nibirutech Ltd v. Jang*,
   75 F. Supp. 3d 1076 (N.D. Cal. 2014) ...............................................................15, 16

*Ofori-Tenkorang v. Am. Int'l Grp., Inc.*,
   460 F.3d 296 (2d Cir. 2006) .................................................................................1, 9

*Oto v. Airline Training Ctr. Arizona, Inc.*,
   247 F. Supp. 3d 1098 (D. Ariz. 2017) .....................................................16, 19, 22

*Perez v. DXC Tech. Servs. LLC*,
   No. 17-CV-06066-BLF, 2020 WL 5517276 (N.D. Cal. Sept. 14, 2020) ...................13

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) .......................................................................................2, 15, 16

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) ................................................................................18

*Ravelo Monegro v. Rosa*,
   211 F.3d 509 (9th Cir. 2000), *cert. denied sub nom San Francisco Baseball*
   *Assocs. L.P. v. Monegro*, 531 U.S. 1112 (2001) .......................................................15

*Sale v. Haitian Centers Council, Inc.*,
   509 U.S. 155 (1993) ...............................................................................................8

*Shroyer v. New Cingular Wireless Servs., Inc.*,
   622 F.3d 1035 (9th Cir. 2010) ...............................................................................6

*Smith v. United States*,
   507 U.S. 197 (1993) ...............................................................................................8

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*,
   482 U.S. 522 (1987) .............................................................................................21

*Steckman v. Hart Brewing Inc.*,
   143 F.3d 1293 (9th Cir. 1998) ...............................................................................8

*Tat Tohumculuk, A.S. v. H.J. Heinz Co.*,
   No. CIV 13-0773 WBS KJN, 2013 WL 6070483 (E.D. Cal. Nov. 14, 2013) .............................9

*Tuazon v. R.J. Reynolds Tobacco Co.*,
   433 F.3d 1163 (9th Cir. 2006) .......................................................................16, 19

*U.S. Vestor, LLC v. Biodata Info. Tech. AG*,
   290 F. Supp. 2d 1057 (N.D. Cal. 2003) ............................................................ *passim*

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ...............................................................................8

*Vivendi SA v. T-Mobile USA Inc.*,
   586 F.3d 689 (9th Cir. 2009) .............................................................................22

*Western Mining Counsel v. Watt*,
   643 F.2d 618 (9th Cir. 1981) ...............................................................................7

*WesternGeco LLC v. ION Geophysical Corporation*,
   138 S. Ct. 2129 (2018) ......................................................................................8, 11

**STATUTES**

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") ................. *passim*

   § 2000e-1 ...........................................................................................................11

   § 2000e-1(c)(2) ...............................................................................................11, 13

   § 2000e-1(c)(3)(A)-(D) ........................................................................................13

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS UNDER F.R.C.P. 12(B)(6) AND
*FORUM NON CONVENIENS*

§ 2000e-2(a) ........................................................................................................11

§ 2000e-3(a) ........................................................................................................11

42 U.S.C. § 1981 ("Section 1981") .......................................................... *passim*

§ 1981(a) .......................................................................................................1, 9

Pub. L. 102-166

§ 109(a) ...............................................................................................................11

§ 109(b) ...............................................................................................................11

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure

Rule 12................................................................................................................6

Rule 12(b)(6) .................................................................................................6, 7

136 Cong. Rec. S15,235 (daily ed. Oct. 25, 1991) (statement of Sen. Kennedy) ...........................11

Convention Done at the Hague Nov. 15, 1965; T.I.A.S. No. 6638 (Feb. 10, 1969). .......................21

**FOREIGN AUTHORITIES**

Basic Law for the Federal Republic of Germany, Art. 3, ¶¶ 2 & 3 .................................18

General Act on Equal Treatment .................................................................................18

Sections 1, 2, 3, and 7 ........................................................................................18

German Civil Code § 612a ...........................................................................................18

German Code of Civil Procedure §§ 17, 21 ...............................................................17

German Federal Data Protection Act ..........................................................................21

German Labour Court Act

§ 2 ......................................................................................................................17

§ 48 ....................................................................................................................17

German Transparency in Wage Structures Act Section 16 ..........................................18

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS UNDER F.R.C.P. 12(B)(6) AND
*FORUM NON CONVENIENS*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Antoinette Dickens, an employee of NXP Semiconductors GmbH ("NXP Germany") in Hamburg, Germany, filed this lawsuit in this district asserting employment discrimination claims under Title VII and Section 1981 against "NXP Semiconductors," a company that does not exist. Dickens, who is not a resident of California, served NXP USA, Inc. ("NXP USA"), a U.S.-based entity for which she never worked.  Despite the fact that for five years Dickens has lived and worked full-time in Germany for NXP Germany, and never for NXP USA or anywhere in the U.S. during this period, Dickens brings this lawsuit based entirely on alleged discrimination that occurred entirely in Europe while working for NXP Germany.  The Court should dismiss all of Dickens' claims because Section 1981 and Title VII do not apply to the employment claims she asserts arising from her employment in Germany, and because forcing witnesses in Europe and an improperly named affiliate to litigate her claims in California would be unreasonably inconvenient to the relevant witnesses, all of whom are in Europe.

First, Dickens impermissibly seeks extraterritorial application of Section 1981.  By its terms, Section 1981 does not apply extraterritorially outside the U.S., including to employees working overseas based on conduct alleged to have occurred outside the U.S.  42 U.S.C. § 1981(a); *Ofori-Tenkorang v. Am. Int'l Grp., Inc.*, 460 F.3d 296, 304, 307 (2d Cir. 2006).  Here, the Complaint specifically alleges that ***all*** the alleged discrimination and retaliation occurred in either Germany or the Netherlands.

Second, Title VII limits the extraterritorial application to U.S. citizens working for U.S. companies or to such work outside the U.S. for foreign companies acting as an integrated enterprise with U.S. companies.  Here, Dickens fails to allege facts—because there are none— sufficient to show that she was employed by NXP USA or that her actual employer, NXP Germany, was an integrated enterprise with NXP USA.  Dickens' employment contract with NXP Germany, incorporated by reference into the Complaint, and judicial notice of the facts conclude the opposite is true–that the two companies are separate and distinct entities.  Accordingly, the Court should dismiss all of Dickens' Section 1981 and Title VII claims.

Third, dismissal is more than warranted here based on the doctrine of forum non conveniens, as confirmed by the Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504 (1947), and *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981), because Germany is unequivocally the proper forum for Dickens' lawsuit, and the public and private interests weigh heavily in favor of dismissal. Litigating an employment dispute arising from Dickens' employment in Germany would be highly inconvenient for the parties and the witnesses, as all the relevant witnesses (including Dickens) live and work in Europe, and it would be unreasonably costly and time consuming to force all these witnesses to travel to the United States to participate in litigation involving a German-based dispute. Moreover, German courts provide Dickens with adequate remedies because she can bring her claims against actual employer NXP Germany. Indeed, the Ninth Circuit and other courts in this circuit have found that Germany provides an adequate alternative forum. For the foregoing reasons, this case should be dismissed with prejudice.

