THOMAS M. MCINERNEY, CA Bar No. 162055
thomas.mcinerney@ogletree.com
GRAHAM M. HELM, CA Bar No. 316002
graham.helm@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
One Embarcadero Center, Suite 900
San Francisco, CA  94111
Telephone:    415-442-4810
Facsimile:    415-442-4870

Attorneys for Defendant
NXP USA, Inc. (erroneously sued as
NXP SEMICONDUCTORS)

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTOINETTE DICKENS, | Case No. 5:23-cv-01073-BLF |
| Plaintiff, | **DEFENDANT NXP USA, INC.'S OPPOSITION TO PLAINTIFF ANTOINETTE DICKENS' MOTION FOR LEAVE TO AMEND THE COMPLAINT** |
| v. | |
| NXP SEMICONDUCTORS, | Date:       December 21, 2023 |
| Defendant. | Time:       9:00 a.m. |
| | Location:   Courtroom 3, San Jose Courthouse |
| | Complaint Filed:  March 9, 2023 |
| | Trial Date:   None Set |
| | Judge:       Hon. Beth L. Freeman |

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ...........................................................................................................1

II.     FACTUAL BACKGROUND .......................................................................................2

     A.      Dickens Worked in Germany for NXP Germany, a Foreign
          Corporation Based in Germany ...........................................................................2

     B.      Dickens Claims in both her Original Complaint and FAC that Her
          Managers in Germany Harassed, Discriminated, and Retaliated
          Against Her ............................................................................................................3

     C.      Dickens Filed Her Complaint Based on Alleged Conduct Occurring in
          Europe While She Lived and Worked in Germany .........................................5

III.    LEGAL ARGUMENT ...................................................................................................6

     A.      Dickens' Proposed Claims Under Title VII (Counts One Through
          Ten) Are Futile ......................................................................................................7

          1.      Dickens Never Worked for NXP USA ...........................................8

          2.      NXP Germany is Not an American Employer ............................10

          3.      The FAC Does Not, and Cannot, Allege NXP USA and NXP
              Germany are an Integrated Enterprise ........................................11

              i.      No Plausible Facts of Interrelated Operations ...................13

              ii.     No Plausible Facts of Common Management ...................15

              iii.    No Plausible Facts of Centralized Control of Labor
                  Relations ..................................................................................15

               iv.     No Plausible Facts of Common Ownership or
                  Financial Control ...................................................................16

     B.      Dickens Seeks to Amend in Bad Faith ............................................................17

IV.     CONCLUSION ............................................................................................................19

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Adam Technologies LLC v. Well Shin Technology Co., Ltd.*,
  2021 WL 141371 (D.N.J. 2021) ...................................................................................14

*Al-Bustani v. Alger*,
  No. C22-5238JLR, 2023 WL 1778814 (W.D. Wash. Feb. 6, 2023) .............................9

*American Title Ins. Co. v. Lacelaw Corp.*,
  861 F.2d 224 (9th Cir. 1988) ........................................................................................9

*Buchanan v. Watkins & Letofsky, LLP*,
  30 F.4th 874 (N.D. Cal. 2022) .............................................................................10, 11

*Calzadillas v. Wonderful Co., LLC*,
  No. 119CV00172DADJLT, 2019 WL 5448308 (E.D. Cal. Oct. 24, 2019) ..............17

*Carrico v. County of San Francisco*,
  656 F.3d 1002 (9th Cir. 2011) ......................................................................................7

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
  168 F. Supp. 3d 918 (E.D. La. 2016) .........................................................................14

*Chiu v. Mann*,
  No. C 02-4590 VRW, 2003 WL 716247 (N.D. Cal. Feb. 24, 2003) ..........................11

*Dawson v. One Call Med., Inc.*,
  No. 320CV01188LABKSC, 2021 WL 5513516 (S.D. Cal. Sept. 21, 2021) ...............10

*Gardner v. Island County*,
  No. 97–36171, 1999 WL 274640 (9th Cir. Apr. 16, 1999).........................................7

*Genentech, Inc. v. Abbott Lab'ys*,
  127 F.R.D. 529 (N.D. Cal. 1989) ..............................................................................6, 7

*Hernandez v. DMSI Staffing, LLC.*,
  79 F. Supp. 3d 1054 (N.D. Cal. 2015), *aff'd sub nom. Hernandez v. DMSI
  Staffing, LLC*, 677 F. App'x 359 (9th Cir. 2017) ...........................................8, 17, 19

*Herrock v. Sutter Health*,
  No. 2:13-CV-00557-MCE, 2014 WL 5501217 (E.D. Cal. Oct. 30, 2014) ................16

*Johnson v. American Airlines*,
  834 F.2d 721 (9th Cir. 1987) ......................................................................................7

*Johnson v. LKQ Foster Auto Parts, Inc.*,
  No. 2:15-CV-02413-KJM-AC, 2016 WL 3418341 (E.D. Cal. June 22, 2016)...........10

*JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd.*,
    536 U.S. 88 (2002) ....................................................................................................10

*Kang v. U. Lim America, Inc.*,
    296 F.3d 810 (N.D. Cal. 2002) ..........................................................................11, 14

*Kaur v. Singh*,
    2014 WL 2208114 (E.D. Cal. May 28, 2014) ...............................................8, 17, 18

*Laird v. Capital Cities/ABC, Inc.*,
    68 Cal.App.4th 727 (1998) ................................................................11, 12, 13, 15

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
    194 F.3d 980 (9th Cir. 1999) .....................................................................................7

*Luna v. Universal Studio City Prods. LLLP*,
    No. CV 12-9286 PSG (SSX), 2013 WL 12308198 (C.D. Cal. Aug. 27, 2013) ................. *passim*

*Menzel v. Scholastic, Inc.*,
    No. 17-CV-05499-EMC, 2018 WL 1400386 (N.D. Cal. Mar. 19, 2018) ..................14

*Moore v. Kayport Package Express*,
    885 F.2d 531 (9th Cir. 1989) ....................................................................................7

*Perez v. DXC Tech. Servs. LLC*,
    No. 17-CV-06066-BLF, 2020 WL 5517276 (N.D. Cal. Sept. 14, 2020) ..................11

*Reyna v. WestRock Co.*,
    2020 WL 5074390 (N.D. Cal. Aug. 24, 2020) .....................................................8, 16

*Rubinstein v. SAP AG*,
    No. C 11-06134 JW, 2012 WL 726269 (N.D. Cal. Mar. 1, 2012) ............................16

