THOMAS M. MCINERNEY, CA Bar No. 162055
thomas.mcinerney@ogletree.com
GRAHAM M. HELM, CA Bar No. 316002
graham.helm@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
One Embarcadero Center, Suite 900
San Francisco, CA  94111
Telephone:    415-442-4810
Facsimile:    415-442-4870

Attorneys for Defendant
NXP USA, Inc. (erroneously sued as
NXP SEMICONDUCTORS)

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTOINETTE DICKENS,<br><br>Plaintiff,<br><br>v.<br><br>NXP SEMICONDUCTORS,<br><br>Defendant. | Case No. 5:23-cv-01073-BLF<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT NXP USA, INC.'S OPPOSITION TO PLAINTIFF ANTOINETTE DICKENS' MOTION FOR LEAVE TO AMEND THE COMPLAINT**<br><br>Date:          December 21, 2023<br>Time:          9:00 a.m.<br>Location:     Courtroom 3, San Jose Courthouse<br><br>Complaint Filed: March 9, 2023<br>Trial Date:      None Set<br>Judge:          Hon. Beth L. Freeman |

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO AMEND THE COMPLAINT

Pursuant to Rule 201 of the Federal Rules of Evidence, defendant NXP USA, Inc. (erroneously sued as NXP SEMICONDUCTORS) hereby requests that the Court take judicial notice of the following:[1]

**Exhibit 2:**  Printout of the search results for "NXP USA, Inc." on the Delaware Secretary of State's Entity Search webpage, accessible from https://icis.corp.delaware.gov/ecorp/entitysearch/NameSearch.aspx.

**Exhibit 3:**  NXP USA, Inc.'s Statement of Information Corporation filed on February 20, 2023, with the California Secretary of State, accessible from https://bizfileonline.sos.ca.gov/search/business.

**Exhibit 4:**  NXP Semiconductors Germany GmbH's Registration Information from the Federal Republic of Germany's Company Register, in German, accessible from https://www.unternehmensregister.de/ureg/index.html;jsessionid=60F484E0053101ECF36B5E1FD60EFC30.web03-1.

**Exhibit 5:**  NXP Semiconductors Germany GmbH's Registration Information from the Federal Republic of Germany's Company Register, translated from German into English with the translation certification.

**Exhibit 6:**  Printout of the search results for "NXP Semiconductors Germany" on the Delaware Secretary of State's Entity Search webpage, accessible from https://icis.corp.delaware.gov/ecorp/entitysearch/NameSearch.aspx.

**Exhibit 7:**  Printout of the search results for "NXP Semiconductors Germany" on the California Secretary of State's Business Search webpage, accessible from https://bizfileonline.sos.ca.gov/search/business.

**Exhibit 8:**  Excerpts of United States Securities and Exchange Form 10-K for NXP Semiconductors N.V., filed on March 1, 2023 ("SEC Form 10-K"),

---

[1] This Request for Judicial Notice is supported by the Declaration of Graham M. Helm in Support of Defendant's Opposition to Plaintiff's Motion for Leave to Amend the Complaint filed concurrently herewith.

1    https://www.sec.gov/Archives/edgar/data/1413447/000141344723000006/nxpi-20221231.htm.

2           **Exhibit 9:**  Exhibit 10.13 to the SEC Form 10-K,

3    https://www.sec.gov/Archives/edgar/data/1413447/000141344720000016/fy2020q18kexhibit10_1.htm.

4           **Exhibit 10:**  Exhibit 10.14 to the SEC Form 10-K,

5    https://www.sec.gov/Archives/edgar/data/1413447/000141344720000016/fy2020q18kexhibit10_2.htm.

6           **Exhibit 11:**  Exhibit 10.15 to the SEC Form 10-K,

7    https://www.sec.gov/Archives/edgar/data/1413447/000141344720000026/a104exhibit104kurtsiever.htm.

8           **Exhibit 12:**  Exhibit 21.1 to the SEC Form 10-K,

9    https://www.sec.gov/Archives/edgar/data/1413447/000141344723000006/a211listofsubsidiaries.htm.

10          Rule 201(b) of the Federal Rules of Evidences provides that "[t]he Court may judicially

11   notice a fact that is not subject to reasonable dispute  because it: (1) is generally known within the

12   trial court's territorial jurisdiction; or (2) capable of accurate and ready determination by resort to

13   sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  The Court may

14   take judicial notice of public filings, including documents filed with secretaries of state, and search

15   results from the California Secretary of State's Business Search webpage and search results from

16   Delaware's Secretary of State Entity Search webpage.  *Force v. Advanced Structural Techs., Inc.*,

17   No. CV202219DMGAGRX, 2020 WL 4539026, at *1, n.1 (C.D. Cal. Aug. 6, 2020) (taking

18   judicial notice of documents filed with the California Secretary of State, search results on

19   California's Secretary of State's Business Search webpage, and search results on Delaware's

20   Secretary of State Entity Search webpage); *Dawson v. One Call Med., Inc*., No.

21   320CV01188LABKSC, 2021 WL 5513516, at *2 (S.D. Cal. Sept. 21, 2021) (taking judicial notice

22   of defendants' filings with the California Secretary of State to determine whether plaintiff alleged

23   sufficient facts to establish which defendant was plaintiff's ostensible employer); *Wynn v. Chanos*,

24   75 F. Supp. 3d 1228, 1235 (N.D. Cal. 2014) ("SEC forms such as a Form 8-K or Form 10-K are

25   matters of public record and may be subject to judicial notice.").

26          Based on the foregoing, **Exhibits 2 through 12** are properly subject to judicial notice.

27   Defendant NXP USA, Inc. respectfully requests the Court grant this request for judicial notice.

28   //

1

2

DATED:  July 31, 2023

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

3

By:  /s/ Graham M. Helm

4

THOMAS M. MCINERNEY
GRAHAM M. HELM

5

Attorneys for Defendant
NXP USA, Inc. (erroneously sued as NXP SEMICONDUCTORS)

6

7

57509551.v1-Ogletree

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT

# EXHIBIT 2



**Department of State: Division of Corporations**

[Allowable Characters](#)

| HOME | |
|---|---|
| | **Entity Details** |

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| File Number: | 3732169 | Incorporation Date / Formation Date: | 12/3/2003 (mm/dd/yyyy) |
|---|---|---|---|
| Entity Name: | NXP USA, INC. | | |
| Entity Kind: | Corporation | Entity Type: | General |
| Residency: | Domestic | State: | DELAWARE |

**REGISTERED AGENT INFORMATION**

| Name: | CORPORATION SERVICE COMPANY | | |
|---|---|---|---|
| Address: | 251 LITTLE FALLS DRIVE | | |
| City: | WILMINGTON | County: | New Castle |
| State: | DE | Postal Code: | 19808 |
| Phone: | 302-636-5401 | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status ○ Status,Tax & History Information

[Submit]

[View Search Results]                           [New Entity Search]

For help on a particular field click on the Field Tag to take you to the help area.

site map  |  privacy  |  about this site  |  contact us  |  translate  |  delaware.gov

# EXHIBIT 3


BA20230287428



## STATE OF CALIFORNIA
*Office of the Secretary of State*
## STATEMENT OF INFORMATION
## CORPORATION

California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

<table>
<tr><td>For Office Use Only</td></tr>
<tr><td><strong>-FILED-</strong></td></tr>
<tr><td>File No.: BA20230287428</td></tr>
<tr><td>Date Filed: 2/20/2023</td></tr>
</table>

| Entity Details | |
|---|---|
| Corporation Name | NXP USA, INC. |
| Entity No. | 2579598 |
| Formed In | DELAWARE |

**Street Address of Principal Office of Corporation**

| Principal Address | 6501 WILLIAM CANNON DRIVE WEST AUSTIN, TX 78735 |
|---|---|

**Mailing Address of Corporation**

| Mailing Address | 6501 WILLIAM CANNON DRIVE WEST AUSTIN, TX 78735 |
|---|---|
| Attention | |

**Street Address of California Office of Corporation**

| Street Address of California Office | None |
|---|---|

**Officers**

| Officer Name | Officer Address | Position(s) |
|---|---|---|
| JENNIFER WUAMETT | 6501 WILLIAM CANNON DRIVE WEST AUSTIN, TX 78735 | Chief Executive Officer, Secretary |
| Srinath Rajen | 6501 William Cannon Drive West Austin, TX 78735 | Chief Financial Officer |

**Additional Officers**

| Officer Name | Officer Address | Position | Stated Position |
|---|---|---|---|
| None Entered | | | |

**Agent for Service of Process**

| California Registered Corporate Agent (1505) | CSC - LAWYERS INCORPORATING SERVICE Registered Corporate 1505 Agent |
|---|---|

**Type of Business**

| Type of Business | GENERAL CORPORATE |
|---|---|

**Email Notifications**

| Opt-in Email Notifications | Yes, I opt-in to receive entity notifications via email. |
|---|---|

**Labor Judgment**

No Officer or Director of this Corporation has an outstanding final judgment issued by the Division of Labor Standards Enforcement or a court of law, for which no appeal therefrom is pending, for the violation of any wage order or provision of the Labor Code.