## II.    SUMMARY OF FACTS

### A.    Dickens Works in Germany for NXP Germany, a Foreign Corporation Based in Germany

Although Dickens has served NXP USA, she evasively alleges her claims against a generic and non-existent entity "NXP Semiconductors," to avoid identifying an actual entity against which it is brought. Dickens is a current employee of NXP Germany who, at all times relevant to the discrimination and retaliation claims in the Complaint, lived and worked in Hamburg, Germany. (Compl. at ¶¶ 4, 14; Declaration of Annekathrin Wilkens in Supp. Defs.' Mot. Dismiss ("Wilkens Decl."), ¶ 4, Ex. 1.) Although the complaint alleges that she had a "contractual relationship" with "Defendant," (Compl., ¶ 10) she was hired by NXP Germany pursuant to a written employment contract on January 12, 2018, with a start date of February 2, 2018. (Wilkens Decl., Ex. 1.) Dickens signed her employment contract in Hamburg. (*Id.*) Pursuant to the terms of her NXP Germany employment contract, Dickens' "place of work shall be Hamburg" and Dickens acknowledged she had "a valid residency and working permit" to work in Germany. (*Id.*) The only employing entity mentioned in Dickens' employment contract is NXP Germany.

//

Pursuant to her allegations in her Complaint, "Plaintiff reported to NXP managers in Germany" where she lived and worked.  (Compl. at ¶¶ 4, 14, 76 (Dickens alleges she "was hired…to work in the… Hamburg Office," had a "residency permit," and "currently resides and works for [NXP Germany] in its Hamburg, Germany office").)  Notably, Dickens still resides in Hamburg and continues to be employed in Hamburg, Germany.  (*Id.* at ¶ 4.)

NXP USA is a United States domestic corporation formed and registered in the State of Delaware with its headquarters in Austin, Texas.  (Request for Judicial Notice ("RJN"), Exs. 2, 3.)  As of NXP USA's most recent California Secretary of State filing in February 2023, officers Jennifer Wuamett (CEO) and Srinath Rajen (CFO) were located in the Austin office.  (RJN, Ex. 3.)  By contrast, NXP Germany is a foreign corporation registered and incorporated under the laws of Germany with its principal place of business in Hamburg, Germany.  (RJN, Exs. 4, 5.)  NXP Germany is not registered or incorporated in Delaware or California.  (RJN, Exs. 6, 7.)

No officers of NXP Germany are officers of NXP USA.  (RJN, Exs. 3, 5.)  Kurt Sievers, incorrectly spelled and identified in paragraph 4 of the Complaint as the CEO supposedly based in San Jose, California, is in fact the CEO of foreign corporation NXP Semiconductors N.V. and an employee of NXP Germany seconded to NXP Semiconductors N.V.  (RJN, Exs. 8-11.)  NXP Semiconductors N.V. is a Dutch public company with limited liability incorporated in the Netherlands with its headquarters in Eindohaven, the Netherlands, and the indirect parent company of NXP USA.   (RJN, Exs. 8, 12.)  Sievers is not located in San Jose, but works in Europe and resides in Hamburg, Germany.  (RJN, Exs. 9-11.)

**B.**  **Dickens Claims Her Managers in Germany Harassed, Discriminated, and Retaliated Against Her**

Although Dickens broadly alleges her claims "'arose' in both Germany, and in California," Dickens does not allege any facts of unlawful conduct that occurred in California.  (Compl. at ¶ 8.)  To the contrary, Dickens alleges that all of the unlawful acts upon which this action is based occurred outside of the United States while she was employed by NXP Germany.  Indeed, according to the Complaint, all of the events giving rise to her claims occurred in either NXP Germany's Hamburg office (where she was employed) or in the Netherlands.  (*Id.* at ¶¶ 4, 14, 204, 205.)

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS UNDER F.R.C.P. 12(B)(6) AND *FORUM NON CONVENIENS*; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Specifically, Dickens claims her "NXP managers in Germany"—Gordon Caffrey, John Boggie, Matthias Wagner, Gabor Hornyak, and Peter Van Disseldorp—discriminated against her, subjected her to a hostile work environment, failed to promote her, and paid her less because of her race and sex.  (Compl. at ¶¶ 4, 16, 17, 36, 94, 228 (identifying her managers); *id.* at ¶¶ 235-327 (Dickens' claims arise from the actions of her managers).)  As discussed below, all the alleged conduct began "when Plaintiff first arrived in Hamburg" where she lived and worked.  (*Id.* at ¶ 20.)

Dickens claims Caffrey and Boggie allegedly harassed her by making unwelcomed comments about Donald Trump and white supremacy "***in*** Plaintiff's ***presence***" at the Hamburg office, insulted her, and "berated Plaintiff," all in Germany.  (Compl., ¶¶ 62, 79-85, 88-90 (emphasis added).)  Wagner allegedly harassed Dickens when he allegedly "marched ***into*** Plaintiff's ***office*** and began yelling at her."  (*Id.* at ¶¶ 36, 37, 44, 241-245, 291 (emphasis added).)  Hornyak allegedly "bull[ied]" Dickens to take on additional work "a few days ***before*** Plaintiff" was scheduled to travel outside Germany to the U.S. while on "leave."  (*Id.* at ¶¶ 137, 140, 148, 149 (emphasis added).)  Hornyak allegedly "hounded" Dickens in the Hamburg office about her travel itinerary to the Netherlands, and on May 4, 2022, he flew to the Netherlands to supposedly "confront" her about her travel plans, and spoke to her there in a "hostile and aggressive" manner. (*Id.* at ¶¶ 202-205.)  Van Disseldorp, based in the Netherlands, became her manager, and he supposedly "pressured" Dickens to return from a medical leave earlier than the "recommended recovery time" from a scheduled surgery, which had been postponed due to "a major wave of respiratory illness in Germany that overwhelmed all the hospitals."  (*Id.* at ¶¶ 228, 232-233.)

Details related to allegations of a promised but undelivered promotion from Caffrey and Hornyak also occurred exclusively in Germany.  (Compl. at ¶¶ 73-74, 112-115.)  Caffrey allegedly denied Dickens a promotion ***after*** Dickens returned to work in Germany when she could not travel "[b]ecause of COVID travel restrictions were in place."  (*Id.* at ¶¶ 70, 71.)  Hornyak also allegedly denied Dickens a promotion in Germany ***before*** her vacation to Chicago.  (*Id.* at ¶¶ 139, 147, 148.)  All of these events, either explicitly or by reasonable implication based on the nature of the allegations, occurred in either Germany or the Netherlands and had no connection to the United States.

//

1   The Complaint also alleges Dickens raised complaints to a Hamburg Human Resources

2   staffer (Complaint,. at ¶ 54), the Workers' Council in Germany (*id.* at ¶¶ 103, 108, 129, 145, 152,

3   160), and the HR teams in Germany and the Netherlands (*id.* at ¶¶ 128-131, 133, 143, 153, 159-

4   162, 171-173, 186, 198-201), but Dickens finds fault with all these individuals and organizations,

5   believing they did not respond appropriately.  (*Id.* at ¶¶ 54, 59, 147, 174, 175, 183, 184, 191, 193,

6   194, 200, 201.)[1]

7   In short, all of the factual allegations involving alleged harassment and discrimination arise

8   from events occurring primarily in Hamburg, Germany, with a limited number of alleged events

9   occurring in the Netherlands.  The Complaint does not allege a single action of discrimination,

10   harassment, or retaliation occurring in the United States.