*Sightline Payments, LLC v. Everi Holdings Inc.*,
    No. 6:21-CV-01015-ADA, 2022 WL 2078215 (W.D. Tex. June 1, 2022)................14

*In re Toyota Hybrid Brake Litig.*,
    No. 4:20-CV-127, 2021 WL 2805455 (E.D. Tex. July 6, 2021)................................14

*United States v. Corinthian Colleges*,
    655 F.3d 984 (9th Cir. 2011) ....................................................................................7

*WesternGeco LLC v. ION Geophysical Corp.*,
    138 S. Ct. 2129 (2018) .............................................................................................7

**STATUTES**

42 U.S.C.

    § 2000e-1(c)(2) .................................................................................................8, 11

§ 2000e-1(c)(3)(A)-(D) ................................................................................................11

§ 2000e-2(a) ..................................................................................................................7

§ 2000e-3(a) ..................................................................................................................7

Title VII ................................................................................................................ *passim*

Section 1981 ..............................................................................................................1, 5

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure

Rule 12(b)(6) .............................................................................................................1, 9

Rule 15 .........................................................................................................................6

Rule 15(a)(2) .................................................................................................................6

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT

## I.   <u>INTRODUCTION</u>

Plaintiff Antoinette Dickens, a former employee of NXP Semiconductors Germany GmbH ("NXP Germany") in Hamburg, Germany, filed this lawsuit in this district asserting employment discrimination claims under Title VII and Section 1981 against "NXP Semiconductors," a company that does not exist.  Dickens, who is not a resident of California, served Defendant NXP USA, Inc. ("NXP USA"), a U.S.-based entity for which she never worked.  Despite the fact that for five years Dickens lived and worked full-time in Germany for NXP Germany, and *never* for NXP USA, Dickens brought this lawsuit based entirely on alleged discrimination that occurred entirely in Europe while working for NXP Germany.  Presumably because she concedes NXP USA's pending Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure and *Forum Non Conveniens* (ECF No. 21) will completely dispose of her meritless lawsuit, Dickens now seeks leave to amend her original Complaint.  While now acknowledging that her Section 1981 claim must be dismissed (ECF No. 36 at 8, n. 1), her amendments to her Title VII claim still do not establish a proper claim and leave should be denied due to their futility.

Title VII's extraterritorial application is limited to U.S. citizens working for U.S. companies or to such work outside the U.S. for foreign companies acting as an integrated enterprise with U.S. companies.  Here, the FAC fails to allege facts—because there are none—sufficient to show that she was employed by NXP USA or that her actual employer, NXP Germany, was an integrated enterprise with NXP USA.  Dickens attempts to overcome these fatal flaws by now alleging conclusory, contradictory, and implausible facts that NXP USA somehow "controlled" NXP Germany.  The FAC eludes to control in alleging that (1) *unspecified* "senior management" resident in the U.S. were key decision makers that oversaw and managed the global operations of NXP Germany and NXP USA's indirect parent company, NXP Semiconductors N.V. ("NXP NV"); and (2) based on *information and belief* only, David Case, who is based in the U.S., was the final decision maker on all matters relating to hiring, assignment, and termination in Dickens' division in Germany.  Critically, absent from those allegations are that NXP USA employed those persons and specifics concerning *how* NXP USA purportedly dictated corporate and employee relations policy for all NXP entities.

1   To the contrary, Dickens' employment contract with NXP Germany, incorporated by

2   reference into the FAC, and judicial notice of the facts conclude the opposite is true—that the two

3   companies are separate and distinct entities.  The FAC makes clear that Dickens' claims arose from

4   alleged discrimination that occurred *in Germany* during her employment with ***NXP Germany***.

5   Indeed, after the sparse and implausible preliminary allegations added to the proposed amended

6   complaint of supposed U.S. based control, the FAC does not identify the unspecified senior

7   management or allege what, if any, involvement Case had with Dickens' employment or the events

8   that allegedly occurred in Germany.  The proposed allegations in the FAC simply evidence a

9   tactical attempt to forum-shop by attempting to tie Dickens' claims to this district.  The Court

10  should not countenance this type of bad-faith forum shopping.

11  Accordingly, the Court should deny Dickens' Motion.

## II.   FACTUAL BACKGROUND

### A.   Dickens Worked in Germany for NXP Germany, a Foreign Corporation Based in Germany

15  On January 12, 2018, Dickens entered into a written employment agreement with NXP

16  Germany, with a start date of February 2, 2018.  (Declaration of Florian Hartwich in Support of

17  Def.'s Opposition ("Hartwich Dec."), ¶ 5, Ex. 1.)  Dickens signed her employment contract in

18  Hamburg, Germany.  (*Id.*)  Pursuant to the terms of her NXP employment contract, Dickens'

19  "place of work shall be Hamburg" and she acknowledged she had "a valid residency and working

20  permit" to work in Germany.  (*Id.*)  The only employing entity mentioned in Dickens' employment

21  contract is NXP Germany.  (*Id.*)

22  Pursuant to her allegations in her FAC, "Plaintiff reported to NXP managers in Germany"

23  where she lived and worked.  (ECF No. 37-1, Declaration of Pamela M. Keith in Support of

24  Plaintiff's Motion for Leave to Amend the Complaint ("Keith Dec."), Ex. 2 ("FAC") at ¶¶ 4 (she

25  "currently resides and works for [NXP Germany] in its Hamburg, Germany office"), 13 (she "was

26  hired…to work in the… Hamburg Office"), 99 (she had a "residency permit").)[1]

27

28  _____

[1] NXP USA cites to the redline comparison of the proposed FAC with the original Complaint for

2

NXP USA is a United States domestic corporation formed and registered in the State of Delaware with its headquarters in Austin, Texas.  (Request for Judicial Notice ("RJN"), Exs. 2, 3.) As of NXP USA's most recent California Secretary of State filing in February 2023, officers Jennifer Wuamett (CEO) and Srinath Rajen (CFO) were located in the Austin office.  (RJN, Ex. 3.) By contrast, NXP Germany is a foreign corporation registered and incorporated under the laws of Germany with its principal place of business in Hamburg, Germany.  (RJN, Exs. 4, 5.)  NXP Germany is not registered or incorporated in Delaware, California, or the Netherlands.  (RJN, Exs. 6, 7.)