Electronic Signature

☒  By signing, I affirm that the information herein is true and correct and that I am authorized by California law to sign.


*Jennifer Wuamett*
Signature

*02/20/2023*
Date

B1516-9889 02/20/2023 8:48 AM Received by California Secretary of State

# EXHIBIT 4

| Handelsregister B des Amtsgerichts Hamburg | Abteilung B Wiedergabe des aktuellen Registerinhalts Abruf vom 09.05.2023 20:10 | Nummer der Firma: **HRB 84865** |
|---|---|---|
| | Seite 1 von 2 | |

1.  Anzahl der bisherigen Eintragungen:

    47

2.  a) Firma:

    NXP Semiconductors Germany GmbH

    **b) Sitz, Niederlassung, inländische Geschäftsanschrift, empfangsberechtigte Person, Zweigniederlassungen:**

    Hamburg
    Geschäftsanschrift: Troplowitzstraße 20, 22529 Hamburg

    **c) Gegenstand des Unternehmens:**

    Die Entwicklung, die Herstellung, der Vertrieb und das Marketing von Halbleiter-Bauelementen.

3.  Grund- oder Stammkapital:

    75.600.000,00 EUR

4.  a) Allgemeine Vertretungsregelung:

    Ist nur ein Geschäftsführer vorhanden, so vertritt er die Gesellschaft allein. Sind mehrere Geschäftsführer bestellt, so wird die Gesellschaft durch zwei Geschäftsführer oder durch einen Geschäftsführer gemeinsam mit einem Prokuristen vertreten.
    Alleinvertretungsbefugnis kann erteilt werden. Geschäftsführer können ermächtigt werden, mit sich im eigenen Namen oder als Vertreter eines Dritten Rechtsgeschäfte vorzunehmen.

    **b) Vorstand, Leitungsorgan, geschäftsführende Direktoren, persönlich haftende Gesellschafter, Geschäftsführer, Vertretungsberechtigte und besondere Vertretungsbefugnis:**

    Vertretungsberechtigt gemäß allgemeiner Vertretungsregelung; mit der Befugnis, im Namen der Gesellschaft mit sich als Vertreter eines Dritten Rechtsgeschäfte abzuschließen:
    Geschäftsführer: Alves Mendes, Manuel, München, *07.07.1976
    Geschäftsführer: Hoffmann, Michael Thomas, Hamburg, *03.10.1971
    Geschäftsführer: Reger, Lars, Hemdingen, *13.12.1970
    Geschäftsführer: Spinty, Torsten, Hamburg, *25.02.1974

5.  Prokura:

    Gesamtprokura gemeinsam mit einem Geschäftsführer oder einem anderen Prokuristen:
    Ahlborn, Birgit, Hamburg, *11.04.1973
    Dinkel, Rainer, Baldham, *22.04.1965
    Eddelbüttel, Carmen, Hamburg, *21.07.1976
    Engel, Marie, München, *26.06.1985
    Gholami, Ava, Hamburg, *02.04.1984
    Hartwich, Florian, Hamburg, *03.05.1986
    Hinrichsen, Jens, Hamburg, *23.01.1967

Dr. Köster, Max Damian, Hamburg, *23.11.1979
Lehmann, Stephan Eberhard, Garching, *17.10.1963
Lehmann, Torsten, Hamburg, *25.05.1972
Merker, Oliver Alexander, Landsberg am Lech, *09.06.1982
Riebesell, Katrin, Hamburg, *18.06.1975
Schröer, Wiebke, München, *17.12.1987
Schuster, Nathalie, Olching, *20.03.1992
Sievers, Kurt, Hamburg, *09.04.1969
Spanholtz, Nina, Seevetal, *18.08.1979
Straub, Heinrich Stefan Ludwig, München, *04.11.1961
Wiese, Peter, Anzing, *09.06.1967
Wilkens, Annekathrin, Hamburg, *15.03.1986
Winkler, Kerstin, Hamburg, *27.07.1980


6.    a) Rechtsform, Beginn, Satzung oder Gesellschaftsvertrag:

Gesellschaft mit beschränkter Haftung
Gesellschaftsvertrag vom 14.08.2002
Zuletzt geändert durch Beschluss vom 22.04.2010

b) Sonstige Rechtsverhältnisse:

Die Gesellschaft ist als übernehmender Rechtsträger nach Maßgabe des Verschmelzungsvertrages vom 27.11.2006 sowie der Zustimmungsbeschlüsse ihrer Gesellschafterversammlung und der Hauptversammlung des übertragenden Rechtsträgers vom jeweils selben Tage mit der Philips Semiconductors Dresden AG mit Sitz in Dresden (Amtsgericht Dresden, HRB 18227) verschmolzen.
Die Gesellschaft ist als übernehmender Rechtsträger nach Maßgabe des Verschmelzungsvertrages vom 26.07.2012 sowie der Zustimmungsbeschlüsse der Gesellschafterversammlungen der beteiligten Rechtsträger vom selben Tage mit der NXP Semiconductors GA GmbH mit Sitz in Hamburg (Amtsgericht Hamburg HRB 103349) verschmolzen.
Die Gesellschaft ist als übernehmender Rechtsträger nach Maßgabe des Verschmelzungsvertrages vom 18.10.2016 sowie der Zustimmungsbeschlüsse der Gesellschafterversammlungen der beteiligten Rechtsträger vom selben Tage mit der Freescale Halbleiter Deutschland GmbH mit Sitz in München (Amtsgericht München HRB 151590) verschmolzen.


7.    a) Tag der letzten Eintragung:

09.05.2023

# EXHIBIT 5

Case 5:23-cv-01073-PCP   Document 40-3   Filed 07/31/23   Page 14 of 58

**1.**     **Number of previous entries:**

47

**2.**     **a) Company name:**

NXP Semiconductors Germany GmbH

**b) Registered office, branch office, domestic business address, person authorized to receive, subsidiaries:**

Hamburg
Business address: Troplowitzstraße 20 22529 Hamburg

**c) Business purpose of the company:**

The development, manufacture, sales, and marketing of semiconductor components.

**3.**     **Capital stock or share capital:**

EUR 75,600,000.00

**4.**     **a) General representation rules:**

If only one managing director is appointed, the company is represented by him/her alone. If several managing directors are appointed, the company is represented jointly by two managing directors, or by one managing director together with one authorized officer (*Prokurist*).
Sole power of representation may be granted. Managing directors may be authorized to enter into legal transactions with themselves in their own name or as representatives of third parties.

**b) Board of Management, governing body, executive directors, personally liable shareholders, managing directors, authorized representatives, and holders of special powers of representation:**

Authorized to represent the company in accordance with general representation rules; authorized to enter into legal transactions on behalf of the company with themselves as a representative of a third party:
Managing Director: Manuel Alves Mendes, from Munich, DOB: 07/07/1976
Managing Director: Michael Thomas Hoffmann, from Hamburg, DOB: 10/03/1971
Managing Director: Lars Reger, from Hemdingen, DOB: 12/13/1970
Managing Director: Torsten Spinty, from Hamburg, DOB: 02/25/1974

**5.**     **Authorized officers:**

Joint representation together with one managing director or another authorized officer:
Birgit Ahlborn, from Hamburg, DOB: 04/11/1973
Rainer Dinkel, from Baldham, DOB: 04/22/1965
Carmen Eddelbüttel, from Hamburg, DOB: 07/21/1976
Marie Engel, from Munich, DOB: 06/26/1985
Ava Gholami, from Hamburg, DOB: 04/02/1984
Florian Hartwich, from Hamburg, DOB: 05/03/1986
Jens Hinrichsen, from Hamburg, DOB: 01/23/1967

Dr. Max Damian Köster, from Hamburg, DOB: 11/23/1979
Stephan Eberhard, Lehmann from Garching, DOB: 10/17/1963
Torsten Lehmann, from Hamburg, DOB: 05/25/1972
Oliver Alexander Merker, from Landsberg am Lech, DOB: 06/09/1982
Katrin Riebesell, from Hamburg, DOB: 06/18/1975
Wiebke Schröer, from Munich, DOB: 12/17/1987
Nathalie Schuster, from Olching, DOB: 03/20/1992
Kurt Sievers, from Hamburg, DOB: 04/09/1969
Nina Spanholtz, from Seevetal, DOB: 08/18/1979
Heinrich Stefan Ludwig, Straub from Munich, DOB: 11/04/1961
Peter Wiese, from Anzing, DOB: 06/09/1967
Annekathrin Wilkens, from Hamburg, DOB: 03/15/1986
Kerstin Winkler, from Hamburg, DOB: 07/27/1980


**6.    a) Legal form, beginning, articles of association or partnership agreement:**

Limited liability company
Articles of association dated 08/14/2002
Last amended on 04/22/2010 by shareholders' resolution


**b) Other legal relationships:**

The company, as the acquiring legal entity, merged with Philips Semiconductors Dresden AG, with its registered office in Dresden (District Court of Dresden, HRB 18227), in accordance with the merger agreement dated November 27, 2006 and the resolutions of consent of its shareholders' meeting and the general meeting of the transferring legal entity from the same day.
The company, as the acquiring legal entity, merged with NXP Semiconductors GA GmbH, with its registered office in Hamburg (District Court of Hamburg, HRB 103349), in accordance with the merger agreement dated July 26, 2012 and the resolutions of consent of the shareholders' meetings of the participating legal entities from the same day.
The company, as the acquiring legal entity, merged with Freescale Halbleiter Deutschland GmbH, with its registered office in Munich (District Court of Munich, HRB 151590), in accordance with the merger agreement dated October 18, 2016 and the resolutions of consent of the shareholders' meetings of the participating legal entities from the same day.