11   **C.    The Relevant Witnesses and Evidence Are Located in Europe**

12   Unsurprisingly, since Dickens' claims arise from events that occurred in Europe during her

13   employment with NXP Germany, all the relevant witnesses in this case are located overseas and

14   none were employed by NXP USA.  Dickens specifically identified 21 witnesses in the Complaint:

15   Astrid Schweer, Thomas Billeau, Julia Lang, Matthias Wagner, Janin Kaske, Lars Reger, Kurt

16   Sievers, Gordon Caffrey, John Boggie, Gabor Hornyak, Peter Van Disseldorp, Florian Hartwich,

17   Wolfgang Steinbauer, Christoph Herbst, Michael Sandu, Esther Meenhuys, Olli Hyyppa, Hatim

18   Dik, Secan Akbulut, Suvabrata Sinha, and Sherry Alexander.  (Compl. at ¶¶ 4, 16, 17, 23, 28, 31,

19   34, 36, 54, 94, 131, 133, 153, 156, 159, 176, 212, 214, 228.)  Of those witnesses, 18

20   unquestionably reside and work in Europe.  (Wilkens Decl., ¶¶ 6-8; Compl., ¶¶ 133, 153, 159 (The

21   Complaint explicitly alleges that Reger, Hartwich, and Meenhuys were located in Germany or the

22   Netherlands).)  Two additional witnesses, identified as "Information Technology (IT) staffers"

23   Hatim Dik and Secan Akbulut, were alleged to have observed an interaction in the Hamburg office

24   between Dickens and Julia Lang, a "team assistant."  (Complaint, ¶¶ 31-35.)  Dickens also alleges

25   _____

26   [1] Dickens also alleges she met by video conference with Sherry Alexander, "the Head of Diversity

27   and Inclusion," to discuss her concerns, but Alexander indicated that she "would reach out to Lars

28   Reger, who was located in Hamburg.  (*Id.*, at ¶¶ 132-134 (emphasis added).)

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS UNDER F.R.C.P. 12(B)(6) AND
*FORUM NON CONVENIENS*; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1 Dik and Akbulut, **_while in the Hamburg office_**, witnessed Matthias Wagner supposedly "berate"

2 Dickens over the prior interaction with Lang.  (*Id*. at ¶¶ 36-44 (emphasis added).)

3   Moreover, all the evidence in this case is located in Europe, where the witnesses and

4 Dickens worked.  Indeed, none of NXP Germany's employees work in NXP USA's offices, and

5 vice versa. (Wilkens Decl., ¶ 6; Declaration of Philippe Montillet in Supp. Defs.' Mot. to Dismiss

6 ("Montillet Decl."), ¶ 5.)  Employees' emails are stored on their electronic devices, which are not

7 located in the U.S., and paper records of NXP Germany's employees' files are located in the

8 offices in which they worked.  (Wilkens Decl., ¶ 9.)

9 **D.   Dickens Filed Her Complaint Based on Alleged Conduct Occurring in Europe
10        While She Lived and Worked in Germany**

11   On March 9, 2023, Dickens filed her complaint against "NXP Semiconductors" alleging the

12 following causes of action under Title VII and/or Section 1981: hostile work environment based on

13 race (Counts One and Two), disparate treatment based on race (Counts Three and Four), denial of

14 promotion based on race (Counts Five and Six), disparate pay based on race (Counts Seven and

15 Eight), retaliation based on race (Counts Nine and Ten), hostile work environment based on sex

16 (Count Eleven), disparate treatment based on sex (Count Twelve), failure to promote based on sex

17 (Count Thirteen), disparate pay based on sex (Count Fourteen), and retaliation based on sex (Count

18 Fifteen).  (Compl. at ¶¶ 235-327.)

19 **III.   LEGAL ARGUMENT**

20   **A.   The Complaint Must be Dismissed for Failure to State a Claim Under Rule 12**

21     **1.   Legal Standard**

22   Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "accept as true

23 all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94

24 (2007) (per curiam), and may dismiss the case or a claim "only where there is no cognizable legal

25 theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to

26 relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (*citing*

27 *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)).

28   A claim has facial plausibility when a plaintiff "pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citation omitted).  The facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Threadbare recitals of the elements of a cause of action" and "conclusory statements" are not adequate.  *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).  The Court need not accept as true the conclusory allegations, legal characterizations, unreasonable inferences or unwarranted deductions of fact alleged in the operative complaint.  *Western Mining Counsel v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (*quoting Bell Atl. Corp.*, 550 U.S. at 570).

In evaluating a Rule 12(b)(6) motion, the Court may consider matters properly subject to judicial notice.  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 119, 1125-26 (9th Cir. 2002); *Force v. Advanced Structural Techs., Inc.*, No. CV202219DMGAGRX, 2020 WL 4539026, at *1, n.1 (C.D. Cal. Aug. 6, 2020) (taking judicial notice of documents filed with the California Secretary of State, search results on California's Secretary of State's Business Search webpage, and search results on Delaware's Secretary of State Entity Search webpage); *Dawson v. One Call Med., Inc.*, No. 320CV01188LABKSC, 2021 WL 5513516, at *2 (S.D. Cal. Sept. 21, 2021) (taking judicial notice of defendants' filings with the California Secretary of State to determine whether plaintiff alleged sufficient facts to establish which defendant was plaintiff's ostensible employer).  The Court may also "consider extrinsic evidence not attached to the complaint if the document's authenticity is not contested and the plaintiff's complaint necessarily relies on it."  *Johnson v. Fed. Home Loan Mortgage Corp.*, 793 F.3d 1005, 1007 (9th Cir. 2015); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (upholding "incorporation by reference" doctrine in considering website page when ruling on a motion to dismiss); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (deeming Billing Agreement incorporated by reference because the agreement was integral to the Amended Complaint even though not explicitly referred to in the Amended Complaint); *Napear v. Bonneville Int'l Corp.*, No. 2:21-CV-01956-DAD-DB, 2023 WL 3025258, at *4 (E.D. Cal. Apr. 20,

2023) (deeming plaintiff's employment agreement with defendant incorporated by reference into plaintiff's complaint when ruling on a motion to dismiss).

Moreover, the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (the court may assume the truth of the contents of documents incorporated by reference); *Johnson v. LKQ Foster Auto Parts, Inc.*, No. 2:15-CV-02413-KJM-AC, 2016 WL 3418341, at *3 (E.D. Cal. June 22, 2016) (incorporating by reference a notice to the Labor and Workforce Development Agency in considering who employed the plaintiff). This "doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). In other words, the Court "need not accept as true allegations contradicting documents that are referenced in the complaint[.]" *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

## 2.   Dickens Cannot State a Claim Under Section 1981 (Counts One Through Ten)

The Supreme Court has routinely upheld the principle that federal statutes are presumed to "apply only within the territorial jurisdiction of the United States." *WesternGeco LLC v. ION Geophysical Corporation*, 138 S. Ct. 2129, 2136 (2018) (*quoting Foley Bros., Inc. v. Filardo*, 336 U.S. 281 (1949)). This presumption against extraterritoriality has deep roots and rests on "the commonsense notion that Congress generally legislates with domestic concerns in mind." *Smith v. United States*, 507 U.S. 197, 204, n.5 (1993); *WesternGeco LLC*, 138 S. Ct. at 2136. It also prevents "unintended clashes between our laws and those of other nations which could result in international discord." *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991), overturned by statute.

Statutes "do not have extraterritorial application unless such an intent is clearly manifested." *Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 188 (1993). Any doubts

1   concerning the extraterritorial application of a statute must be resolved against such application.

2   *ARC Ecology v. U.S. Dep't of Air Force*, 411 F.3d 1092, 1097 (9th Cir. 2005).