No officers of NXP Germany are officers of NXP USA.  (RJN, Exs. 3, 5.)  Kurt Sievers, identified in paragraph 4 of the Complaint and referenced in paragraphs 1 and 36-28 of the FAC as the CEO supposedly based in San Jose, California, is in fact the CEO of foreign corporation NXP Semiconductors N.V. and an employee of NXP Germany seconded to NXP Semiconductors N.V. (RJN, Exs. 8-11.)  NXP Semiconductors N.V. is a Dutch public company with limited liability incorporated in the Netherlands with its headquarters in Eindhoven, the Netherlands, and the indirect parent company of NXP USA.   (RJN, Exs. 8, 12.)  Sievers is not located in San Jose, but works in Europe and resides in Hamburg, Germany.  (RJN, Exs. 9-11.)

### B.   Dickens Claims in both her Original Complaint and FAC that Her Managers in Germany Harassed, Discriminated, and Retaliated Against Her

Although Dickens broadly alleges her claims "'arose' in both Germany, and in California," Dickens did not allege any plausible facts—in both the original Complaint and FAC—of unlawful conduct that occurred in California.  (FAC, ¶ 8.)  To the contrary, Dickens alleged that all of the unlawful acts upon which this action is based occurred outside of the United States while she was employed by NXP Germany.  Indeed, according to both the Complaint and FAC, all of the events giving rise to her claims occurred in either NXP Germany's Hamburg office (where she was employed) or in the Netherlands.  (*Id.* at ¶¶ 4, 13, 204, 205.)

---

the Court's ease of seeing the original Complaint's failure to state a claim under Title VII cannot be cured by the FAC's amendments.

Specifically, Dickens claims her "NXP managers in Germany"—Gordon Caffrey, John Boggie, Matthias Wagner, Gabor Hornyak, and Peter Van Disseldorp—discriminated against her, subjected her to a hostile work environment, failed to promote her, and paid her less because of her race and sex.  (FAC at ¶¶ 4, 19, 24, 59, 117, 259 (identifying her managers); *id.* at ¶¶ 275-371 (Dickens' claims arise from the actions of her managers).)  All the alleged conduct began "when Plaintiff first arrived in Hamburg" where she lived and worked.  (*Id.* at ¶ 43.)

Dickens claims Caffrey and Boggie allegedly harassed her by making unwelcomed comments about Donald Trump and white supremacy "*in* Plaintiff's *presence*" at the Hamburg office, insulted her, and "berated Plaintiff," all in Germany.  (FAC at ¶¶ 85, 102-108, 111-113, 277, 278, 329, 330 (emphasis added).)  Wagner allegedly harassed Dickens when he allegedly "marched *into* Plaintiff's *office* and began yelling at her."  (*Id.* at ¶¶ 59, 60, 67, 281-285, 333 (emphasis added).)  Hornyak allegedly "bull[ied]" Dickens to take on additional work "a few days *before* Plaintiff" was scheduled to travel outside Germany to the U.S. while on "leave."  (*Id.* at ¶¶ 162, 165, 174, 175 (emphasis added).)  Hornyak allegedly "hounded" Dickens in the Hamburg office about her travel itinerary to the Netherlands, and on May 4, 2022, he flew to the Netherlands to supposedly "confront" her about her travel plans, and spoke to her there in a "hostile and aggressive" manner.  (*Id.* at ¶¶ 233-236.)  Van Disseldorp, based in the Netherlands, became her manager, and he supposedly "pressured" Dickens to return from a medical leave earlier than the "recommended recovery time" from a scheduled surgery, which had been postponed due to "a major wave of respiratory illness in Germany that overwhelmed all the hospitals."  (*Id.* at ¶¶ 259, 263, 264.)

Details related to allegations of a promised but undelivered promotion from Caffrey and Hornyak also occurred exclusively in Germany.  (FAC at ¶¶ 96, 97, 135-138.)  Caffrey allegedly denied Dickens a promotion *after* Dickens returned to work in Germany when she could not travel "[b]ecause of COVID travel restrictions were in place."  (*Id.* at ¶¶ 93, 94.)  Hornyak also allegedly denied Dickens a promotion in Germany *before* her vacation to Chicago.  (*Id.* at ¶¶ 164, 171-174.)  All of these events, either explicitly or by reasonable implication based on the nature of the allegations, occurred in either Germany or the Netherlands and had no connection to the United

States.

The FAC also alleges Dickens raised complaints to a Hamburg Human Resources staffer (FAC at ¶ 77), the Workers' Council in Germany (*id.* at ¶¶ 126, 131, 152, 171, 178, 188, 229), and the HR teams in Germany and the Netherlands (*id.* at ¶¶ 151-154, 157, 167, 169, 179, 185, 199-201, 211, 217, 229-232), but Dickens finds fault with all these individuals and organizations, believing they did not respond appropriately.  (*Id.* at ¶¶ 82, 173, 199-203, 214, 215, 222, 224, 231, 232.)[2]

In short, all of the factual allegations involving alleged harassment and discrimination arise from events occurring primarily in Hamburg, Germany, with a limited number of alleged events occurring in the Netherlands.  The FAC, and with the original Complaint, does not plausibly allege a single action of discrimination, harassment, or retaliation occurring in the United States.

## C.   <u>Dickens Filed Her Complaint Based on Alleged Conduct Occurring in Europe While She Lived and Worked in Germany</u>

On March 9, 2023, Dickens filed her complaint against "NXP Semiconductors" alleging the following causes of action under Title VII and/or Section 1981: hostile work environment based on race (Counts One and Two), disparate treatment based on race (Counts Three and Four), denial of promotion based on race (Counts Five and Six), disparate pay based on race (Counts Seven and Eight), retaliation based on race (Counts Nine and Ten), hostile work environment based on sex (Count Eleven), disparate treatment based on sex (Count Twelve), failure to promote based on sex (Count Thirteen), disparate pay based on sex (Count Fourteen), and retaliation based on sex (Count Fifteen).  (ECF No. 1, Compl. at ¶¶ 235-327.)

On May 26, 2023, NXP USA filed its Motion to Dismiss.  (ECF No. 21.)  The Motion to dismiss primarily argued that Dickens failed to state a claim under Title VII because (1) she failed to identify or make any allegations against NXP; (2) NXP USA never employed Dickens, and

---

[2] Dickens also alleges she met by video conference with Sherry Alexander, "the Head of Diversity and Inclusion," to discuss her concerns, but Alexander indicated that she "would reach out to Lars Reger [], who was located in Hamburg[.]"  (*Id.*, at ¶¶ 155, 157, 159 (emphasis added).)

therefore Dickens did not work overseas for an American employer; and (3) Dickens did not allege facts establishing that NXP USA and NXP Germany were an integrated enterprise.  (ECF No. 21 at 20:24-6, 23:4-6.)  On July 12, 2023, Dickens filed her Opposition to the Motion to Dismiss.  (ECF No. 36.)  Without addressing the deficiencies in the Complaint, Dickens opposed the Motion to Dismiss based on facts alleged in the ***not yet*** filed proposed FAC and other unsupported facts.  (*Id.*; *see* ECF No. 37 (filed on July 17, 2023).)