**7.    a) Date of the most recent entry:**

05/09/2023



City of New York, State of New York, County of New York

I, Dan McCourt, hereby certify that the document "**NXP Germany registerdocument-2023-05-09-20-10-12 (2)**" is, to the best of my knowledge and belief, a true and accurate translation from German into English.



Dan McCourt

Sworn to before me this
May 18, 2023

_____
Signature, Notary Public

_____
Stamp, Notary Public

# EXHIBIT 6



**Department of State: Division of Corporations**

Allowable Characters

**HOME**

Frequently Asked Questions

To retrieve information on a Delaware entity, Key in the name of the entity you are searching. The search results will return both active and inactive entities from our database. This is not an indication of the current status of an entity. The information provided in this application is real time and reflects the information on our database as of the date of the search. When the list of names is returned click the name and the information page will be returned.

The entity information provided on this website, free of charge, consists of the entity name, file number, incorporation/formation date, registered agent name, address, phone number and residency.

However, additional information can be obtained for a fee.

If you would like to order a Certificate of Status, Certified Copy of a filed document or a Plain Copy of same, please contact a Delaware online agent. Please click here.

For more information please read the Frequently Asked Questions page.

---

General Information Name Search

---

✱  Required Field

✱  Entity Name:                                    ✱  File Number:

[ NXP Semiconductors Germany ]      or      [                    ]

[This field is not case sensitive.]
[For exact searches use quotation marks.]

Search

**No Records Found.**

| FILE NUMBER | ENTITY NAME |
| --- | --- |

To ensure everyone using the Division of Corporations search tools has the best experience possible, the Division strongly discourages the use of automated tools to search or mine data. We also discourage excessive and repeated searches that may have a negative impact on our systems and customer experience. Failure to use these tools in a responsible manner may result in the suspension of your access to utilize this service.

For help on a particular field click on the Field Tag to take you to the help area.

# EXHIBIT 7

**California**
*Secretary of State*

Business      UCC         Login

⌂ Home

🔍 Search

📄 Forms

❓ Help

# Business Search

*The California Business Search provides access to available information for* **corporations**, **limited liability companies** *and* **limited partnerships** *of record with the California Secretary of State, with* **free PDF copies** *of over 17 million imaged business entity documents, including the most recent imaged Statements of Information filed for Corporations and Limited Liability Companies.*

*Currently, information for Limited Liability Partnerships (e.g. law firms, architecture firms, engineering firms, public accountancy firms, and land survey firms), General Partnerships, and other entity types are* **not contained** *in the California Business Search. If you wish to obtain information about LLPs and GPs, submit a Business Entities Order paper form to request copies of filings for these entity types. Note: This search is not intended to serve as a name reservation search. To reserve an entity name, select Forms on the left panel and select Entity Name Reservation ? Corporation, LLC, LP.*

### Basic Search

- A Basic search can be performed using an entity name or entity number. When conducting a search by an entity number, where applicable, **remove "C"** from the entity number. Note, **a basic search** will search **only ACTIVE entities** (Corporations, Limited Liability Companies, Limited Partnerships, Cooperatives, Name Reservations, Foreign Name Reservations, Unincorporated Common Interest Developments, and Out of State Associations). The basic search performs a contains ?keyword? search. The Advanced search allows for a ?starts with? filter. To search entities that have a status other than active or to refine search criteria, use the **Advanced** search feature.

### Advanced Search

- An Advanced search is required when searching for publicly traded disclosure information or a status other than active.

- An Advanced search allows for searching by specific entity types (e.g., Nonprofit Mutual Benefit Corporation) or by entity groups (e.g., All Corporations) as well as searching by ?begins with? specific search criteria.

**Disclaimer:** *Search results are limited to the 500 entities closest matching the entered search criteria. If your desired search result is not found within the 500 entities provided, please refine the search criteria using the Advanced search function for additional results/entities. The California Business Search is updated as documents are approved. The data provided is not a complete or certified record*

Skip to main content    State

Search | California Secretary of State



| Business | UCC |
|---|---|

*indirectly from reliance on the accuracy, reliability, or timeliness of the information that is provided. All such information is provided "as is." To order certified copies or certificates of status, (1) locate an entity using the search; (2)select Request Certificate in the right-hand detail drawer; and (3) complete your request online.*

NXP Semiconductors Germany 

Advanced ⌄



No results were found for "NXP Semiconductors Germany"

Try your search again with different filters or a different search term.

© 2023 CA Secretary of State

# EXHIBIT 8

**UNITED STATES**

**SECURITIES AND EXCHANGE COMMISSION**

**Washington, D.C. 20549**

# FORM 10-K

(Mark One)

☒ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the fiscal year ended December 31, 2022

or

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the transition period from          to          .

Commission File Number: **001-34841**

---

# NXP Semiconductors N.V.

(Exact name of registrant as specified in its charter)

| | |
|---|---|
| **Netherlands** | **98-1144352** |
| (State or other jurisdiction | |
| of incorporation or organization) | (I.R.S. employer identification number) |

| | |
|---|---|
| **60 High Tech Campus** | |
| **Eindhoven** | |
| **Netherlands** | **5656 AG** |
| (Address of principal executive offices) | (Zip Code) |

**+31     40 2729999**

(Registrant's telephone number, including area code)

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Trading symbol(s) | Name of each exchange on which registered |
|---|---|---|
| Common shares, EUR 0.20 par value | NXPI | The Nasdaq Global Select Market |

Securities registered pursuant to Section 12(g) of the Act: None

Indicate by check mark if the Registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.

Yes ☒  No ☐

Indicate by check mark if the Registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act.

Yes ☐  No ☒

Indicate by check mark whether the Registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the Registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.

**Part IV**

**Item 15. Exhibits and Financial Statement Schedules**

(a) 1. Financial Statements:

   See "List of Financial Statements" within the Consolidated Financial Statements

(a) 2. Financial Statement Schedules:

   Not applicable or the required information is otherwise included in the Consolidated Financial Statements and accompanying notes.

(a) 3. Exhibits:

The exhibits listed on the index below are filed as part of, or hereby incorporated by reference into, this Form 10-K.

| Exhibit Number | Description of Document |
| --- | --- |
| 3.1 | Articles of Association of NXP Semiconductors N.V. dated June 9, 2020 (incorporated by reference to Exhibit 3.1 to the Company's quarterly report on Form 10-Q of NXP Semiconductors N.V., filed on July 28, 2020) |
| 4.1 | Description of the Company's securities (incorporated by reference to Exhibit 4.1 of the Company's Annual report on Form 10-K filed on February 25, 2021) |
| 4.2 | Senior Indenture dated as of May 23, 2016, between NXP B.V. and NXP Funding LLC as Issuers, each of the guarantors party thereto and Deutsche Bank Trust Company Americas as Trustee (incorporated by reference to Exhibit 2 of the Form 6-K of NXP Semiconductors N.V. filed on August 2, 2016) |
| 4.3 | Senior Indenture dated as of December 6, 2018, among NXP B.V., NXP Funding LLC, each of the guarantors party thereto and Deutsche Bank Trust Company Americas as trustee (incorporated by reference to Exhibit 4.13 of the Form 20-F of NXP Semiconductors N.V. filed on March 1, 2019) |
| 4.4 | Senior Indenture dated as of June 18, 2019, among NXP B.V., NXP Funding LLC, NXP USA, Inc. as Issuers, NXP Semiconductors N.V. as Guarantor and Deutsche Bank Trust Company Americas as Trustee (incorporated by reference to Exhibit 4 of the Form 6-K of NXP Semiconductors N.V. filed on July 30, 2019) |
| 4.5 | Senior Indenture, dated as of May 1, 2020, among NXP B.V., NXP Funding LLC, NXP USA, Inc. as Issuers, NXP Semiconductors N.V. as Guarantor and Deutsche Bank Trust Company Americas, as Trustee (incorporated by reference to Exhibit 4.1 to the Company's Current Report on Form 8-K of NXP Semiconductors N.V., filed on May 1, 2020) |
| 4.6 | Senior Indenture, dated as of May 11, 2021, among the Issuers, the Company and Deutsche Bank Trust Company Americas, as trustee (incorporated by reference to Exhibit 4.1 to the Company's Current Report on Form 8-K of NXP Semiconductors N.V., filed on May 11, 2021) |
| 4.7 | Senior Indenture, dated as of November 30, 2021, among the Issuers, the Company and Deutsche Bank Trust Company Americas, as trustee (incorporated by reference to Exhibit 4.1 to the Company's Current Report on Form 8-K of NXP Semiconductors N.V., filed on November 30, 2021) |
| 4.8 | Base Indenture, dated May 16, 2022, among NXP B.V., NXP Funding, LLC, NXP USA, Inc., NXP Semiconductors N.V. and Deutsche Bank Trust Company Americas (incorporated by reference to Exhibit 4.1 to the Company's Current Report on Form 8-K of NXP Semiconductors N.V. filed on May 16, 2022) |
| 4.9 | First Supplemental Indenture, dated as of May 16, 2022, among NXP B.V., NXP Funding, LLC, NXP USA, Inc., NXP Semiconductors N.V. and Deutsche Bank Trust Company Americas (incorporated by reference to Exhibit 4.2 to the Company's Current Report on Form 8-K of NXP Semiconductors N.V. filed on May 16, 2022) |