3        Section 1981, by its terms, only applies to protect "persons within the jurisdiction of the

4   United States."  42 U.S.C. § 1981(a); *Ofori-Tenkorang v. Am. Int'l Grp., Inc.*, 460 F.3d 296, 304,

5   307 (2d Cir. 2006).  In *Ofori-Tenkorang*, the court concluded that the text and legislative history of

6   Section 1981 reflected Congress' intent to not extend the statute's coverage beyond the territorial

7   jurisdiction of the United States.  460 F.3d at 298.  In comparison to Title VII and the ADEA,

8   which Congress expressly amended to extend coverage to United States citizens employed by

9   American companies in a foreign country, Congress never enacted such an amendment to Section

10  1981.  *Id.* at 298.  Thus, the plaintiff in *Ofori-Tenkorang* failed to show clear evidence of

11  congressional intent to override "'the legal presumption that Congress ordinarily intends its statutes

12  to have domestic, not extraterritorial, application,'" and that Section 1981 applied extraterritorially.

13  *Id.* at 301 (*quoting Small v. United States*, 544 U.S. 385, 388-89 (2005)).  Relevant to this motion,

14  the court held that Section 1981's territorial limitation "is defined by the location of the subject of

15  the discrimination, not by the location of the decision maker."  *Id.* at 304.

16       Following the longstanding presumption against extraterritoriality and applying the Second

17  Circuit's decision in *Ofori-Tenkorang* and other precedent, courts in this and other districts have

18  repeatedly held that "Section 1981 only applies to claims arising from discrimination ***while a***

19  ***plaintiff was within the jurisdiction of the United States***."  *Gulaid v. CH2M Hill, Inc.*, No. 15-CV-

20  04824-JST, 2016 WL 5673144, at *6 (N.D. Cal. Oct. 3, 2016) (emphasis added); *Tat Tohumculuk,*

21  *A.S. v. H.J. Heinz Co.*, No. CIV 13-0773 WBS KJN, 2013 WL 6070483, at *7 (E.D. Cal. Nov. 14,

22  2013) (holding Section 1981 does not apply because the "plaintiff is a Turkish company

23  conducting its operations in Turkey); *cf. Davis v. Inmar, Inc.*, No. 21-CV-03779 SBA, 2022 WL

24  3722122, at *4 (N.D. Cal. Aug. 29, 2022) (as distinguished by *Gulaid*, the court held that FEHA

25  applied extraterritorially because plaintiffs alleged they were employed in California *and* were

26  subject to discrimination while working in California).

27       In *Gulaid v. CH2MHill, Inc., supra*, this Court granted the defendant's motion to dismiss

28  plaintiff's Section 1981 claim based on allegations analogous to the allegations in Dickens'

1    Complaint.  The defendant hired the plaintiff, who had been a resident of California, to work on a

2    project in Djibouti City, Djibouti.  *Gulaid*, 2016 WL 5673144, at *1.  The plaintiff claimed that

3    while he worked and lived in Djibouti, his daily supervisor excluded him from important meetings,

4    verbally abused him, retaliated against him for complaining about his treatment, and his direct

5    supervisor would direct him and his daily supervisor from the office in California.  *Id.*  Despite the

6    plaintiff's "scant allegation[s]" that "some of the discriminatory conduct occurred" while the

7    plaintiff resided in the United States, the Court found that he failed to "plausibly allege a Section

8    1981 civil rights violation."  *Id.* at *6.

9         While even "scant allegations" of discriminatory conduct in the United States are

10   insufficient to establish a violation of Section 1981, here, there are zero allegations of alleged

11   discriminatory conduct in the U.S.  The Complaint alleges that various other employees, including

12   Caffrey, Boggie, Wagner, and Hornyak, made inappropriate comments to Dickens "in Plaintiff's

13   presence" and in "Plaintiff's office" in Hamburg or in the Netherlands.  (Compl. at ¶¶ 36, 37, 44,

14   80, 83, 202-205.)  The Complaint also alleges "HR in Germany" and "Global HR [] in the

15   Netherlands" refused to act on her complaints.  (*Id.* at ¶¶ 54, 128-131, 143, 153, 159, 162, 171-173,

16   186, 198-201.)  Compared to *Gulaid*, where the plaintiff at least alleged some of the discriminatory

17   conduct occurred while the plaintiff resided in the U.S., Dickens does not even allege that she lived

18   in the U.S. or that any discriminatory conduct occurred while she was in the U.S. for vacation.

19   Accordingly, all the relevant events surrounding her discrimination and retaliation claims occurred

20   in Europe while Dickens lived and worked there.

21        Moreover, insofar as the Complaint does not specify where an alleged unlawful event

22   occurred, the only plausible inference is that those events occurred outside the U.S.  Dickens

23   specifically alleges she worked "for Defendant in its Hamburg, Germany office."  (Complaint, ¶ 4).

24   The Complaint specifically identifies the limited periods when she was in the U.S.—which was

25   only for vacation, not for work—versus when she was in Germany, and all of the alleged

26   discrimination occurred in Europe, not in the U.S.  For example, Caffrey denied Dickens a

27   promotion when she was in Germany while "COVID travel restrictions were in place" and

28   Hornyak denied Dickens a promotion ***before*** she travelled to the U.S. for vacation.  (Compl. at ¶¶

71, 112, 139, 148, 149.)  The only plausible inference is that those decisions were made in Germany, which is where she lived and worked and where she reported to her managers.

Because all of the alleged events surrounding her Section 1981 claim occurred on foreign soil, Counts One through Ten to the extent they are based on Section 1981 must be dismissed.

### 3.   Dickens Cannot State a Claim Under Title VII (Counts One Through Fifteen)

Title VII prohibits employers from discriminating against employees based on protected categories and retaliating against employees for complaining of such discrimination.  42 U.S.C. §§ 2000e-2(a), 2000e-3(a).  A private right of action under Title VII is intended to "vindicate domestic interests."  *WesternGeco LLC*, 138 S. Ct. at 2138.

In 1991, the United States Supreme Court held in *EEOC v. Arabian American Oil Co.*, 499 U.S. at 249, that Title VII did not apply extraterritorially to American citizens.  In response, Congress amended Title VII later that same year to extend limited protection of Title VII to American citizens working overseas for ***American employers*** or for foreign persons controlled by American employers.  Pub. L. 102-166, § 109(a) (amending definition of "employee" to include an individual who is a citizen of the United States employed in a foreign country); Pub. L. 102-166, § 109(b) (adding exemptions as subsections (b) and (c) to 42 U.S.C. § 2000e-1); *see* 136 Cong. Rec. S15,235 (daily ed. Oct. 25, 1991) (statement of Sen. Kennedy) (expressing the intent to extend Title VII protections).  The exemption added by the 1991 amendments to 42 U.S.C. section 2000e-1(c)(2) specifically provides that Title VII "shall not apply with respect to the foreign operations of an employer that is a foreign person not controlled by an American employer."

### i.   NXP USA Never Employed Dickens and NXP Germany is Not an American Employer

As threshold matter, the Complaint fails to state a claim under Title VII against NXP USA because 1) she fails to identify or make any allegations against NXP USA, and 2) NXP USA never employed Dickens and, therefore, Dickens did not work overseas for an American employer. Presumably because she knows she never worked for NXP USA, the Complaint evasively alleges only that she was employed by "NXP Semiconductors," without identifying the actual employing

1    entity.  In fact, the Complaint never mentions NXP USA.  As spelled out in her contract, which she

2    references in paragraph 10 of her Complaint, Dickens was employed by NXP Germany and that

3    her "place of work shall be Hamburg," in Germany.  (Wilkens Decl., Ex. 1).  In addition, Dickens

4    alleges she "currently resides and works for Defendant in its Hamburg, Germany office."  (Compl.