Dickens now bring this Motion based on the FAC, which attempts to artfully plead conclusory, immaterial, and contradictory allegations to avoid an adverse ruling on the Motion to Dismiss because she effectively concedes her Complaint should be dismissed.  As with the Complaint, the FAC evasively alleges her claims against a generic and non-existent entity "NXP Semiconductors," to avoid identifying an actual entity against which it is brought.  (FAC at p. 2:2-6.)  Specifically, the FAC now alleges various unidentified "senior management" and named personnel based in the U.S.—who had no connection to her claims—denied her promotions, failed to adequately respond to her complaints, and effectively controlled NXP Germany and her employment; yet, Dickens does not allege ***who*** employed those persons or specific facts to make such allegations plausible.

Accordingly, the FAC still fails to state Title VII claims against NXP USA, and also evidences this Motion was brought in bad-faith to gain a tactical litigation advantage via forum-shopping and previewing NXP USA's soon to be filed reply in support of the Motion to Dismiss.[3]

### III.   LEGAL ARGUMENT

Under FRCP Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Rule 15 favors a liberal policy towards amendment, as courts "should freely give leave when justice so requires."  *Id.*; *Genentech, Inc. v. Abbott Lab'ys*, 127

---

[3] Because Dickens filed this Motion after her Opposition to Defendant's Motion to Dismiss, NXP USA is forced to file this Opposition before filing its reply for, and the Court's ruling on, the Motion to Dismiss.  (*See* ECF Nos. 23 (setting the reply deadline to August 2, 2023), 37 (docket text setting the deadline for this Opposition to July 31, 2023).)

F.R.D. 529, 530 (N.D. Cal. 1989).  Factors that may justify denying a request for leave to amend, whether alone or in combination, include undue delay, bad faith or dilatory motive, futility of amendment, prejudice to the opposing party, and repeated failure to cure deficiencies by previous amendments.  *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).  The opposing party bears the burden of demonstrating why leave to amend should not be granted. *Genentech, Inc.*, 127 F.R.D. at 530-31.

A. <u>**Dickens' Proposed Claims Under Title VII (Counts One Through Ten) Are Futile**</u>

Dickens' Title VII claims are futile because NXP USA never employed her or controlled her employer NXP Germany.  "Leave to amend need not be given if a complaint, as amended, is subject to dismissal."  *Moore*, 885 F.2d at 538.  That is, a motion to amend may be denied if it appears to be futile or legally insufficient.  *Carrico v. County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) ("Where the legal basis for a cause of action is tenuous, futility supports the refusal to grant leave to amend"); *Johnson v. American Airlines*, 834 F.2d 721, 734 (9th Cir. 1987) ("But courts have discretion to deny leave to amend a complaint for 'futility,' and futility includes the inevitability of a claim's defeat on summary judgment" (internal citations omitted)); *Gardner v. Island County*, No. 97–36171, 1999 WL 274640, *1 (9th Cir. Apr. 16, 1999) ("The district court did not abuse its discretion in denying Gardner leave to amend. The proposed amendment would have been defeated on a motion for summary judgment and was, therefore, futile").  Under a futility analysis, the court determines if the Complaint's "deficiencies can be cured with additional allegations that are '***consistent with*** the challenged pleading' and ***do not contradict*** the allegations in the original complaint."  *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (emphasis added) (citations omitted).

Title VII prohibits employers from discriminating against employees based on protected categories and retaliating against employees for complaining of such discrimination.  42 U.S.C. §§ 2000e-2(a), 2000e-3(a).  A private right of action under Title VII is intended to "vindicate domestic interests."  *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2138 (2018).  Title VII

extends limited protection to American citizens working overseas for **American employers** or for foreign persons controlled by American employers.  The exemption under 42 U.S.C. § 2000e-1(c)(2) specifically provides that Title VII "shall not apply with respect to the foreign operations of an employer that is a foreign person not controlled by an American employer."

### 1.    Dickens Never Worked for NXP USA

As a threshold matter, the FAC fails to state a claim under Title VII against NXP USA because 1) she fails to identify or make any allegations against NXP USA, and 2) NXP USA never employed Dickens and, therefore, Dickens did not work overseas for an American employer. *Reyna v. WestRock Co.*, 2020 WL 5074390, *1, n.1 (N.D. Cal. Aug. 24, 2020) ("In the caption of her First Amended Complaint, Plaintiff names WestRock California, Inc., but she fails to allege any claims against that entity. [Citations omitted.]  Thus, WestRock California, Inc. is not a party to this lawsuit.).  Nevertheless, the FAC alleges Dickens' claims arose pursuant to "her employment contract[.]"  (FAC at ¶¶ 310, 316, 323, and 350.)  Presumably because she knows she never worked for NXP USA, the FAC evasively alleges only that she was employed by "NXP Semiconductors," without identifying the actual employing entity.  As spelled out in her contract, Dickens was employed by NXP Germany and that her "place of work shall be Hamburg," in Germany.  (Hartwich Dec., ¶ 5, Ex. 1.)  In addition, Dickens alleges she "currently resides and works for Defendant in its Hamburg, Germany office."  (FAC at ¶ 4.)  The FAC also alleges that "Plaintiff reported to NXP managers in Germany[.]"  (FAC at ¶ 4.)  Despite all of this, Dickens attempts to pursue her claims against NXP USA.

Against these fatal allegations, Dickens attempts to cure her Complaint by asserting new or amended allegations that contradict the fundamental bases of her original Complaint.  Amendment is improper when the proposed amendments contradict the original complaint to avoid an adverse ruling on a dispositive motion.  *Kaur v. Singh*, 2014 WL 2208114, **8, 11 (E.D. Cal. May 28, 2014) (denying the plaintiffs' motion because the proposed amendment contradicted the original complaint in an apparent attempt to avoid summary judgment); *Hernandez v. DMSI Staffing, LLC.*, 79 F. Supp. 3d 1054, 1059 (N.D. Cal. 2015) (denying "Plaintiff's motion to amend [because it] appears to have been brought to avoid the possibility of an adverse ruling on the pending motion to

1  compel arbitration."), *aff'd sub nom. Hernandez v. DMSI Staffing, LLC*, 677 F. App'x 359 (9th Cir.