107

| | |
|---|---|
| 10.1 | Intellectual Property Transfer and License Agreement dated as of September 28, 2006 between Koninklijke Philips Electronics N.V. and NXP B.V. (incorporated by reference to Exhibit 10.1 of the Amendment No. 3 to the Registration Statement on Form F-1 of NXP Semiconductors N.V. filed on June 30, 2010 (File No. 333-166128)) |
| 10.2 | Intellectual Property Transfer and License Agreement dated as of November 16, 2009 among NXP B.V., Virage Logic Corporation and VL C.V. (incorporated by reference to Exhibit 10.2 of the Amendment No. 3 to the Registration Statement on Form F-1 of NXP Semiconductors N.V. filed on June 30, 2010 (File No. 333-166128)) |
| 10.3 | Shareholders' agreement dated as of March 30, 1999, as amended among EBD Investments Pte. Ltd., Koninklijke Philips Electronics N.V. and Taiwan Semiconductor Manufacturing Company Ltd. (incorporated by reference to Exhibit 10.4 of the Amendment No. 3 to the Registration Statement on Form F-1 of NXP Semiconductors N.V. filed on June 30, 2010 (File No. 333-166128)) |
| 10.4 | Lease Agreement dated as of December 23, 2004 between Jurong Town Corporation and Systems on Silicon Manufacturing Company Pte. Ltd. for the property at No. 70 Pasir Ris Drive 1, Singapore (incorporated by reference to Exhibit 10.8 of the Amendment No. 2 to the Registration Statement on Form F-1 of NXP Semiconductors N.V. filed on June 10, 2010 (File No. 333-166128)) |
| 10.5+ | Long Term Incentive Plan 2015/6 Terms and Conditions with regard to the Stock Option Plan, the Performance Stock Unit Plan and the Restricted Stock Unit Plan (incorporated by reference to Exhibit 10.22 of the Form 20-F of NXP Semiconductors N.V. filed on February 26, 2016) |
| 10.6+ | NXP Semiconductors N.V. 2019 Omnibus Incentive Plan (incorporated by reference to Exhibit 4.3 of the Form S-8 of NXP Semiconductors N.V. filed on September 10, 2019 (File No. 333-233694)) |
| 10.7+ | Form of Director Restricted Stock Unit Award Agreement (incorporated by reference to Exhibit 10.1 of the Form 10-Q of NXP Semiconductors N.V. filed on October 29, 2019) |
| 10.8+ | Form of Restricted Stock Unit Award Agreement (incorporated by reference to Exhibit 10.2 of the Form 10-Q of NXP Semiconductors N.V. filed on October 29, 2019) |
| 10.9+ | Form of Performance Restricted Stock Unit Award Agreement (incorporated by reference to Exhibit 10.3 of the Form 10-Q of NXP Semiconductors N.V. filed on October 29, 2019) |
| 10.10+ | Employment Letter between NXP USA, Inc. and Peter Kelly dated August 17, 2018 and Employment Agreement between NXP Semiconductors N.V. and Mr. P Kelly effective June 19, 2012 (incorporated by reference to Exhibit 10.12 to the Company's Annual Report on Form 10-K of NXP Semiconductors N.V., filed on February 27, 2020) |
| 10.11+ | Summary of MT Change of Control Severance Arrangement (incorporated by reference to Exhibit 10.15 to the Company's Annual Report on Form 10-K of NXP Semiconductors N.V., filed on February 27, 2020) |
| 10.12 | Guaranty, dated as of June 11, 2019, made by NXP Semiconductors N.V. and NXP USA, Inc. and Barclays Bank PLC, as Administrative Agent (incorporated by reference to Exhibit 3 of the Form 6-K of NXP Semiconductors N.V. filed on July 30, 2019) |
| 10.13+ | Management Agreement dated March 5, 2020 between the Company and Kurt Sievers (incorporated by reference to Exhibit 10.1 to the Company's Current Report on Form 8-K of NXP Semiconductors N.V., filed on March 9, 2020) |
| 10.14+ | Secondment Addendum dated March 5, 2020 between NXP Semiconductors Germany GmbH and Kurt Sievers (incorporated by reference to Exhibit 10.2 to the Company's Current Report on Form 8-K of NXP Semiconductors N.V., filed on March 9, 2020) |
| 10.15+ | Employment Agreement dated October 23, 2009 between NXP Semiconductors Germany GmbH and Kurt Sievers, as amended (incorporated by reference to Exhibit 10.4 to the Company's Quarterly Report on Form 10-Q of NXP Semiconductors N.V., filed on April 28, 2020) |
| 10.16+ | Employment Agreement dated March 18, 2013 between NXP Semiconductors N.V. and Steve Owen (incorporated by reference to Exhibit 10.5 to the Company's Quarterly Report on Form 10-Q of NXP Semiconductors N.V., filed on April 28, 2020) |

| 10.17+ | Form of Restricted Stock Unit Award Agreement (incorporated by reference to Exhibit 10.1 to the Company's Quarterly Report on Form 10-Q of NXP Semiconductors N.V., filed on October 27, 2020) |
| 10.18+ | Form of Performance Restricted Stock Unit Award Agreement (incorporated by reference to Exhibit 10.25 to the Company's Annual Report on Form 10-K of NXP Semiconductors N.V., filed on February 25, 2021) |
| 10.19+ | Employment Agreement dated August 25, 2021 between NXP USA, Inc. and Jennifer Wuamett (incorporated by reference to Exhibit 10.1 to the Company's Current Report on Form 8-K of NXP Semiconductors N.V., filed on August 26, 2021) |
| 10.20+ | Employment Agreement dated October 12, 2021 between NXP USA, Inc. and Bill Betz (incorporated by reference to Exhibit 10.1 to the Company's Current Report on Form 8-K of NXP Semiconductors N.V., filed on October 12, 2021) |
| 10.21+ | Form of Performance Restricted Stock Unit Award Agreement (incorporated by reference to Exhibit 10.3 to the Company's Quarterly Report on Form 10-Q of NXP Semiconductors N.V., filed on November 2, 2021) |
| 10.22+ | Employment Agreement dated May 10, 2021 between NXP USA, Inc. and Andy Micallef (incorporated by reference to Exhibit 10.1 to the Company's Quarterly Report on Form 10-Q of NXP Semiconductors N.V. filed on May 3, 2022 |
| 10.23+ | Transition Agreement dated July 24, 2022 between NXP Semiconductors N.V. and Steve Owen (incorporated by reference to Exhibit 10.1 to the Company's Quarterly Report on Form 10-Q of NXP Semiconductors N.V. filed on July 26, 2022) |
| 10.24 | Amended and Restated Revolving Credit Agreement, dated as of August 26, 2022, among NXP B.V., NXP Funding LLC, the several lenders from time to time parties thereto, and Barclays Bank PLC, as administrative agent (incorporated by reference to Exhibit 10.1 to the Company's Current Report on Form 8-K of NXP Semiconductors N.V. filed on August 29, 2022) |
| 10.25 | Amended and Restated Guaranty Agreement, dated as of August 26, 2022, among NXP Semiconductors N.V., NXP USA, Inc. and Barclays Bank PLC, as administrative agent (incorporated by reference to Exhibit 10.2 to the Company's Current Report on Form 8-K of NXP Semiconductors N.V. filed on August 29, 2022) |
| 10.26+ | Form of Performance Restricted Stock Unit Award Agreement (incorporated by reference to Exhibit 10.3 to the Company's Quarterly Report on Form 10-Q of NXP Semiconductors N.V. filed on November 1, 2022) |
| 21.1* | List of Subsidiaries of the Registrant |
| 22.1* | Subsidiary Guarantors and Issuers of Guaranteed Securities |
| 23.1* | Consent of Ernst & Young LLP |
| 31.1* | Rule 13a-14(a) / 15d-14(a) Certification of Chief Executive Officer |
| 31.2* | Rule 13a-14(a) / 15d-14(a) Certification of Chief Financial Officer |
| 32.1* | Section 1350 Certifications of Chief Executive Officer and Chief Financial Officer |
| 101 | The following financial information from the Company's Annual Report on Form 10-K for the year ended December 31, 2022 , formatted in iXBRL (Inline eXtensible Business Reporting Language): (i) Consolidated Statements of Operations; (ii) Consolidated Statements of Comprehensive Income; (iii) Consolidated Balance Sheets; (iv) Consolidated Statements of Cash Flows; (v) Consolidated Statements of Changes in Equity; and (vi) Notes to the Consolidated Financial Statements |
| 104 | Cover Page Interactive Data File (formatted as Inline XBRL and contained in Exhibit 101) |

\* Filed or furnished herewith.