5    at ¶ 4.)  The Complaint also alleges that "Plaintiff reported to NXP managers in Germany."

6    (Compl. at ¶ 4.)  Although she alleges that her managers in Germany reported up to "CEO Kurt

7    Seivers" (sic), who she claims is in San Jose, California, the corporate filings properly subject to

8    judicial notice reflect that Sievers resides in Germany, is employed by NXP Germany, and is CEO

9    of NXP Semiconductors N.V., headquartered in the Netherlands.  (RJN, Exs. 8-11.)  Despite all of

10   this, Dickens attempts to pursue her claims against NXP USA.

11          Based on the facts alleged in her Complaint and those that are subject to judicial notice,

12   Dickens cannot plausibly allege that she was employed by NXP USA during the events that are the

13   subject of this lawsuit.  *Johnson v. LKQ Foster Auto Parts, Inc.,* 2016 WL 3418341, at *3 (court

14   granted the defendant's motion to dismiss because the complaint identified the defendant as her

15   employer but the notice to the Labor and Workforce Development Agency incorporated by

16   reference identified a different, similarly named entity as her employer, and therefore the complaint

17   failed to allege sufficient facts to allow a plausible identification of her employer, as required to

18   pursue retaliation claim); *Dawson v. One Call Med., Inc.*, 2021 WL 5513516, at *2 (granting

19   motion to dismiss based on judicial notice of defendants' filings with the California Secretary of

20   State because the complaint improperly lumped all defendants together as plaintiff's "employer").

21   Accordingly, Dickens cannot pursue a Title VII claim against NXP USA.

22          The Complaint also fails to state Title VII claims because NXP Germany is not an

23   American employer.  The exemption for the "foreign operations of an employer that is a foreign

24   person" means "a corporation whose place of incorporation is a foreign country."  *Buchanan v.*

25   *Watkins & Letofsky, LLP*, 30 F.4th 874, 878 (N.D. Cal. 2022).  "[A] corporation has the nationality

26   of the state under the laws of which the corporation is organized."  *JPMorgan Chase Bank v.*

27   *Traffic Stream (BVI) Infrastructure Ltd.*, 536 U.S. 88, 92 (2002) (*quoting* Restatement (Third) of

28   the Foreign Relations Law of the United States § 213 (1987) (Reporters' Note # 5 provides that the

12                              Case No. 5:23-cv-01073-BLF

general assumption under United States legislation is that place of incorporation determines corporate nationality)).

Here, NXP Germany is a "foreign person" and not an "American employer" because it is incorporated and headquartered in Germany.  (RJN, Exs. 4, 5.)  The Complaint does not, and cannot, allege any facts to the contrary.

ii.     **Dickens Does Not, and Cannot, Allege NXP USA and NXP Germany are an Integrated Enterprise**

The only instance where Title VII may apply to the foreign operations of a foreign employer is if that foreign employer is controlled by an American employer.  42 U.S.C. § 2000e-1(c)(2); *see Chiu v. Mann*, No. C 02-4590 VRW, 2003 WL 716247, at *3 (N.D. Cal. Feb. 24, 2003) (dismissing Title VII claim by former employee, a resident of Canada and citizen of the U.S., against foreign employer and its domestic parent corporation because the claim arose from employment that occurred in Canada).  "Control" is determined by the four factor integrated enterprise test: (1) the interrelation of operations; (2) the common management; (3) the centralized control of labor relations; and (4) the common ownership or financial control.  42 U.S.C. § 2000e-1(c)(3)(A)-(D); *see Buchanan*, 30 F.4th at 877-78 (N.D. Cal. 2022); *Luna v. Universal Studio City Prods. LLLP*, No. CV 12-9286 PSG (SSX), 2013 WL 12308198, at **3-6 (C.D. Cal. Aug. 27, 2013) (granting motion to dismiss because the plaintiffs' failed to allege an integrated enterprise theory); *Perez v. DXC Tech. Servs. LLC*, No. 17-CV-06066-BLF, 2020 WL 5517276, at *5 (N.D. Cal. Sept. 14, 2020) (same).  "Corporate entities are presumed to have separate existences, and the corporate form will be disregarded only when the ends of justice require this result."  *Perez*, 2020 WL 5517276, at *3 (*quoting Laird v. Capital Cities/ABC, Inc.*, 68 Cal.App.4th 727, 737 (1998), *disapproved of on other grounds by Reid v. Google, Inc.*, 50 Cal.4th 512 (2010) (internal quotes omitted)).

Although courts consider the four factors together, they often deem centralized control of labor relations the "most critical" factor.  *Kang v. U. Lim America, Inc.*, 296 F.3d 810, 815 (N.D. Cal. 2002) (*citing Hukill v. Auto Care, Inc.*, 192 F.3d 437, 442 (4th Cir. 1999); *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995) and *Childs v. Local 18, Int'l Bhd. of Elec.*

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS UNDER F.R.C.P. 12(B)(6) AND *FORUM NON CONVENIENS*; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   *Workers*, 719 F.2d 1379, 1382 (9th Cir. 1983)). "[C]ommon ownership or control alone is never

2   enough to establish" liability. *Laird*, 68 Cal. App. 4th at 737. The important question is whether

3   NXP USA "had the authority to hire and fire [NXP Germany] employees." *Kang*, 296 F.3d at 815.

4          Dickens does not allege in the Complaint facts establishing that NXP USA and NXP

5   Germany were an integrated enterprise. She also does not allege any plausible facts showing that

6   NXP USA "controlled" NXP Germany. To the contrary, the Complaint alleges she entered into a

7   contractual relationship with her employer (contracted with NXP Germany), that she worked in

8   Hamburg (Compl. at ¶¶ 4, 14), and that she reported to managers in Germany (*id.* at ¶ 18). There

9   are no allegations that anyone employed by NXP USA in the U.S. hired her, managed her

10  employment, paid her, or discriminated against her. The Complaint also does not allege any

11  common management among NXP USA and NXP Germany, that any employees of NXP USA

12  worked in any of NXP Germany's offices or vice versa, NXP USA controlled any part of NXP

13  Germany's operations, or any facts to plausibly suggest NXP USA and NXP Germany had

14  interrelated operations. *See Kang*, 296 F.3d at 815 (whether corporations have interrelated

15  operations depends on factors such as whether the companies operated at separate locations, filed

16  separate tax returns, held separate director and shareholder meetings, conducted separate banking,

17  purchased good separately, entered into lease agreements separately, and were separately

18  managed).

19         The only plausible deductions and inferences from the allegations in the Complaint are that

20  NXP Germany is not controlled by NXP USA. Because NXP Germany—not NXP USA—hired

21  and employed Dickens, the only plausible inference of the allegation that "Plaintiff reported to

22  NXP managers in Germany" is that those managers were not employees of NXP USA.

23  Accordingly, Dickens is unable to establish that that any entity other than NXP Germany employed

24  her or otherwise controlled the terms and conditions of her employment in Hamburg, Germany.