2  2017).  As discussed below, the Court can also deny Dickens' Motion because such contradicting

3  proposed amendments evidence bad faith.

4        **First**, Dickens attempts to get around the judicial admission in her Complaint that NXP

5  Germany employed her pursuant to an employment contract by eliminating some reference to that

6  employment contract in her FAC.  FAC, ¶¶ 10, 302; *see American Title Ins. Co. v. Lacelaw Corp.*,

7  861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings and pretrial orders, unless

8  amended, are considered judicial admissions conclusively binding on the party who made them.")

9  This tactical maneuver appears intended to circumvent the incorporation by reference doctrine,

10  which "is intended to 'prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately

11  omitting documents upon which their claims are based.'"  *Al-Bustani v. Alger*, No. C22-5238JLR,

12  2023 WL 1778814, at *3 (W.D. Wash. Feb. 6, 2023) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756,

13  763 (9th Cir. 2007)).

14        **Second**, Dickens similarly attempts to avoid the judicial admissions in her Complaint that

15  NXP Germany employed her by now alleging that NXP NV—the ultimate parent company of NXP

16  Germany and NXP USA, and not named as a Defendant in this action—was her employer doing

17  business in the U.S.  (FAC, ¶¶ 1, 6, 16.)  Dickens alleged in the original Complaint that "Defendant

18  is… registered in the state of Delaware," but now she alleges in the FAC that "Defendant is…

19  registered in the Netherlands, with wholly owned subsidiaries in the United States, Germany,

20  Taiwan, and several other countries."  (*Id.* at ¶ 1.)  This conflicting allegation, coupled with

21  allegations that "NXP['s]" stock is traded on a U.S. stock exchange, is another apparent tactic to

22  create a connection with the U.S.

23        **Finally**, Dickens amended allegations contained in her original Complaint in an apparent

24  attempt to prevent NXP USA from relying on judicial notice to show NXP USA did not employ

25  Dickens because her managers in Germany did not report to management of NXP USA.  In the

26  Complaint, she alleged her managers in Germany reported up to "CEO Kurt Seivers" [sic], who

27  she claimed is in San Jose, California.  (FAC at ¶ 4.)  Because the corporate filings properly subject

28  to judicial notice reflect that Sievers resides in Germany, is employed by NXP Germany, and is

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT

1   CEO of NXP Semiconductors N.V., headquartered in the Netherlands, Dickens now alleges in the

2   FAC that her mangers in Germany "reported to **unnamed** "leaders in the United States" – some of

3   whom worked for NXP NV. (RJN, Exs. 8-11; Keith Dec., Ex. 2, ¶ 4.)  This amended allegation

4   was intended to create confusion and ambiguity as to the identity of these supposed U.S. "leaders"

5   and to suggest some of those leaders worked for NXP USA.

6   However, based on the facts alleged in her Complaint, FAC, and those that are subject to

7   judicial notice, Dickens cannot plausibly allege that she was employed by NXP USA during the

8   events that are the subject of this lawsuit.  *See Johnson v. LKQ Foster Auto Parts, Inc.*, No. 2:15-

9   CV-02413-KJM-AC, 2016 WL 3418341, at *3 (E.D. Cal. June 22, 2016) (court granted the

10   defendant's motion to dismiss because the complaint identified the defendant as her employer but

11   the notice to the Labor and Workforce Development Agency incorporated by reference identified a

12   different, similarly named entity as her employer, and therefore the complaint failed to allege

13   sufficient facts to allow a plausible identification of her employer, as required to pursue retaliation

14   claim); *Dawson v. One Call Med., Inc.*, No. 320CV01188LABKSC, 2021 WL 5513516, at *2

15   (S.D. Cal. Sept. 21, 2021) (granting motion to dismiss based on judicial notice of defendants'

16   filings with the California Secretary of State because the complaint improperly lumped all

17   defendants together as plaintiff's "employer").

18   Accordingly, Dickens cannot pursue a Title VII claim against NXP USA.

19   ## 2.   NXP Germany is Not an American Employer

20   The FAC also fails to state Title VII claims because NXP Germany is not an American

21   employer.  The exemption for the "foreign operations of an employer that is a foreign person"

22   means "a corporation whose place of incorporation is a foreign country."  *Buchanan v. Watkins &*

23   *Letofsky, LLP*, 30 F.4th 874, 878 (N.D. Cal. 2022).  "[A] corporation has the nationality of the state

24   under the laws of which the corporation is organized."  *JPMorgan Chase Bank v. Traffic Stream*

25   *(BVI) Infrastructure Ltd.*, 536 U.S. 88, 92 (2002) (*quoting* Restatement (Third) of the Foreign

26   Relations Law of the United States § 213 (1987) (Reporters' Note # 5 provides that the general

27   assumption under United States legislation is that place of incorporation determines corporate

28   nationality)).

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT

Here, NXP Germany is a "foreign person" and not an "American employer" because it is incorporated and headquartered in Germany.  (RJN, Exs. 4-7.)  The FAC does not, and cannot, allege any facts to the contrary.

### 3. The FAC Does Not, and Cannot, Allege NXP USA and NXP Germany are an Integrated Enterprise

The only instance where Title VII may apply to the foreign operations of a foreign employer is if that foreign employer is controlled by an American employer.  42 U.S.C. § 2000e-1(c)(2); *see Chiu v. Mann*, No. C 02-4590 VRW, 2003 WL 716247, at *3 (N.D. Cal. Feb. 24, 2003) (dismissing Title VII claim by former employee, a resident of Canada and citizen of the U.S., against foreign employer and its domestic parent corporation because the claim arose from employment that occurred in Canada).  "Control" is determined by the four factor integrated enterprise test: (1) the interrelation of operations; (2) the common management; (3) the centralized control of labor relations; and (4) the common ownership or financial control.  42 U.S.C. § 2000e-1(c)(3)(A)-(D); *see Buchanan*, 30 F.4th at 877-78 (N.D. Cal. 2022); *Luna v. Universal Studio City Prods. LLLP*, No. CV 12-9286 PSG (SSX), 2013 WL 12308198, at **3-6 (C.D. Cal. Aug. 27, 2013) (granting motion to dismiss because the plaintiffs' failed to allege an integrated enterprise theory); *Perez v. DXC Tech. Servs. LLC*, No. 17-CV-06066-BLF, 2020 WL 5517276, at *5 (N.D. Cal. Sept. 14, 2020) (same).  "Corporate entities are presumed to have separate existences, and the corporate form will be disregarded only when the ends of justice require this result."  *Perez*, 2020 WL 5517276, at *3 (*quoting Laird v. Capital Cities/ABC, Inc.*, 68 Cal.App.4th 727, 737 (1998), *disapproved of on other grounds by Reid v. Google, Inc.*, 50 Cal.4th 512 (2010) (internal quotes omitted)).