\+ Indicates management contract or compensatory plan or arrangements.

**Item 16. Form 10-K Summary**

Not applicable.

**SIGNATURES**

Pursuant to the requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

Date: March 1, 2023

**NXP Semiconductors N.V.**

By:    /s/ WILLIAM J. BETZ

William J. Betz, Executive Vice President and Chief Financial Officer

110

## Power of Attorney

**KNOW ALL PERSONS BY THESE PRESENTS,** that each person whose signature appears below hereby constitutes and appoints each of Jennifer Wuamett and Timothy Shelhamer, as his or her true and lawful attorney-in-fact and agent, with full power of substitution and re-substitution, for him or her and in his or her name, place and stead, in any and all capacities, in connection with this Annual Report on Form 10-K, to sign any and all amendments to the Form 10-K, and to file the same, with all exhibits thereto, and other documents in connection therewith, with the Securities and Exchange Commission, granting unto said attorneys-in-fact and agents, each acting alone, full power and authority to do and perform each and every act and thing requisite and necessary to be done in and about the premises, as fully to all intents and purposes as he or she might or could do in person, hereby ratifying and confirming all that said attorneys-in-fact and agents, or their substitutes or substitute, may lawfully do or cause to be done by virtue hereof.

Pursuant to the requirements of the Securities Exchange Act of 1934, this report has been signed below by the following persons in the capacities indicated on March 1, 2023.

| | |
|---|---|
| /s/KURT SIEVERS | /s/WILLIAM J. BETZ |
| Kurt Sievers | William J. Betz |
| Executive Director, President and Chief Executive Officer (Principal Executive Officer) | Executive Vice President and Chief Financial Officer (Principal Financial Officer, Principal Accounting Officer) |
| /s/SIR PETER BONFIELD | /s/ANNETTE CLAYTON |
| Sir Peter Bonfield | Annette Clayton |
| Non-executive Director and Chair of the Board | Non-executive Director |
| /s/ANTHONY FOXX | /s/CHUNYUAN GU |
| Anthony Foxx | Chunyuan Gu |
| Non-executive Director | Non-executive Director |
| /s/LENA OLVING | /s/JULIE SOUTHERN |
| Lena Olving | Julie Southern |
| Non-executive Director | Non-executive Director |
| /s/JASMIN STAIBLIN | /s/GREGORY L. SUMME |
| Jasmin Staiblin | Gregory L. Summe |
| Non-executive Director | Non-executive Director |
| /s/KARL-HENRIK SUNDSTRÖM | |
| Karl-Henrik Sundström | |
| Non-executive Director | |

# EXHIBIT 9

EX-10.1 2 fy2020q18kexhibit10_1.htm EXHIBIT 10.1

# MANAGEMENT AGREEMENT

**THIS AGREEMENT IS DATED MARCH 5, 2020 AND MADE BETWEEN:**

(1)     NXP Semiconductors N.V., a public limited liability company with seat in Eindhoven, the Netherlands and address at High Tech Campus 60, the Netherlands, hereby duly represented by Sir Peter Bonfield and Mr. Peter Smitham, as authorized by Board resolution of March 5, 2020, ("**NXP**");

and

(2)     Kurt Sievers, born on April 9, 1969 and residing in Hamburg, Germany, ("**Named Executive Officer**" or "**NEO**").

**BACKGROUND:**

(A)     The expectation is that the Named Executive Officer will be appointed as executive director and member of the board of directors and as President and Chief Executive Officer ("**Executive Director and President/CEO**") of NXP by the general meeting of NXP with effect from May 27, 2020 (the "**Commencement Date**").

(B)     In this agreement, NXP and the Named Executive Officer wish to set out the provisions relating to the Named Executive Officer's performance of his duties and obligations as Executive Director and President/CEO of NXP.

(C)     This agreement is conditional on the appointment of the Named Executive Officer as Executive Director and President/CEO of NXP, as set out in (A).

(D)     The parties acknowledge and expressly determine that, pursuant to article 2:132(3) Dutch Civil Code ("**BW**"), their legal relationship may not be deemed an employment agreement.

(E)     This agreement is an agreement for services as referred to in article 7:400 et seq. BW.

(F)     The parties wish to set out the terms of their legal relationship in this agreement, it being understood that the Named Executive Officer will continue his employment relation with NXP Semiconductors Germany GmbH ("**NXP GmbH**") under his employment contract with NXP GmbH (the "**Contract**") of October 23, 2009, as amended from time to time, together with the secondment addendum ("**Secondment Addendum**") of March 5, 2020 agreed upon between the Named Executive Officer

1

and NXP GmbH and co-signed by NXP, and that the Named Executive Officer shall be seconded to NXP under the Secondment Addendum to fulfil the role of Executive Director and President/CEO of NXP as referred to under (A). If there is any conflict between the terms of this agreement and the Contract and/or the Secondment Addendum, this agreement shall prevail.

**THE PARTIES AGREE AS FOLLOWS:**

**1      DURATION OF THIS AGREEMENT**

**1.1      Duration**

1.1.1      This agreement takes effect on the Commencement Date on the condition that the Named Executive Officer is appointed as Executive Director and President/CEO of NXP, as set out in (A).

1.1.2      This agreement is entered into for the period up to and including the date of NXP's general meeting to be held in the next financial year after the Commencement Date, and ends automatically on that date without prior notice being required.

**1.2      Reappointment**

If NXP's general meeting reappoints the Named Executive Officer as Executive Director and President/CEO of NXP, this agreement will be extended for the period of that reappointment and end automatically without prior notice being required on the date of NXP's general meeting to be held in the next financial year after NXP's general meeting which resolved to reappoint the Named Executive Officer. This is to confirm that, as long as the Named Executive officer is Executive Director and President/CEO of NXP, he will have an employment relationship with NXP GmbH which relationship will be governed by the Contract and the Secondment Addendum.

**2      NOTICE**

**2.1      Notice period**

Either party may terminate this agreement at any time by giving written notice to the other party before the end of a calendar month, with each party being required to give three months' notice. The Named Executive Officer shall resign as Executive Director and President/CEO of NXP with effect from the date on which this agreement ends or has ended in accordance with this Clause 2.1.

**2.2      Urgent cause**

2

If this agreement is terminated in writing for urgent cause, then, notwithstanding Clause 2.1 (*Notice period*), the terminating party will not be bound by a notice period and this agreement will end with immediate effect. For the definition of 'urgent cause', reference is made by way of analogy to articles 7:678 and 7:679 BW. The Named Executive Officer shall resign as Executive Director and President/CEO of NXP with effect from the date on which this agreement ends or has ended in accordance with this Clause 2.2 (*Urgent cause*).

## 3    TERMINATION

### 3.1    Dismissal/resignation

If the Named Executive Officer is dismissed or resigns as Executive Director and President/CEO of NXP, this agreement will end automatically without prior notice being required. This termination will take effect three months after the date on which (a) the general meeting adopts the resolution to dismiss the Named Executive Officer or (b), in the case of resignation, the Named Executive Officer tenders his resignation as Executive Director and President/CEO of NXP.

### 3.2    Urgent cause

Notwithstanding Clause 3.1 (*Dismissal/resignation*), this agreement will end with immediate effect on the date on which (a) the general meeting dismisses the Named Executive Officer as Executive Director and President/CEO of NXP or (b) the Named Executive Officer resigns as Executive Director and President/CEO of NXP if this dismissal or resignation is for urgent cause. For the definition of 'urgent cause', reference is made by way of analogy to articles 7:678 and 7:679 BW.

## 4    SERVICES

### 4.1    Duties and obligations

4.1.1    As the President/CEO of NXP, the Named Executive Officer is a member of NXP's board of directors (the "**Board**"). The parties agree that the Named Executive Officer will perform the duties and obligations (the "**Services**") of Executive Director and President/CEO of NXP with effect from the Commencement Date.

4.1.2    In his capacity as Executive Director and President/CEO of NXP, the Named Executive Officer has all the rights and obligations assigned to and imposed on him by law or under NXP's articles of association. By signing this agreement, the Named Executive Officer declares that he has received a copy of NXP's articles of association and a copy of the Rules governing the Board of NXP, and that he is aware of their contents.

3

4.1.3    The Named Executive Officer shall perform his duties as Executive and President/CEO of NXP properly and shall do his utmost to manage NXP and its affiliates as responsibly as possible.