25        **B.      Dismissal is Appropriate Based on *Forum Non Conveniens***

26              **1.      Legal Standard**

27         The doctrine of *forum non conveniens* "allows the court to decline its jurisdiction in cases

28  where the litigation in the forum would be seriously inconvenient for one of the parties and a more

1  convenient forum is available elsewhere." *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 809

2  (N.D. Cal. 2004) (*citing Gulf Oil Corp*, 330 U.S. 501 and *Piper Aircraft Co.*, 454 U.S. 235).  To

3  prevail on a motion to dismiss based upon *forum non conveniens*, a defendant bears the burden of

4  demonstrating an adequate alternative forum, and that the balance of private and public interest

5  factors favor dismissal.  *Ceramic Corp. of America v. Inka Maritime Corp.*, 1 F.3d 947, 949 (9th

6  Cir. 1993); *Meridian Seafood Prod., Inc. v. Fianzas Monterrey, S.A.*, 149 F. Supp. 2d 1234, 1239

7  (S.D. Cal. 2001); *Nibirutech Ltd v. Jang*, 75 F. Supp. 3d 1076, 1082 (N.D. Cal. 2014).  The private

8  and public interest factors generally focus on the interests of the litigations, the ends of justice, the

9  convenience of the witnesses, the local and foreign forums' interests in the matter, and the effects

10  on the administration of the courts.  *Gulf Oil Corp*, 330 U.S. at 507-08.

11         The standard courts evaluate is whether the defendant has shown such oppression and

12  vexation of the defendant as to be out of proportion to plaintiff's convenience.  *Ravelo Monegro v.*

13  *Rosa*, 211 F.3d 509, 514 (9th Cir. 2000), *cert. denied sub nom San Francisco Baseball Assocs. L.P.*

14  *v. Monegro*, 531 U.S. 1112 (2001).  "[T]he central purpose of any *forum non conveniens* inquiry is

15  to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference."  *Piper*

16  *Aircraft Co.*, 454 U.S. at 257; *Ceramic Corp. of America*, 1 F.3d 947 at 950.  Courts, however,

17  should disregard a plaintiff's forum choice where the suit is a result of forum-shopping such as

18  when a plaintiff "strategically choose[s] a random or only tangentially relevant forum."  *Carijano*

19  *v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1229 (9th Cir. 2011) (concerns of forum shopping

20  are muted when the forum has "a strong connection to the subject matter of the case."); *Alltrade,*

21  *Inc., v. Uniweld Products, Inc.*, 946 F.2d 622, 628 (9th Cir. 1991) (holding that courts may

22  properly consider disregarding "first to file rule" when result of forum-shopping).  The *forum non*

23  *conveniens* determination ultimately lies in the court's discretion.  *Lueck v. Sundstrand Corp.*, 236

24  F.3d 1137, 1143 (9th Cir. 2001).

25                    **2.**        **Germany Provides an Adequate Alternative Forum**

26         Germany provides an adequate alternative forum for Dickens to bring her claims against

27  her actual employer NXP Germany.  The Ninth Circuit and district courts within this circuit

28  routinely recognize that Germany provides an adequate forum when granting motions to dismiss

based on *forum non conveniens* related to disputes arising in Germany, particularly when the witnesses are located in that country. *Leetsch v. Freedman*, 260 F.3d 1100, 1103-06 (9th Cir. 2001) (holding Germany is an adequate alternative forum); *U.S. Vestor, LLC v. Biodata Info. Tech. AG*, 290 F. Supp. 2d 1057, 1068-69 (N.D. Cal. 2003) (same); *Kleiner v. Spinal Kinetics, Inc.*, No. 5:15-CV-02179-EJD, 2016 WL 1565544, at *7 (N.D. Cal. Apr. 19, 2016) (same); *Oto v. Airline Training Ctr. Arizona, Inc.*, 247 F. Supp. 3d 1098, 1108 (D. Ariz. 2017) (same).

   As outlined in these decisions, an alternative forum is deemed adequate if the alternative courts will have personal jurisdiction over the defendant, the defendant can be served in the alternative forum, and the other jurisdiction offers a "satisfactory remedy." *Nibirutech Ltd*, 75 F. Supp. 3d at 1082; *Ceramic Corp. of America*, 1 F.3d at 949 ("A court may dismiss on forum non conveniens grounds even though the foreign forum does not provide the same range of remedies as are available in the home forum.").  "This test is easy to pass; typically, a forum will be inadequate only where the remedy provided is 'so clearly inadequate or unsatisfactory, that it is no remedy at all.'" *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1180 (9th Cir. 2006) (*quoting Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 768 (9th Cir. 1991)).  This requirement is ordinarily satisfied when the defendant is amenable to process in the other jurisdiction. *Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1450 (9th Cir. 1990).  It is insufficient for the plaintiff to show that the substantive law that would be applied in the alternative forum is less favorable to her than that of the present forum. *Piper Aircraft Co.*, 454 U.S. at 247 ("The possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the forum non conveniens inquiry.").

   A defendant can prove that the subject matter of a plaintiff's claims is within the jurisdiction of a foreign forum by proffering the declaration of a legal expert or attorney admitted to practice there who states that plaintiffs can pursue their claims in that jurisdiction. *Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1352 (1st Cir. 1992) (*citing Lockman Found.*, 930 F.2d at 768, for the proposition that "moving party may demonstrate [the] adequacy of [the] alternative forum's law through [the] affidavits and declarations of experts").

//

This test for showing the adequacy of the German forum is satisfied here.  First, NXP Germany, Dickens' employer, is subject to the personal jurisdiction of Germany and can be served there.  *Leetsch*, 260 F.3d at 1103 (the Hague Convention permits service in German); *Kleiner*, 2016 WL 1565544, at *2 (German courts have jurisdiction over German companies).  In *Leetsch*, the court held that Germany is an adequate alternative forum because, in part, the Hague Convention provides procedures to serve German judicial documents in legal proceedings to a person within the U.S., and vice versa.  *Leetsch*, 260 F.3d at 1103 (citing Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163); *see* RJN, Ex. 13.)  In *Kleiner*, this Court held that the named defendant was amenable to service because the defendant's "subsidiary [] is incorporated in and subject to the jurisdiction of the German courts."  *Kleiner*, 2016 WL 1565544, at *2; *see U.S. Vestor, LLC*, 290 F. Supp. 2d at 1068 ("As German citizens and corporations, all Defendants are amenable to service of process in Germany.)

Here, the German Labour Courts have jurisdiction over litigation and parties—including claims that Dickens may bring in Germany against NXP Germany—resulting from or in connection with the employment relationship of an employee who works, or worked, in Germany against her or her employer in Germany.  (Declaration of Ulrike Conradi ("Conradi Decl."), ¶ 12 (German Labour Court Act § 2 vests German Labour Courts with exclusive jurisdiction over civil disputes between employees and employers); RJN, Ex. 18.)  An employer can be sued in the labour court where the employer has its seat or branch, or where the employee regularly worked. (Conradi Decl., ¶ 12 (German Code of Civil Procedure §§ 17, 21 and German Labour Court Act § 48 establish where the employee can sue the employer); RJN, Exs. 17, 18.)