Although courts consider the four factors together, they often deem centralized control of labor relations the "most critical" factor.  *Kang v. U. Lim America, Inc.*, 296 F.3d 810, 815 (N.D. Cal. 2002) (*citing Hukill v. Auto Care, Inc.*, 192 F.3d 437, 442 (4th Cir. 1999); *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995) and *Childs v. Local 18, Int'l Bhd. of Elec. Workers*, 719 F.2d 1379, 1382 (9th Cir. 1983)).  "[C]ommon ownership or control alone is never enough to establish" liability.  *Laird*, 68 Cal. App. 4th at 737.  The important question is whether

1    NXP USA "had the authority to hire and fire [NXP Germany] employees." *Kang*, 296 F.3d at 815.

2           The decision in *Luna v. Universal Studio City Prods. LLLP* is instructive in showing why

3    the Court should dismiss Plaintiff's Title VII claims without leave to amend. *Luna v. Universal*

4    *Studio City Prods. LLLP*, 2013 WL 12308198.  In *Luna*, the court held that the plaintiff failed to

5    allege sufficient facts that the defendants were an integrated enterprise under *Laird*, *supra*.  To

6    support this theory, the plaintiff alleged the defendant NBCUniversal is a wholly-owned subsidiary

7    of the defendant Comcast, and NBCUniversal owns the defendants Vivendi, UCSP, Universal

8    Parks & Resorts, Universal Studio, and USCL. *Id.* at *4.  The court found that the plaintiff did not

9    satisfy the interrelation of operations factor because allegations (1) that the defendants' names were

10   listed on a paycheck was insufficient to show who financed the paycheck; and (2) that Comcast

11   executives "weigh in on, make decisions, direct, and establish the policies and procedures of

12   NBCUniversal" were conclusory allegations since the plaintiff's complaint "does not specify

13   **which** executives make policies for the subsidiaries, nor does it specify the scope of the executives'

14   authority or the policies implemented." *Id.* (emphasis in original).

15          Similarly, the court found that allegations "that various, **unspecified** Comcast executives

16   oversee NBCUniversal and make decisions regarding NBCUniversal's policies and procedures"

17   was insufficient to show common management. *Luna*, 2013 WL 12308198 at *5 (emphasis

18   added).  Such allegations "do not suggest that the executives did not respect [the other defendants']

19   separate corporate identities." *Id.* (citing *Rhodes v. Sutter Health*, No. CIV 2:12-0013 WBS DAD,

20   2012 WL 662462, at *6 (E.D. Cal. Feb. 28, 2012 ("The Complaint alleges no facts suggesting that

21   individuals with roles at both GMG and SGMF did not respect defendants' separate corporate

22   identities or that Sutter Health or SGMF are so intertwined in GMG's operations as to justify

23   holding them liable alongside GMG as a single employer.")).  The plaintiff also failed to allege

24   sufficient facts of a centralized control of labor relations based on conclusory allegations that (1)

25   the plaintiff worked for all the defendants; (2) Comcast had "necessary control over decision-

26   making, direction, and policies and procedures"; and (3) the defendants managed the plaintiff's

27   working conditions. *Id.*  The plaintiff failed to allege detail of any purported "joint decisions made

28   by Defendants."

As in *Luna*, and as discussed below, Dickens does not allege plausible facts in the FAC establishing that NXP USA "controlled" NXP Germany.

### i.    No Plausible Facts of Interrelated Operations

"To make a sufficient showing of interrelation of operations, a plaintiff must allege facts that suggest that the ***parent*** has exercised control to a degree that exceeds the control normally exercised by a parent corporation." *Luna*, 2013 WL 12308198, *4 (emphasis added and internal quotes omitted).

Dickens cannot show an interrelation of operations because NXP USA is not the parent corporation of NXP Germany. The FAC concedes, and the documents properly subject to judicial confirm, that NXP USA and NXP Germany are both subsidiaries of the same parent corporation— not that NXP Germany is a subsidiary of NXP USA. (FAC at ¶ 16.) Accordingly, Dickens cannot allege any facts to the contrary.

Regardless, the new allegations of supposed interrelated operations are conclusory and insufficient to show NXP USA exercised an abnormal degree of control over NXP Germany. The allegation that "Defendant made no distinction between its subdivisions and entities, routinely and seamlessly placing people from offices in Asia on European projects, people in Europe on U.S. projects, and so forth" does not specify which persons from NXP USA supposedly made those decisions or the scope of those persons' authority. (FAC at ¶ 28.) Further, Dickens does not allege any facts establishing that NXP USA financed the paychecks of NXP Germany's employees. Likewise, although the Dickens alleges "important management decisions" were made in the U.S. (*Id.*, ¶ 25) such as "decisions about resources and budgets were driven by United States based leadership in San Jose" (*id.*, ¶ 15), the FAC does not identify ***what*** those decisions were, ***who*** made such decisions, or ***who*** employed the decision makers.