**4.2    Services for a group company**

On the basis of his position as Executive Director and President/CEO of NXP, the Named Executive Officer may also be asked to act as managing director, general manager or supervisory director of the companies belonging to the group to which NXP belongs, without receiving any additional pay. Without prejudice to what is stated in the Contract, the Named Executive Officer shall resign from these positions no later than on the date on which the position of Executive Director and President/CEO of NXP ends, regardless of the reason for this, or at an earlier date if NXP so wishes, without any payment being due to the Named Executive Officer.

**4.3    Additional activities**

4.3.1    The Named Executive Officer may only accept additional activities, including a supervisory board membership, with the prior written consent of the chairman of NXP's Board. If the nature of the additional activities for which NXP has given its consent changes, the Named Executive Officer shall consult with the chairman of NXP's Board and secure further agreement about this.

4.3.2    On the Commencement Date the Named Executive Officer does not perform any additional activities outside the NXP group.

**5    FEES**

The Named Executive Officer is remunerated for his services as Executive Director and President/CEO by NXP GmbH pursuant to the Contract and the Secondment Addendum. The Named Executive Officer shall not receive any additional payments/compensation from NXP for his services as Executive Director and President/CEO of NXP.

**6    MISCELLANEOUS**

**6.1    Previous agreements**

With exception of the Contract and the Secondment Addendum and all related arrangements explicitly referred to in the Contract or the Secondment Addendum, this agreement replaces all previous agreements between the Named Executive Officer and NXP, or between the Named Executive Officer and subsidiaries or affiliates of NXP.

4

**6.2    Amendments**

Any amendments or additions to this agreement must be agreed in writing between the parties.

**7    APPLICABLE LAW AND JURISDICTION**

**7.1    Applicable law**

Dutch law applies to this agreement.

**7.2    Jurisdiction**

All disputes arising out of or in connection with this agreement, including disputes concerning its existence and its validity, will be submitted to the competent Dutch courts.

[SIGNATURES FOLLOW ON THE NEXT PAGE]

5

**THIS AGREEMENT WAS SIGNED ON THE DATE STATED ON THE FIRST PAGE BY:**


/s/ Sir Peter Bonfield                          /s/ Peter Smitham
NXP Semiconductors N.V.                          NXP Semiconductors N.V.


Name: Sir Peter Bonfield                         Name: Peter Smitham
Title: Chairman of the board of directors        Title: Chairman of the Compensation Committee




/s/ Kurt Sievers
Kurt Sievers

# EXHIBIT 10

EX-10.2 3 fy2020q18kexhibit10_2.htm EXHIBIT 10.2

**SECONDMENT ADDENDUM**

THE UNDERSIGNED:

1. **NXP Semiconductors Germany GmbH**, a company registered and incorporated under the laws of Germany having its principal place of business in Hamburg, hereinafter referred to as 'Employer';

2. **Kurt Sievers**, hereinafter referred to as 'Employee';

Hereinafter together referred to as the 'Parties'.

TAKING INTO CONSIDERATION THAT:

- Employee is employed by Employer on the basis of the contract of employment of October 23, 2009, as amended from time to time, for an indefinite period of time (the "Employment Contract");
- Employer is an affiliated company of NXP Semiconductors N.V. and forms part of the NXP group;
- Employee will be seconded to NXP Semiconductors N.V. ("NXPI") on a full-time basis as of May 27, 2020, subject to, and for the period of, his appointment as executive director and member of the board of directors and president/chief executive officer of NXPI ("Executive Director and President/CEO") by the annual general meeting of shareholders ("AGM") of NXPI (the 'Secondment');

HAVE AGREED AS FOLLOWS:

1. The Secondment takes effect on May 27, 2020 on the condition that Employee is appointed as Executive Director and President/CEO of NXPI by the AGM and ends automatically on the date on which Employee ceases to be Executive Director and President/CEO of NXPI, irrespective of the reason thereof. This is to confirm that, as long as Employee is Executive Director and President/CEO of NXPI, his employment relationship with Employer will be governed by the Employment Contract and this Secondment Addendum;

2. During the Secondment, Employer will make Employee available to NXPI on a full-time basis, to which Employee agrees.

---

3. During the Secondment, Employee will be working under maintenance of the Employment Contract, the provisions of which will remain in full force and effect unless explicitly stipulated otherwise in this Secondment Addendum.

4. Employer will continue to pay Employee's salary and emoluments and continue to execute all relevant employment terms and conditions included in the Employment Contract during the term of the Secondment. During the Secondment, Employee shall receive a gross annual base salary of EUR 1 million including holiday allowance, to be paid in twelve equal monthly instalments at the end of each calendar month, net of the mandatory and agreed withholdings and deductions. In view of, and subject to Employee's appointment as Executive Director and President/CEO of NXPI, Employee will be offered a long term incentive equity grant with a total grant value of US$ 3 million. This award is 30% in the form of Restricted Share Units (RSUs) and 70% in the form of Performance Share Units (PSUs) under the NXPI 2019 Omnibus Incentive Plan. The number of shares will be determined using the closing price of NXPI on the NASDAQ on the first trading day after the publication of NXPI's Q2 quarterly earnings release ("Date of Grant"). Employee will be notified of the official grant and related terms and conditions, and further actions to take in accepting the grant as soon as possible after the Date of Grant. During the Secondment, the salary and emoluments, as well as the terms and conditions of employment of Employee may be adjusted annually by Employer following the review and the instruction of the compensation committee of the board of directors of NXPI. Employee shall be informed in writing of any salary increases awarded to him in this way.

5. In deviation of clause 3.3. of the Employment Contract, during the Secondment the on-target cash incentive percentage for Employee shall be 150% of the base salary, with the maximum annual incentive opportunity to be equal to 200% of the at target cash incentive opportunity. Every year the compensation committee of the board of directors of NXP shall set the targets to be achieved and the variable remuneration applicable to those targets.

6. In deviation of the first sentence of clauses 10.4 and 12.3 of the Employment Contract, Employee shall owe to Employer without any demand or other prior notice a non-recurrent penalty of 100,000 euro for each breach of the confidentiality and non-competition obligations set out in the Employment

---

Contract committed during the term of the Secondment, increased by a recurrent penalty of EUR 10,000 euro per day the breach continues.

7. As per the date of termination of this Secondment Addendum, Employee shall solely be entitled to the terms and conditions of employment as applicable to Employee pursuant to the Employment Contract immediately prior to the date the Secondment takes effect.

8. During the Secondment, Employee shall receive international medical coverage, and annually, he will be entitled to receive a physical examination. Expenses relating to the international medical coverage and the annual physical will be paid for by the Employer.

9. Tax Protection. If Employee is exposed during the Secondment to a total higher income tax payable than he would have paid if he would be exclusively taxable in his home country (i.e. Germany), the excess taxes incurred on his remuneration (excluding his equity income) will be compensated by Employer.
The NXP Group's designated advisor will calculate the possible compensation amount after the filing of the various income tax returns.

10. During the Secondment, Employer's retirement arrangements remain applicable to Employee, and Employee continues to participate in Employer's pensions plan, to the extent permitted by law and in accordance with the rules of such pension plans. The retirement age remains to be in accordance with local rules and practice of Employer.

11. The activities of Employee for NXPI will solely exist of his duties as Executive Director and President/CEO of NXPI. At the latest as per May 27, 2020, Employee shall step down from the board of directors ("*Vorstand*") of Employer, and withdraw from all other functions within Employer.

12. Employer will invoice NXPI for the costs resulting from the Secondment. Invoicing details and agreements will be agreed upon between Employer and NXPI.

13. Employee acknowledges and agrees that if the Secondment terminates, the employment contract between Employee and Employer will also have to be

terminated, unless Employer and Employee mutually agree on another suitable position for Employee with Employer.

14. In deviation of clause 2.5 of the Employment Contract, in the event of termination of the Employment Contract at the initiative of Employer and other than for Cause, simultaneously with the termination of the Secondment Addendum, Employee will be entitled to a fixed gross severance amount of two times the gross annual base salary paid to Employee in the last twelve months (the "Severance Amount"), provided that Employee signs and returns a general release within seven days following the end of the employment. The costs of the notice period (including gross amounts of salary and any other benefits) shall be deducted from the Severance Amount, unless Employee has performed or will perform actual work during the notice period. Any statutory severance entitlements shall be deemed to be included in, or deducted from, the Severance Amount. Clauses 3.4 and 3.4 of the Employment Contract relating to the on-target cash incentive are applicable in the event of termination of the Employment Contract.

15. In the event of termination for Cause, Employee shall not be entitled to the Severance Amount. For the purpose of this Secondment Addendum and the Employment Contract "Cause" shall be understood to be present in case of (i) a material breach by Employee of his contractual or fiduciary obligations owed to Employer or any of its affiliates (including NXPI) to the detriment of Employer or any of its affiliates or their stakeholders (including employees), which breach is of a nature and severity that renders Employee's continued employment unbearable for Employer, or (ii) a breach by Employee of the non-compete and/or non-solicitation and/or confidentiality obligations as set out in the Employment Contract, or (iii) other serious culpable behaviour/act or serious culpable failure to act of Employee. Criminal acts committed by Employee against Employer or any of its affiliates (including NXPI) always qualify as Cause.