Whether NXP USA is amenable to service is of no consequence because Dickens can bring her claims against the proper entity NXP Germany in German.  *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 365 (6th Cir. 2008) ("*Estate of Thomson*"); *Kleiner*, 2016 WL 1565544, at *2 (following *Estate of Thomson*).  In *Estate of Thomson*, the Sixth Circuit held that an adequate foreign forum existed when the named defendant denied being a proper defendant and was not amenable to process in the foreign jurisdiction.  *Id.*  The

court found that an adequate alternative forum existed because the defendant's corporate affiliates— the proper entities that should have been named as defendants—were amenable to service in the foreign forum because German courts had jurisdiction over those German entities. *Id.* Germany is also unquestionably an adequate alternative forum here because NXP Germany is incorporated in and subject to the jurisdiction of the German courts. *Kleiner*, 2016 WL 1565544, at *2.

Second, Germany also provides an adequate remedy for Dickens under Germany's anti-discrimination laws. The Ninth Circuit's decision in *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1078 (9th Cir. 2015) is instructive. In *Ranza*, the court held that the Netherlands was an adequate alternative forum for plaintiff to bring her employment discrimination claims because Dutch law prohibits employment discrimination. *Id.*, 1066, 1078, n.1. The court found that even if Dutch law provided less generous remedies than under Title VII, the Dutch law still provided "some remedy" sufficient to establish an adequate remedy. *Id.* at 1078. Similar to *Ranza*, Germany has laws under which Dickens can bring her claims. The principle of equal treatment is a fundamental right under the German Constitution. (Conradi Decl., ¶ 5 (Basic Law for the Federal Republic of Germany, Art. 3, ¶¶ 2 and 3 provides that men and women shall have equal rights and prohibits discrimination based on sex or race); RJN, Ex. 14.) Germany's General Act on Equal Treatment provides employees with comprehensive protections against discrimination and harassment based on race and gender. (Conradi Decl., ¶¶ 6-8; RJN, Ex. 15.) Sections 1, 2, and 7 of the General Act on Equal Treatment prohibit discrimination in the workplace based on race or sex. (Conradi Decl., ¶ 6; RJN, Ex. 15.) Harassment is deemed to be discrimination under Section 3 of the General Act on Equal Treatment. (Conradi Decl., ¶ 6: RJN, Ex. 15.) Remedies for violating the General Act on Equal Treatment include economic damages, as well as damages for pain and suffering. (Conradi Decl., ¶ 7.) Similarly, the German Transparency in Wage Structures Act prohibits unequal pay on the basis of sex. (*Id.*, ¶¶ 9, 10; RJN, Ex. 16.) Section 16 of the Transparency in Wage Structures Act prohibits retaliation for exercising rights to equal pay and Section 612a of the German Civil Code prohibits retaliation for exercising rights against discrimination. (*Id.*, ¶¶ 11; RJN Ex. 16.) Dickens even alleges in her Complaint that certain conduct supposedly violated German law. (Compl., ¶¶ 75, 108.) //

1    Again, the standard is not whether German law mirrors that in California or the United

2    States.  A forum is deemed to be inadequate only where the remedy provided is "'so clearly

3    inadequate or unsatisfactory, that it is no remedy at all.'"  *Tuazon*, 433 F.3d at 1180 (9th Cir.

4    2006); *Lockman Found.*, 930 F.2d at 768.  Under this standard, Germany is unequivocally an

5    adequate alternative forum.

**3.    Private and Public Interests Favor Dismissal**

7    The weighing of private and public interests also heavily favors dismissal because, among

8    other things, Dickens' claims arose outside the U.S., litigating in the U.S. would be highly

9    inconvenient for the parties and key witnesses who all live outside the U.S., and this Court has no

10   interest in unnecessarily wasting its time resolving a foreign dispute.  *Leetsch*, 260 F.3d at 1104-05;

11   *U.S. Vestor, LLC*, 290 F. Supp. 2d at 1068-69.

12   In addition to whether the foreign jurisdiction provides an adequate alternative forum, the

13   courts also balance private and public factors.  The private factors courts consider are: (1) the

14   residence of the parties and witnesses, (2) the forum's convenience to the litigants, (3) access to

15   physical evidence and other sources of proof, (4) whether unwilling witnesses can be compelled to

16   testify, (5) the cost of bringing witnesses to trial, (6) the enforceability of the judgment, (7) any

17   practical problems or other factors that contribute to an efficient resolution.  *Tuazon*, 433 F.3d at

18   1180; *Leetsch*, 260 F.3d at 1104-05 (granting motion to dismiss); *U.S. Vestor, LLC*, 290 F. Supp.

19   2d at 1068-69 (same); *Kleiner*, 2016 WL 1565544, at *7 (same); *Oto*, 247 F. Supp. 3d at 1108-09

20   (Germany was a "much more convenient" forum because "the residence of the parties and

21   witnesses is primarily in Germany").  The public factors courts consider are: (1) the local interest

22   in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and

23   juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular

24   forum.  *Leetsch*, 260 F.3d at 1105; *Tuazon*, 433 F.3d at 1181.

25   Here, Dickens' claims occurred primarily in Germany and to some extent in the

26   Netherlands, which courts have held weighs in favor of dismissal.  *Leetsch*, 260 F.3d at 1105

27   (claims occurred in Germany, with limited exception, weighed in favor of dismissal); *Meridian*

28   *Seafood Prod., Inc.*, 149 F. Supp. 2d at 1239 ("With respect to the private factors, the Court places

1   particular emphasis on the fact that most if not all of the conduct and transactions in this case

2   occurred in Mexico and not in California."); *Chateau Des Charmes Wines, Ltd. v. Sabate USA,*

3   *Inc.*, No. C-01-4203 MMC, 2003 WL 22682483, *3–4 (N.D. Cal. Nov. 10, 2003) (court dismissed

4   a breach of contract action between two foreign companies because evidence that California

5   residents "were involved in the events that gave rise to the lawsuit was relatively minimal," and the

6   case lacked any "significant connection with California.")

7          Given all the relevant occurred in Germany and elsewhere in Europe, litigating Dickens'

8   claims in the U.S. would be highly inconvenient for the parties and key witnesses.  Greater weight

9   should be accorded to the residence of the parties and witnesses whose anticipated testimony is

10  "material[] and important[]."  *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1335-36 (9th Cir.

11  1984); *Kleiner*, 2016 WL 1565544, at *4; *c.f. Ridgway v. Phillips*, 383 F. Supp. 3d 938, 948 (N.D.

12  Cal. 2019) (private factors did not favor dismissal because the plaintiff was a California resident

13  and the foreign defendant regularly conducted business in California).  In *U.S. Vestor, LLC*, this

14  Court held that private interest factors favored dismissal because the "vast majority" of witnesses

15  lived and worked in Germany, which presented an "unreasonable hardship for Defendants."  *U.S.*

16  *Vestor, LLC*, 290 F. Supp. 2d at 1068.  As in *U.S. Vestor, LLC*, all of the relevant witnesses,

17  including the important witnesses such as Dickens' managers, HR personnel, and Dickens herself,

18  reside in Europe.  Requiring witnesses to travel to California from Europe is highly inconvenient

19  for the witnesses, forcing them or their employer to incur considerable costs and time away from

20  work and families.  (RJN, Fact 2 (a round trip airline ticket from Hamburg to San Jose can cost at

21  least $758, and flight time each way takes over 13 hours).)  The time and expense for witnesses and

22  the parties to travel between California and Europe strongly militates in favor of dismissal.  *See*

23  *Meridian Seafood Prod., Inc.*, 149 F. Supp. 2d at 1239 (private interests favored dismissal because

24  requiring "numerous witnesses to travel [from Mexico] to California would be unduly burdensome

25  and a waste of the parties' limited resources.")