Moreover, that "all NXP employees have an email address of NXP.com" does not show that NXP USA controlled NXP Germany. (FAC, ¶ 31.) It is common for affiliated companies to use a similar URL in their email addresses, and this alone is not indicia of control sufficient to establish that NXP USA had interrelated operations with NXP Germany. *See*, *e.g.*, *Laird*, 68 Cal. App. 4th at 739 ("Laird's showing that Sutton employees were instructed to hold themselves out to

the public as Cap Cities employees, that Cap Cities made Sutton's employees eligible for certain Cap Cities benefits, and that Cap Cities deemed Sutton employees to come within its general equal-opportunity policy is insufficient as to this prong of the integrated enterprise test.") (*citing to Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1363 (10th Cir. 1993)); *Adam Technologies LLC v. Well Shin Technology Co., Ltd.*, 2021 WL 141371, *8 (D.N.J. 2021) (slip op.) ("Plaintiff's assumption that the two entities are alter-egos, which seems to be based solely on an email address, is not enough to state a claim based on a theory of veil piercing. Without specific allegations addressing how Well Shin dominated or controlled Conntek, the FAC falls short of sufficiently pleading alter ego and/or piercing the corporate veil."); *Sightline Payments, LLC v. Everi Holdings Inc.*, No. 6:21-CV-01015-ADA, 2022 WL 2078215, at *5 (W.D. Tex. June 1, 2022) (reasoning corporate defendants' use of unified social media account, one website, and same domain name in email addresses insufficient to find "alter ego"); *In re Toyota Hybrid Brake Litig.*, No. 4:20-CV-127, 2021 WL 2805455, at *5 (E.D. Tex. July 6, 2021) (declining to find alter ego involving Toyota subsidiaries even though group of companies all presented themselves as "Toyota"); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 168 F. Supp. 3d 918, 937 (E.D. La. 2016) (finding the sharing of a common logo and part of a common name does not evince alter ego status).

The FAC also fails to allege other non-conclusory facts of interrelated operations. *See Kang*, 296 F.3d at 815 (whether corporations have interrelated operations depends on factors such as whether the companies operated at separate locations, filed separate tax returns, held separate director and shareholder meetings, conducted separate banking, purchased good separately, entered into lease agreements separately, and were separately managed). Dickens' allegation based on information and belief that "NXP NV has delegated corporate and employee relations policy to its wholly owned subsidiary, NXP USA" is conclusory and fails to state the facts on which that belief is based. (FAC, ¶ 18) Although "facts may be alleged upon information and belief, that does not mean conclusory allegations are permitted." *Menzel v. Scholastic, Inc.*, No. 17-CV-05499-EMC, 2018 WL 1400386, at *2 (N.D. Cal. Mar. 19, 2018). "An allegation made on information and belief must still be 'based on factual information that makes the inference of culpability plausible[.]'" *Id.* Again, the FAC fails to allege critical facts such as which policies, who

delegated that authority to NXP USA, and how NXP USA implemented such policies with respect to NXP Germany's employees.  And, as set forth in *Laird* and a host of other cases, the mere fact that affiliated entities use common policies (FAC, ¶34) or use the same name in dealing with the public (*id.*, ¶ 31) is insufficient to show interrelated operations.  *Laird*, 68 Cal. App. 4th at 739-40 ("Laird did show that Cap Cities claimed credit in the public eye for Sutton's operations and that Sutton's managers instructed their employees to use the Cap Cities name in dealing with the public because 'it held more clout,' but these facts do not tend to demonstrate that Cap Cities played any part in running Sutton's day-to-day business.").

### ii.   No Plausible Facts of Common Management

"Factors that indicate common management are evidence that an employee serves as a manager of both corporations or evidence that a manager of one company influenced day-to-day managerial decisions of the other company."  *Luna*, 2013 WL 12308198, *5.

Dickens does not allege that her managers were employed by both NXP USA and NXP Germany.  To the contrary, the FAC alleges she entered into a contractual relationship with her employer (contracted with NXP Germany), that she worked in Hamburg, and that she reported to managers in Germany.  (FAC at ¶¶ 4, 13, 40).  Even though the FAC alleges "[o]n information and belief" that "Case was the final decision maker on all matters related to hiring, assignment and termination of personnel in his division" (*id.*, ¶ 26), the FAC fails to allege critical facts such as who employed Case and the scope of his authority.  And even if the FAC alleged that NXP USA employed Case (which it does not), the FAC also fails to allege specific facts about ***what*** important management decisions Case made concerning Dickens' employment such as assigning her work or overseeing her work—in fact, the remaining allegations make clear that Case had no involvement with Dickens' employment.

### iii.   No Plausible Facts of Centralized Control of Labor Relations

There are no allegations that anyone employed by NXP USA in the U.S. hired her, managed her employment, paid her, or discriminated against her.  Because NXP Germany—not NXP USA—hired and employed Dickens, the only plausible inference of the allegation that "Plaintiff reported to NXP managers in Germany" is that those managers were not employees of

NXP USA.  Dickens does not allege NXP USA employed Herbst, who initially managed and hired her, or any of her subsequent managers.  To the extent Dickens alleges Case was the final decision maker concerning her employment, those allegations are undermined by her allegations that Herbst was the person who hired her and that her subsequent managers made all the key decisions concerning her job duties, work assignment, performance reviews, and promotional decisions.  Like Dickens' failure to allege facts supporting Dickens' information and belief that Case was the final decision maker, she likewise fails to allege supporting facts to support her "information and belief" that (1) HR staff in the U.S. decided not to promote her and local HR business partners do not have that authority (FAC at ¶ 204); and (2) "NXP NV has delegated corporate and employee relations policy to its wholly owned subsidiary, NXP USA" (*id.*, ¶ 18).  *Rubinstein v. SAP AG*, No. C 11-06134 JW, 2012 WL 726269, at *8 (N.D. Cal. Mar. 1, 2012) (allegations that German parent corporation's Chief Human Resources Officer and Labor Relations Director had authority over all of the U.S. subsidiary corporation's employees and failed to promote and investigate plaintiff's claims was insufficient to establish claims against German corporation under the integrated enterprise test).  Moreover, the fact that the FAC does not allege NXP USA has any ownership stake in NXP Germany—since two entities are both merely indirect subsidiaries of the same parent corporation—undermines any notion that NXP USA has any authority to control the hiring or firing of NXP Germany's employees.  *Herrock v. Sutter Health*, No. 2:13-CV-00557-MCE, 2014 WL 5501217, at *5 (E.D. Cal. Oct. 30, 2014) (affiliate relationship, "even if one assumes for argument's sake that the entities are viewed as linked," is insufficient); *Reyna*, 2020 WL 5074390, **2-4 (allegation of common policies among affiliate entities that refer to employer as "WestRock" when all affiliate names include "WestRock" and failure to allege facts establishing who controls the plaintiff's work are insufficient to established centralized control).

Accordingly, Dickens is unable to establish that that any entity other than NXP Germany employed her or otherwise controlled the terms and conditions of her employment in Hamburg, Germany.

      **iv.**    **No Plausible Facts of Common Ownership or Financial Control**

As confirmed by *Luna*, this factor is not dispositive because "'common ownership or

1    control alone is never enough to establish parent liability.'"  *Luna*, 2013 WL 12308198, at \*6

2    (quoting *Laird*, 68 Cal. App. 4th at 738).   Although the FAC alleges common ownership, the FAC

3    only alleges a single conclusory fact of financial control.  The FAC merely alleges, without any

4    factual support, that "decisions about resources and budgets were driven by United States based

5    senior leadership in San Jose."  (FAC at ¶ 15.)  Again, the FAC does not identify *who* made those

6    decisions, the scope of authority of such persons to make such decisions, or *which entity* employed

7    such persons.  Presumably this allegation is based, at least in part, on the objectively false claim

8    that Kurt Sievers was employed in San Jose, which is disproven by the documents for which this

9    Court may take judicial notice.  (RJN, Exs. 9-11.)

10         **B.      Dickens Seeks to Amend in Bad Faith**

11        The FAC evidences Dickens' bad faith in bringing this Motion because she (1) alleges new

12   or amended facts that are conclusory, contradictory, and/or implausible for the sole purpose of

13   avoiding an adverse ruling on NXP USA's pending Motion to Dismiss; (2) those same facts show

14   Dickens has engaged in forum-shopping; and (3) the timing of this Motion forces NXP USA to

15   preview potential future motion to dismiss arguments if the Court grants the Motion to Dismiss

16   with leave to amend.

17        Denial of a motion to amend is proper when the movant seeks amendment in bad faith.

18   *Hernandez v. DMSI Staffing, LLC.*, 79 F. Supp. 3d 1054, 1059 (N.D. Cal. 2015).  Evidence of bad

19   faith includes forum-shopping and other procedural gamesmanship where amendment appears

20   motivated to avoid an adverse ruling on a pending motion.  *Id.* (holding the plaintiff's forum-

21   shopping and attempt to avoid the possibility of an adverse ruling on a pending motion to compel

22   arbitration was bad faith); *Kaur v. Singh*, 2014 WL 2208114, \*\*8, 11 (E.D. Cal. May 28, 2014)

23   (holding the plaintiff sought amendment in bad faith because the amendments contradicted the

24   allegations and theories in the complaint that were subject to a pending motion for summary

25   judgment, and thus amendment appeared motivated to avoid an adverse ruling on pending motion);

26   *Calzadillas v. Wonderful Co., LLC*, No. 119CV00172DADJLT, 2019 WL 5448308, at \*4 (E.D.

27   Cal. Oct. 24, 2019) (same).

28        In *Kaur*, the court held that the plaintiff sought amendment in bad faith because the

1  proposed amendment contradicted the original complaint in an apparent attempt to avoid summary

2  judgment.  *Kaur*, 2014 WL 2208114, **8, 11.  The plaintiffs, who were heirs of the decedent killed

3  in a commercial truck accident, filed a wrongful death action against the defendants-driver and

4  employer (Cloud 9).  *Id.* at *1.  The decedent was a passenger in the commercial truck, and both

5  the decedent and driver were employed by Cloud 9.  *Id.*  The plaintiffs' claim required, in part, that

6  the decedent has an employment relationship with Cloud 9.  *Id.* at *7.  After the defendant filed a

7  motion for summary judgment based on a workers' compensation exclusivity defense, the plaintiffs

8  sought leave to amend to (1) change the name of Cloud 9 in order to seek recovery against a

9  different entity; and (2) allege decedent was not an employee and add causes of action to avoid

10  workers' compensation exclusivity.  *Id.* at *11.  The court found the plaintiffs sought to amend in

11  bad faith because the proposed amendments contradicted and abandoned the fundamental theory

12  alleged in the complaint that Cloud 9 employed decedent.  *Id.*

13      Here, the FAC evidences Dickens' bad faith because she now alleges implausible and

14  conclusory facts that NXP USA employed her and/or that NXP USA is an integrated enterprise

15  with NXP Germany.  As discussed, the FAC, facts established by judicial notice and incorporation

16  by reference, and the contradicting facts in the Complaint establish NXP USA never employed

17  Dickens.  Dickens' failure to also allege sufficient plausible facts that NXP USA controlled NXP

18  Germany show Dickens bring this Motion to avoid an adverse ruling on NXP USA's Motion to

19  Dismiss.  Again, the FAC does not allege any of the unspecified senior management or decision

20  makers in the U.S. were employed by NXP USA or that they had any involvement in the events

21  giving rise to Dickens' claims.  Indeed, Dickens has already used those allegations to support her

22  Opposition to NXP USA's Motion to Dismiss.   Because without those allegations, she cannot

23  argue "that sufficient witnesses are resident in the United States, such as…the head of her Division

24  [David Case]" to support her *forum non conveniens* argument.  (ECF No. 36 at 23:10-16.)

25      Moreover, those allegations also evidence forum-shopping because the only persons with

26  alleged ties to the U.S. had nothing to do with Dickens' claims.  As Dickens' Opposition to NXP

27  USA's Motion to Dismiss makes clear, she seeks venue in California because "the people of

28  California *actually do care*…[about] equality and fair play" and "a jury in Germany [] would

struggle to understand Plaintiff's claims in this case" because "German courts do not have a grasp on the nuances of historic and systemic race discrimination, and the intersectionality of race and gender at issue in this case." (ECF No. 36 at 24-25 (emphasis in original).)

Finally, as in *Hernandez*, the timing of this Motion in relation to Dickens' Opposition to the Motion to Dismiss shows Dickens has a motive to gain a tactical advantage in this litigation. By filing this Motion before the Court rules on the pending Motion to Dismiss, Dickens has forced NXP USA to preview its arguments on a future motion to dismiss should the Court grant the Motion to Dismiss with leave to amend. *See Hernandez*, 79 F. Supp. 3d 1054 at 1060 (the timing of plaintiff's motion to amend supported finding of bad faith because the plaintiff could preview the defendant's arguments in motion that would appear to benefit the plaintiff in deciding litigation strategy). Further, because Dickens opposed the Motion to Dismiss based on the FAC without attaching it and then waited five days to file this Motion, NXP USA has less time to prepare its reply brief in support of the Motion to Dismiss.

Thus, the sum of Dickens' procedural tactics manifest her bad faith.

## IV.  **CONCLUSION**

Based on the foregoing, NXP USA respectfully requests the Court deny this Motion.

DATED:  July 31, 2023                    OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By:  /s/ Graham M. Helm
     THOMAS M. MCINERNEY
     GRAHAM M. HELM
     Attorneys for Defendant
     NXP USA, Inc. (erroneously sued as
     NXP SEMICONDUCTORS)

57344570.v1-OGLETREE