16. For the purposes of clause 14 of this Secondment Addendum, "actual work" shall be deemed to include periods of holiday leave and periods of incapacity to work on account of illness or disablement, in so far as such period does not exceed 3 months.

17. In deviation of clause 5 of the Employment Contract, Employee will take vacation at his own discretion ensuring company and business requirements

accordingly. No vacation will be accrued and no unused vacation time will be rolled over from one year to the next and/or paid out at termination.

18. This Addendum is governed by German law.


[SIGNATURES FOLLOW ON THE NEXT PAGE]

Executed in twofold on March 5, 2020

/s/ Peter Smitham                            /s/ Kurt Sievers
**Employer**                                 **Employee**
By: Peter Smitham                            By: Kurt Sievers

**Signed by NXPI,**
**solely for the purpose of acknowledgment**
**of the Secondment of Employee to NXPI**

/s/ Sir Peter Bonfield                       /s/ Peter Smitham

**NXP Semiconductors N.V.**                  **NXP Semiconductors N.V.**
By: Sir Peter Bonfield                       By: Peter Smitham
Chairman of the board of directors           Chairman of the Compensation Committee

# EXHIBIT 11

EXHIBIT 10.4

**NXP** founded by Philips

Mr. Kurt Sievers                                                                   October 23, 2009

Dear Kurt,

On behalf of NXP B.V. ("NXP"), I am pleased to confirm our offer to you for the position of MT
Member NXP Semiconductors as per October 1, 2009. In view thereof, NXP Semiconductors
Germany GmbH ("the Company"), hereby represented by NXP, agrees with the following
contract of employment ("the Agreement").

| 1 | DATE OF COMMENCEMENT OF EMPLOYMENT AND POSITION |
|---|---|

1.1     As per October 1, 2009, you (hereinafter referred to as "Member MT") will be
        appointed as a member of the MT ("Management Team") of NXP, in view of your
        new role as Senior Vice President and General Manager BU Automotive as per
        January 1, 2010.

1.2     The Member MT's main place of employment will be the office of the Company in
        Hamburg, Germany. The Company will be entitled, however, to change the place of
        employment; in such case the Member MT's personal interests and circumstances
        shall, as far as possible, be taken into consideration.

1.3     The Member MT will have a working time of 45 h a week. He shall fully devote his
        working time and working capacity to his position. To the extent his working hours
        will be in excess of normal working hours, he shall not be entitled to any additional
        compensation in respect thereof.

1.4     The Member MT shall fulfil all obligations vested in him by law, laid down in the
        articles of association of the Company, by the applicable corporate governance
        rules and by instructions determined or to be determined in a Board of
        Management or MT regulation.

1.5     The Member MT is obliged to do or to refrain from doing all that officers in similar
        positions should do or should refrain from doing. The Member MT shall fully devote
        himself, his time and his energy to promoting the interest of the Company and its
        group of companies.

1.6     If the Member MT is a member of the board of another company within the group of
        companies on the basis of his position as Member MT (so-called "qq
        directorships"), or if the Member MT is employed in any other position pursuant to
        his position as Member MT (so-called "qq-positions"), he will pay the income
        derived there from to the Company, unless the Company decides otherwise. The
        Company shall hold the Member MT harmless from any tax disadvantage to the
        extent related to such payment to the Company.

1.7     The Member MT acknowledges that he has read, understood and shall adhere to
        the Company's business code of conduct and other guidelines, laid down in any
        Company manual or other codes, as established and amended from time to time.

founded by

EXHIBIT 10.4

founded by Philips

Mr. Kurt Sievers                                                        October 23, 2009

2        DURATION OF THE AGREEMENT AND NOTICE OF TERMINATION

2.1      The Agreement has been entered into for an indefinite period. It must be
         considered to be a continuation of the Member MT's prior employment with any of
         the NXP group companies.

2.2      This agreement shall terminate automatically, without notice being required, on the
         last day of the calendar month preceding the calendar month in which the Member
         MT may claim for a non-reduced state pension.

2.3      Each party may terminate the Agreement as per the end of a calendar month by
         giving written notice, subject to a notice period of six months for the Company and
         three months for the Member MT.

2.4      Upon termination of this agreement the Member MT shall resign from any q.q.
         directorship(s) and/or q.q. position(s) held by him as referred to in article 1.6 of this
         agreement.

2.5      In the event of termination of employment of the Member MT by the Company,
         local labour law shall be decisive for the entitlement to, and the amount, if any, of a
         severance payment.

3        SALARY AND BONUS

3.1      The Member MT shall receive a gross annual base salary of EUR 270,000
         including holiday allowance, to be paid in twelve equal monthly instalments at the
         end of each calendar month, net of the mandatory and agreed withholdings and
         deductions.

3.2      The CEO of the Company shall review annually, at its discretion, if there should be
         an increase in the gross base salary as per April 1 of a relevant year. The Member
         MT shall be informed in writing of any salary increases awarded to him in this way.

3.3      The Member MT will be entitled to participate in the Members MT Incentive
         scheme. The annual incentive targets will be set from year to year by the CEO. The
         gross at target annual incentive amount of which is currently 100% of your fix gross
         salary per annum. For incomplete calendar years the annual incentive will be
         prorated. The current maximum annual incentive opportunity is equal to 200% of
         the at target annual incentive opportunity. Within NXP, the maximum position-
         related annual incentives are fixed by the Board of Management (BoM). Therefore,
         if the BoM decides to introduce changes in the annual incentive scheme related to
         your position, these changes will automatically apply to the Contract and will be
         deemed to form part thereof.

3.4      In case of termination of the Agreement by the Company other than for Cause or,
         by the Court on application of the Company other than for Cause, or in case of
         retirement or death the Company will pay a pro rata payment of the bonus for the
         financial year in which, or shortly after which, the Member MT's employment is
         terminated, provided that the conditions for bonus pay-out are met, which payment
         will be prorated for the period that the Member MT has performed actual work for

founded by

EXHIBIT 10.4

**NXP**
founded by Philips

Mr. Kurt Sievers                                                          October 23, 2009

the Company and whereby the pro rata bonus shall not be paid to the Member MT until the financial results for the relevant year have been determined. In all other situations in which the Agreement ends, or if the Member MT has served notice, no (pro rata) payment of the bonus will be considered and/or made.

3.5    Without prejudice to clause 3.4, if the Member MT has not performed actual work during the full financial year, any bonus paid (if conditions for bonus pay-out are met) shall be pro rata to the part of the financial year during which the Member MT has performed actual work. For the purposes of this article "actual work" shall be deemed to include periods of holiday leave and periods of incapacity to work on account of illness or disablement, in so far as such period does not exceed 3 months.

4      COMPANY CAR

4.1    The Member MT remains to be entitled to the current company car or car allowance as per policy of NXP Germany.

5      HOLIDAYS

5.1    The Member MT shall be entitled to 30 working days vacation per year. In taking vacation, the Member MT shall duly observe the interests of the Company

6      RETIREMENT

The NXP retirement arrangements for NXP Germany remain to be applicable. The retirement age will be in accordance with local rules and practice.

7      DIRECTOR AND OFFICERS LIABILITY INSURANCE

7.1    The Company shall pay the annual contribution of the Company Director and Officers Liability Insurance policy. This insurance shall provide coverage to the Member MT as mentioned in the relevant policy.

8      OTHER BENEFITS

8.1    The current arrangement regarding compensation during long-term illness remain applicable, see also Appendix A.

8.2    Other local benefits might be applicable, based upon local NXP regulation in Germany. These arrangements may only be agreed upon in writing and with regard to the Company, solely when a decision to that effect has been taken by the competent body of the Company, which will be the SVP HRM NXP, Mr P. Kleij.

founded by

EXHIBIT 10.4

Mr. Kurt Sievers                                                                                          October 23, 2009

9          FISCAL ASSISTANCE

9.1        NXP Corporate Fiscal in consultation with Ernst & Young will assist you in the filing
           of your annual tax return.

10         CONFIDENTIALITY AND RETURN OF PROPERTY

10.1       The Member MT may not, either during or after the end of this agreement, use
           confidential information about the Company and its group or affiliated companies
           (collectively referred to as: the "Group") and the Group's activities or products,
           including information about suppliers, customers and other relations, for any other
           purpose than is necessary in connection with the performance of his duties. The
           Member MT shall maintain such information carefully and ensure that third parties
           do not become aware of it other than in accordance with this paragraph 10.1. The
           provisions of this paragraph do not apply if the Member MT is required to use or
           disclose the information by law or pursuant to a court decision.

10.2       With regard to property of the Group, including documents, computer discs and
           other data carriers as well as copies thereof, which come into the Member MT's
           possession in connection with the performance of his duties, the Member MT shall
           not use such property in any other way and shall not keep it any longer than is
           necessary to perform his duties, and the Member MT shall in any event hand over
           or return such property immediately to the Company at the latter's request or, at the
           Member MT's own initiative, if he has not carried out his duties for any reason for
           more than two weeks or the employment has ended.

10.3       If information as referred to in paragraph 10.1 has been stored in a computer
           system of the Member MT or has otherwise been stored in a form which does not
           have to be handed over or returned by the Member MT pursuant to paragraph
           10.2, the Member MT shall not keep that information for any period longer than is
           necessary to perform his duties, and in any event destroy the information
           immediately at the Company's request or, at the Member MT's own initiative, if he
           has not carried out his duties for any reason for more than two weeks or the
           employment has ended.

10.4       If the Member MT is in breach of paragraphs 10.1 to 10.3, he shall owe to the
           Company without any demand or other prior notice a non-recurrent penalty of
           EUR 20,000. The Company shall be entitled to the penalty without prejudice to any
           claim for performance of the obligations set out in paragraphs 10.1 to 10.3.

11         NO ADDITIONAL OCCUPATION

11.1       The Member MT shall refrain from accepting remuneration or time consuming non-
           remunerated work activities with or for third parties or from doing business for his
           own account without the prior written consent of the Company.

EXHIBIT 10.4

Mr. Kurt Sievers                                                                          October 23, 2009

12        NON-COMPETITION

12.1      During this agreement and a period of one year after the end of this agreement the
          Member MT may not, without the Company's prior written consent, directly or
          indirectly, for himself or for others, and against payment or otherwise, in any way
          work for, or be involved or have an interest in, any person, company or
          organisation which conducts activities comparable to or competing with the Group's
          activities. The preceding sentence shall also apply to activities in areas in which the
          Group has become active since the execution of this agreement.

12.2      During this agreement and a period of one year after the end of this agreement the
          Member MT may not, without the Company's prior written consent, directly or
          indirectly, for himself or for others, and against payment or otherwise, in any way
          do business or maintain any form of business contact with, or work for, or be
          involved or have an interest in (future) customers or commercial contacts of the
          Group that were such of the group in the two years preceding the termination of
          employment.

12.3      If the Member MT is in breach of paragraphs 12.1 and 12.2, he shall owe to the
          Company without any demand or other prior notice a non-recurrent penalty of
          EUR 20,000 for each case. The Company shall be entitled to the penalty without
          prejudice to any claim for performance of the obligations set out in paragraphs 12.1
          and 12.2. The Company shall have the right to claim damages in addition to the
          aforementioned penalty.


13        INTELLECTUAL PROPERTY

13.1      With regard to Member MT's inventions German state law will apply. Regarding any
          work results the Member MT without any restrictions concedes all rights of use to
          the company. Any claims so far are paid off by the employer's contractual
          remuneration.


14        GIFTS

14.1      The Member MT shall not in connection with the performance of his duties, directly
          or indirectly, accept or demand commission, contributions or reimbursement in any
          form whatsoever from third parties. This does not apply to customary promotional
          gifts of little value, also taking into consideration provision 1.6 of this agreement.


15        AMENDMENTS

15.1      Amendments to this agreement may only be agreed upon in writing and with regard
          to the Company, solely when a decision to that effect has been taken by the
          competent body of the Company.



EXHIBIT 10.4

Mr. Kurt Sievers                                                        October 23, 2009

16    MISCELLANEOUS

16.1   This is a fully integrated agreement that supersedes all prior agreements, whether
       oral or written, between the Member MT and the Company, its predecessor
       companies or affiliated companies. This Agreement is subject to German law.

16.2   The Data concerning the Member MT will be recorded in one or more personnel
       registration systems.

If you agree with this overview of conditions, you are requested to sign the enclosed copy of
this letter and return the signed document October 31, 2009 at the latest to José Stinis, High
Tech Campus 60 – 3.12, 5656 AG Eindhoven, The Netherlands.

/s/ Mr. R.L Clemmer                                          /s/ Mr. Kurt Sievers
- - - - - - - - - - -                                        - - - - - - - - - - -
Mr. R.L Clemmer                                              Mr. Kurt Sievers
Chief Executive Officer of NXP B.V.

Enclosure: Appendix A – Compensation during long-term illness.

EXHIBIT 10.4

Mr. Kurt Sievers                                                                      October 23, 2009

Appendix A

In the case of a longer period of inability to work due to illness, Mr. Sievers will, from the 7th week until the end of eighteen months, receive a net allowance of the difference between 80% of his net salary and the gross sick pay provided by statutory insurance.  In determining the difference between net salary and gross sick pay the last full month of pay before the illness is determinative.  The gross sick pay from statutory insurance will serve as the correct reference also in the case of privately insured persons.

The company will bear the cost of any taxes due as a result of the above referenced allowance.

The sick pay allowance will only be paid one time for the same illness within a period of 3 months from the beginning of the illness. This contractual obligation will only be due until the end of the employment relationship.

**Kurt Sievers**
**EID 11010222**

Dear Kurt,

Congratulations on your promotion to **President** reporting to me. Your compensation will be adjusted effective 7 September 2018, as described below.

**2018 Base Salary and Annual Bonus Target**

|  | **Current** | **New** |
|---|---|---|
| **Base Salary** | € 525,000 | **€ 665,000** |
| **Merit Increase** |  | **27%** |
| **Annual Bonus Target** | 80% | **100%** |
| **Target Cash Increase** |  | **41%** |
| **Target Total Cash** | **€ 945,000** | **€ 1,330,000** |

Thank you for your contribution in 2018 and your ongoing commitment towards the success of NXP Semiconductors in the future!

Best Regards,

/s/ Rick Clemmer

Rick Clemmer
CEO NXP Semiconductors

**EXHIBIT 12**

Exhibit 21.1

LIST OF SUBSIDIARIES OF THE REGISTRANT.

List of direct and indirect subsidiaries as of December 31, 2022

| Country of incorporation | Name legal entity |
|---|---|
| Australia | Cohda Wireless Pty Ltd. (27%)* |
| Austria | NXP Semiconductors Austria GmbH & Co KG |
| Austria | NXP Semiconductors Austria GmbH |
| Belgium | NXP Semiconductors Belgium N.V. |
| Brazil | NXP Semicondutores Brasil Ltda. |
| Canada | NXP Canada Inc. |
| China | NXP (China) Management Ltd. |
| China | NXP (Chongqing) Semiconductors Co. Ltd. |
| China | NXP Semiconductors (Shanghai) Co., Ltd. |
| China | Datang NXP Semiconductors Co., Ltd (49%)* |
| China | NXP Qiangxin (Tianjin) IC Design Co. Ltd. (51%)* |
| China | NXP Semiconductors (Tianjin) Ltd. |
| Czech Republic | NXP Semiconductors Czech Republic s.r.o. |
| Denmark | NXP Semiconductors Denmark ApS |
| France | NXP Semiconductors France SAS |
| Germany | SMST Unterstützungskasse GmbH |
| Germany | NXP Semiconductors Germany GmbH |
| Germany | Catena Germany GmbH |
| Hong Kong | NXP Semiconductors Asia Hong Kong Limited |
| Hungary | NXP Semiconductors Hungary Ltd. |
| India | NXP India Pvt. Ltd. |
| India | Intoto Software India Pvt. Ltd. |
| Israel | NXP Semiconductors Israel Ltd. |
| Israel | Freescale Semiconductor Israel Ltd. |
| Isreal | NXP Israel Ltd. |
| Japan | NXP Japan Ltd. |
| Korea | NXP Semiconductors Korea Ltd. |
| Malaysia | NXP Malaysia Sdn Bhd. |
| Mexico | NXP Semiconductors México, S. de R.L. de C.V. |
| Netherlands | NXP B.V. |
| Netherlands | NXP Semiconductors Netherlands B.V. |
| Philippines | NXP Philippines, Inc. |
| Romania | NXP Semiconductors Romania Srl |
| Russia | NXP Semiconductors Moscow LLC |
| Singapore | NXP Semiconductors Singapore Pte. Ltd. |
| Singapore | Systems on Silicon Manufacturing Company Pte Ltd (61.2%)* |
| Sweden | NXP Semiconductors Nordic AB |
| Switzerland | Freescale Semiconductor EME&A SA |

| | |
|---|---|
| Taiwan | NXP Semiconductors Taiwan Ltd. |
| Thailand | NXP Manufacturing (Thailand) Ltd. |
| Thailand | NXP Semiconductors (Thailand) Ltd. |
| Turkey | NXP Semiconductors Elektonik Ticaret A.S. |
| United Kingdom | NXP Laboratories UK Ltd. |
| USA | NXP Funding LLC |
| USA | Intoto LLC |
| USA | Omniphy, Inc. |
| USA | Freescale Semiconductor Holdings V, Inc. |
| USA | NXP USA, Inc. |
| USA | Freescale Semiconductor Holding Limited Liability Company |
| Vietnam | NXP Semiconductors Vietnam Co., Ltd. |

\* = joint venture