26          Likewise, the process to obtain discovery in Germany will be time consuming, expensive,

27  and burdensome.  The Hague Convention on the Taking of Evidence Abroad in Civil or

28  Commercial Matters establishes a technical and complex procedure for obtaining evidence in

Germany for use in a U.S. civil legal proceeding.  Convention Done at the Hague Nov. 15, 1965;

T.I.A.S. No. 6638 (Feb. 10, 1969); Declaration of Graham M. Helm in Supp. Defs.' Mot. Dismiss

("Helm Decl."), Ex. 19 (attaching a copy of the Hague Convention on the Taking of Evidence

Abroad in Civil or Commercial Matters and providing a website link).  For a U.S. litigation to

compel a deposition of a German resident, that party must seek judicial assistance by filing an

application with the U.S. court to issue a Letter of Request to the German Central Authority

requesting a German court to question the witness pursuant to Articles 1, 3, and 4.  *Id.*  Pursuant to

Articles 9, 10, and 13, the Central Authority must approve the request and will then instruct the

relevant German Local Court to carry out the deposition in accordance with the German code of

civil procedure and other restrictions that the Local Court may impose.  *Id.*

The Supreme Court has recognized that Letters of Request procedures are "unduly time

consuming and expensive, as well as less certain to produce needed evidence than direct use of the

Federal Rules."  *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*,

482 U.S. 522, 542 (1987).  Moreover, the Supreme Court cautioned that "American courts, in

supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from

the danger that unnecessary, or unduly burdensome, discovery may place them in a

disadvantageous position."  *Id.* at 546.  In doing so, the Supreme Court recognized the potential for

discovery abuses against foreign litigants because "the additional cost of transportation of

documents or witnesses to or from foreign locations may increase the danger that discovery may be

sought for the improper purpose of motivating settlement, rather than finding relevant and

probative evidence."  *Id.*

Moreover, the physical evidence and other sources of proof, such as e-mails, are located in

Europe.  (Wilkens Decl., ¶ 9.)  Because of the German Federal Data Protection Act and the

European Union's General Data Protection Regulation, there may also be evidentiary and

procedural challenges obtaining employee personnel data for us in a proceeding in the U.S. related

to employment issues in Germany.  (Conradi Decl., ¶ 14.)  In addition, because NXP Germany's

assets and property are located in Germany, a German judgment would be enforceable in Germany.

*See Leetsch*, 260 F.3d at 1104-05; *U.S. Vestor, LLC*, 290 F. Supp. 2d at 1068.  "In contrast, the

absence of a relevant bilateral treaty [between the U.S. and Germany] means that a judgement against [NXP Germany] entered by this Court is not directly enforceable in Germany." *Lavera Skin Care N. Am., Inc. v. Laverana GmbH & Co. KG*, No. 2:13-CV-02311-RSM, 2014 WL 7338739, at *8 (W.D. Wash. Dec. 19, 2014), *aff'd*, 696 F. App'x 837 (9th Cir. 2017).  Additionally, this Court's "federal subpoena power is limited in its ability to order production of documents and appearances of non-party witnesses in Germany," whereas "German courts possess power of compulsory process over any witnesses and evidence located in Germany." *Lavera Skin Care N. Am., Inc.*, 2014 WL 7338739, at *8; *Oto*, 247 F. Supp. 3d at 1109 (finding that "witnesses located in Germany are beyond this Court's jurisdiction and the Court would be unable to compel their presence should they choose not to come voluntarily.").

Any allegations by Dickens that her claims arise, in part, in California and that most of the records and relevant witnesses are located, in part, in California are unsupported and implausible. (Compl., ¶ 8; Wilkens Decl., ¶¶ 6-9; Montillet Decl., ¶ 5.)  In reality, she is forum-shopping in the belief that she will face a more favorable forum in this district than in the jurisdiction where her claims arose.  For example, while Dickens alleges Kurt Sievers resides in California, this is demonstrably false, as he lives and works in Europe.  (Compl., ¶ 4; RJN Exs. 8-11.)  Given neither Dickens, who alleges to be a resident of Illinois and currently lives in Germany, nor the subject matter of this case has any relation to this forum, Dickens tactical efforts to file her Complaint in this Court instead of in Germany evidence clear forum shopping.  For example, in *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 694 (9th Cir. 2009), the Ninth Circuit affirmed the district court decision to dismiss the case based on forum non conveniences, in part, because the plaintiff engaged in forum shopping.  In *Vivendi SA*, the foreign plaintiff filed its complaint against foreign defendants "in a forum unrelated to the underlying claims" and then added a new plaintiff to apparently "strengthen[] its U.S. connection to the case."  *Id.* at 694-95, n.10.  The court opined that forum-shopping is motivated by reasons such as "the habitual generosity of juries in the United States or in the forum district,… or the inconvenience and expense to the defendant resulting from litigation in that forum."  *Id.* at 695 (*quoting Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2nd Cir. 2001) (en banc)).  Here, there can be little dispute that Dickens is improperly forum-shopping

1  by bringing her action in this district against a company for which she never worked and forcing

2  witnesses to travel here from Europe.

3          As for the public interest factors, those also heavily weigh in favor of dismissal because this

4  case does not involve a local controversy and the German courts have a strong interest in enforcing

5  their own laws.  As this Court correctly held:

6          The District Court for the Northern District of California is a busy court. Trying
         this case here would require translating law and testimony into and from German.
7          It would be an imposition to ask California jurors to decide a dispute concerning
         German citizens, corporations, and property.  This is not a local controversy, since
8          all of the assets and rights at issue are located in Germany and all the culminating
         events occurred in Germany.
9

10  *U.S. Vestor, LLC*, 290 F. Supp. 2d at 1069.

11          Here, no Courts within the U.S., let alone this Court, has an interest in Dickens' lawsuit for

12  claims that arose in Germany which should have been brought in Germany against her actual

13  employer NXP Germany, a German corporation.  Dickens' lawsuit is not a matter of local

14  controversy because Dickens currently lives and works in Germany and has since 2018.  Similarly,

15  her claims are properly against NXP Germany, which is a foreign company not registered in

16  California or Delaware.  The Court should reserve its limited resources for parties who properly

17  bring their claims before this Court—not countenance Dickens' use of this Court's resources to

18  gain a tactical advantage by suing the wrong entity and forcing foreign witnesses to travel to

19  California.  Finally, as noted, the cost of litigating Dickens' claims in this Court is unwarranted

20  because all of the relevant witnesses live abroad.

21  **IV.    CONCLUSION**

22          Based on the foregoing, NXP USA respectfully requests the Court grant this Motion to

23  dismiss without leave to amend.

24  //

25  //

26  //

27  //

28  //

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS UNDER F.R.C.P. 12(B)(6) AND
*FORUM NON CONVENIENS*; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1

2   DATED:  May 26, 2023                    OGLETREE, DEAKINS, NASH, SMOAK &
                                            STEWART, P.C.
3

4
                                            By: /s/ Graham M. Helm
5                                               THOMAS M. MCINERNEY
                                                GRAHAM M. HELM
6                                               Attorneys for Defendant
                                                NXP USA, Inc. (erroneously sued as
7                                               NXP SEMICONDUCTORS)

8

9                                                           56570590.v1-OGLETREE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS UNDER F.R.C.P. 12(B)(6) AND
*FORUM NON CONVENIENS*; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF