1  THOMAS M. MCINERNEY, CA Bar No. 162055
   thomas.mcinerney@ogletree.com
2  GRAHAM M. HELM, CA Bar No. 316002
   graham.helm@ogletree.com
3  OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
   One Embarcadero Center, Suite 900
4  San Francisco, CA  94111
   Telephone:    415-442-4810
5  Facsimile:    415-442-4870

6  Attorneys for Defendant
   NXP USA, Inc. (erroneously sued as
7  NXP SEMICONDUCTORS)

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11 ANTOINETTE DICKENS,                     Case No. 5:23-cv-01073-BLF

12            Plaintiff,                    **DEFENDANT NXP USA, INC.'S REPLY IN
                                            SUPPORT OF MOTION TO DISMISS
13       v.                                 PLAINTIFF'S COMPLAINT UNDER
                                            F.R.C.P. 12(B)(6) AND** *FORUM NON
14 NXP SEMICONDUCTORS,                      CONVENIENS*

15            Defendant.                    Date:         November 2, 2023
                                            Time:         9:00 a.m.
16                                          Location:     Via Remote Appearance
                                                          Courtroom 3, San Jose Courthouse
17

18                                          Complaint Filed:  March 9, 2023
                                            Trial Date:       None Set
19                                          Judge:            Hon. Beth L. Freeman

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................1

II. LEGAL ARGUMENT ...........................................................................................2

    A. Dickens' Opposition is Unsupported, and Therefore She Concedes Dismissal is Warranted ...........................................................................2

    B. Dickens Provided No Evidence to Refute Dismissal Under *Forum Non Conveniens* .....................................................................................4

        1. The Private Factors Still Weigh in Favor of Dismissal ..................4

        2. The Public Factors Weigh in Favor of Dismissal...........................7

    C. The FAC Also Fails to State Title VII Claims Under Rule 12...................8

        1. The FAC Still Fails to Allege Sufficient Facts that Dickens Worked for NXP USA ....................................................................8

        2. The FAC Does Not, and Cannot, Adequately Allege Integrated Enterprise ..................................................................9

            i. The FAC Does Not Allege Plausible Facts of Interrelated Operations ..................................................11

            ii. The FAC Does Not Allege Plausible Facts of Common Management ...................................................13

            iii. The FAC Does Not Allege Plausible Facts of Centralized Control of Labor Relations ...........................13

            iv. The FAC Does Not Allege Plausible Facts of Common Ownership or Financial Control .......................15

III. CONCLUSION ....................................................................................................15

i           Case No. 5:23-cv-01073-BLF

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER F.R.C.P. 12(B)(6) AND *FORUM NON CONVENIENS*

1

2

# **TABLE OF AUTHORITIES**

3

**Page(s)**

4

**CASES**

5

*24/7 Customer, Inc. v. Liveperson, Inc.*,
   No. 315CV02897JSTKAW, 2016 WL 6673983 (N.D. Cal. Nov. 14, 2016) ...............................6

6

7

*Adam Technologies LLC v. Well Shin Technology Co., Ltd.*,
   2021 WL 141371 (D.N.J. 2021) ...................................................................................................12

8

*Al-Bustani v. Alger*,
   No. C22-5238JLR, 2023 WL 1778814 (W.D. Wash. Feb. 6, 2023) ........................................3, 8

9

10

*American Title Ins. Co. v. Lacelaw Corp.*,
   861 F.2d 224 (9th Cir. 1988) .........................................................................................................8

11

*by Reid v. Google, Inc.*,
   50 Cal.4th 512 (2010) ..................................................................................................................10

12

*Century Aluminum Co. v. AGCS Marine Ins. Co.*,
   No. 11-CV-02514 YGR NC, 2012 WL 2357446 (N.D. Cal. June 14, 2012) ...............................6

13

14

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
   168 F. Supp. 3d 918 (E.D. La. 2016) ..........................................................................................12

15

16

*Dawson v. One Call Med., Inc.*,
   No. 320CV01188LABKSC, 2021 WL 5513516 (S.D. Cal. Sept. 21, 2021) ................................9

17

*Digital Spectrum Sols. v. Eastman Kodak Co.*,
   No. SACV0700729JVSRNBX, 2008 WL 11340373 (C.D. Cal. Feb. 14, 2008) .........................2

18

19

*Gates Learjet Corp. v. Jensen*,
   743 F.2d 1325 (9th Cir. 1984) .......................................................................................................5

20

*Herrock v. Sutter Health*,
   No. 2:13-CV-00557-MCE, 2014 WL 5501217 (E.D. Cal. Oct. 30, 2014) .................................14

21

22

*Johnson v. LKQ Foster Auto Parts, Inc.*,
   No. 2:15-CV-02413-KJM-AC, 2016 WL 3418341 (E.D. Cal. June 22, 2016) ............................9

23

24

*Kang v. U. Lim America, Inc.*,
   296 F.3d 810 (N.D. Cal. 2002) ...................................................................................................12

25

*Kleiner v. Spinal Kinetics, Inc.*,
   No. 5:15-CV-02179-EJD, 2016 WL 1565544 (N.D. Cal. Apr. 19, 2016) ...................................5

26

27

28

ii               Case No. 5:23-cv-01073-NC

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER
F.R.C.P. 12(B)(6) AND *FORUM NON CONVENIENS*

*Laird v. Capital Cities/ABC, Inc.*,
  68 Cal.App.4th 727 (1998) ............................................................................10, 11, 12, 13

*Leetsch v. Freedman*,
  260 F.3d 1100 (9th Cir. 2001) ..............................................................................4, 7

*Luna v. Universal Studio City Prods. LLLP*,
  No. CV 12-9286 PSG (SSX), 2013 WL 12308198 (C.D. Cal. Aug. 27, 2013) ........10, 11, 13, 15

*McBain v. Behr Paint Corp.*,
  No. 16-CV-07036-MEJ, 2017 WL 1208074 (N.D. Cal. Apr. 3, 2017).........................................3

*Menzel v. Scholastic, Inc.*,
  No. 17-CV-05499-EMC, 2018 WL 1400386 (N.D. Cal. Mar. 19, 2018) ...................................12

*Multiven, Inc. v. Cisco Sys., Inc.*,
  No. C08-05391 JW HRL, 2010 WL 1222310 (N.D. Cal. Mar. 24, 2010) ....................................6

*Reyna v. WestRock Co.*,
  2020 WL 5074390 (N.D. Cal. Aug. 24, 2020) ......................................................................3, 12

*Rubinstein v. SAP AG*,
  No. C 11-06134 JW, 2012 WL 726269 (N.D. Cal. Mar. 1, 2012) ............................................14

*Sightline Payments, LLC v. Everi Holdings Inc.*,
  No. 6:21-CV-01015-ADA, 2022 WL 2078215 (W.D. Tex. June 1, 2022)................................12

*In re Toyota Hybrid Brake Litig.*,
  No. 4:20-CV-127, 2021 WL 2805455 (E.D. Tex. July 6, 2021)................................................12

**STATUTES**

Title VII ..................................................................................................................... *passim*

42 U.S.C.

  § 1981 ......................................................................................................................1

  § 2000e-1(c) .............................................................................................................9

  § 2000e-1(c)(2) .........................................................................................................8

  § 2000e-1(c)(3)(A)-(D) ............................................................................................10

Federal Data Protection Act ...........................................................................................5

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure

  Rule 12................................................................................................................8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Rule 12(b)(6) ................................................................................................................1, 3, 8, 10

Rule 30................................................................................................................................6

DEFENDANT'S REPLY IN SUPPORT OF  MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER
F.R.C.P. 12(B)(6) AND *FORUM NON CONVENIENS*

I.    **<u>INTRODUCTION</u>**

In response to the motion to dismiss filed by NXP USA, Inc. under Rule 12(b)(6) of the Federal Rules of Civil Procedure and the doctrine of *forum non conveniens*, plaintiff Antoinette Dickens effectively acknowledges that her pending complaint is legally deficient and must be dismissed.  For example, she acknowledges at footnote one, page two of brief [2:28] that she had no basis for bringing a claim under 42 U.S.C. § 1981.  Accordingly, the Court should dismiss this claim with prejudice.

With respect to the motion to dismiss based on *forum non conveniens*, Dickens offers no admissible evidence to oppose this motion.  Instead, her opposition brief relies entirely on new allegations contained in her ***unfiled*** proposed First Amended Complaint ("FAC") that, in many instances, are based only on "information and belief."  Even if the Court were to consider on this motion her unsubstantiated proposed amended complaint for which she has not received leave to file, which it should it, none of her proposed new allegations rebut the facts that Germany is unequivocally the proper forum for Dickens' lawsuit and that the public and private factors considered on a motion based on *forum non conveniens* weigh heavily in support of dismissal.

With respect to her Title VII claims, Dickens also fails to oppose the Rule 12(b)(6) motion to dismiss directed at this claim based on her allegations contained in the pending complaint.  Instead, she relies entirely on the proposed allegations contained in her unfiled proposed FAC, an apparent concession to the deficiency of her pending complaint.  Moreover, if this Court were to consider her unfiled proposed FAC in ruling on this motion, which it should not, the allegations in the unfiled FAC actually support dismissal with prejudice of her Title VII claim as she still will fail to state a claim under Title VII.  In other words, the unfiled FAC cannot save Dickens from the fatal allegations in her Complaint because the FAC still fails to allege facts sufficient to show she was employed by NXP USA or that her actual employer, NXP Semiconductors Germany GmbH ("NXP Germany"), was an integrated enterprise with NXP USA.  The unfiled FAC instead only offers conclusory, contradictory, and implausible facts that NXP USA somehow "controlled" NXP Germany because she believes (1) ***unnamed*** "senior management" residing in the U.S. were key decision makers that oversaw and managed the global operations of NXP Germany and NXP

1   USA's indirect parent company, NXP Semiconductors N.V. ("NXP NV"); and (2) based on

2   **information and belief** only, David Case, who is based in the U.S., was the final decision maker on

3   all matters relating to hiring, assignment, and termination in Dickens' division in Germany.

4   However, Dickens does not allege (because she cannot) that NXP USA employed those unnamed

5   "senior management" officials, nor does she allege any specifics concerning **how** NXP USA

6   supposedly "dictated" corporate and employee relations policy for all NXP entities, or that Case

7   had any involvement whatsoever with Dickens' employment or the alleged discrimination or other

8   events that allegedly occurred entirely in Germany or elsewhere in Europe.  To the contrary,

9   Dickens' division did not report, directly or indirectly, to Case, and therefore Case had no authority

10  to make final decisions concerning hiring, assignments, or termination with Dickens' division.  In

11  short, nobody employed by NXP USA, including U.S. HR, had ultimate authority to make

12  decisions about Dickens' employment.

13          Accordingly, the Court should grant the Motion to Dismiss without leave to amend.

14  **II.    LEGAL ARGUMENT**

15          **A.    Dickens' Opposition is Unsupported, and Therefore She Concedes Dismissal is
                    Warranted**

16

17          Dickens effectively concedes the Court should dismiss her Complaint because she admitted

18  she opposes the Motion to Dismiss based exclusively on the "facts alleged in the First Amended

19  Complaint[.]"  (ECF No. 36 ("Opp.") at 7:1-8:5.)[1]  Indeed, the "relevant facts" supporting the

20  Opposition cite only to new and amended allegations in the inoperative, unfiled FAC.

21  Accordingly, Dickens' arguments and claims based on allegations in the unfiled FAC are not

22  grounds to deny the Motion to Dismiss.  *See Digital Spectrum Sols. v. Eastman Kodak Co.*, No.

23  SACV0700729JVSRNBX, 2008 WL 11340373, at *2 (C.D. Cal. Feb. 14, 2008).

24          Although Dickens objects to NXP USA's use of the incorporation by reference doctrine,

25  she does not actually dispute she had an employment contract with NXP Germany, she had no such

26  ───────────────────

27  [1] Pincites are to the ECF page numbers.  For ease of comparison between the Complaint and FAC,

28  Defendant's citations to the FAC are to the redline FAC attached as Exhibit 3 to ECF No. 37-1.

contract with NXP USA, and she worked for NXP Germany.  (Opp. at 7:8-9 ("Plaintiff does not work for solely a German company.").)  NXP USA properly relied on the incorporation by reference doctrine because the doctrine "is intended to 'prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based.'"  *Al-Bustani v. Alger*, No. C22-5238JLR, 2023 WL 1778814, at *3 (W.D. Wash. Feb. 6, 2023) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)).  Here, the incorporation by doctrine is necessary to present evidence that the employment contract referred to in the Complaint, in the relevant facts, and within nine of her Counts, is her employment contract with NXP Germany. (ECF No. 1 ("Compl."), ¶¶ 10, 262, 270, 276, 283, 308.)  Dickens' contention that NXP USA "d[id] not identify any place in the Complaint, in which Plaintiff references or incorporates any of the documents attached to its Motion to Dismiss" (Opp. at 25:21-22) is patently false as the Motion cited to the employment contract multiple times; plus, Dickens referenced it six times in her Complaint.  (ECF No. 21 at 11:21-23, 21:1-3; Compl., ¶¶ 10, 262, 270, 276, 283, 308.)

Moreover, that Dickens did not identify an actual legal entity as her employer in her pending complaint or the unfiled FAC, never offered evidence in her Opposition disputing she signed an employment agreement with NXP Germany, and is now seeking leave to file a FAC that attempts to conceal references to her employment contract, further shows the implausibility of her argument that NXP USA employed her.  *Reyna v. WestRock Co.*, 2020 WL 5074390, *1, n.1 (N.D. Cal. Aug. 24, 2020) (an entity named in the caption without alleging any claims against that entity is improper).  Indeed, Dickens' argument in her Opposition that "[she] has no basis upon which to believe or disbelieve the accuracy or authenticity of [her employment contract]" highlights the gamesmanship and legal implausibility of her claims.  (Opp. at 25:27-28.)

Similarly, Dickens does not actually dispute she reported to managers employed by NXP Germany and did not report (directly or indirectly) to any managers or executives of NXP USA. Dickens attempts to overcome these fatal flaws by objecting to NXP USA's request for judicial notice of NXP NV's SEC filings.  The Court, however, can take judicial notice of SEC 10-K filings as evidence of a company's subsidiaries, corporate directors, officers, and employees.  *McBain v. Behr Paint Corp.*, No. 16-CV-07036-MEJ, 2017 WL 1208074, at *3 (N.D. Cal. Apr. 3, 2017).

1    The Court should dismiss the Complaint because Dickens does not dispute the pending

2    Complaint fails to state a claim under Title VII and that the allegations in the original Complaint

3    and evidence submitted by NXP USA satisfy *forum non conveniens*.  As discussed below, even if

4    the Court considers the allegations and arguments based on the FAC where appropriate, the FAC

5    still favors dismissal based on *forum non conveniens* and still fails to state claims under Title VII.

6        **B.**        **Dickens Provided No Evidence to Refute Dismissal Under *Forum Non***
              ***Conveniens***

7

8        **1.**        **The Private Factors Still Weigh in Favor of Dismissal**

9        The private factors courts consider are: (1) the residence of the parties and witnesses,

10    (2) the forum's convenience to the litigants, (3) access to physical evidence and other sources of

11    proof, (4) whether unwilling witnesses can be compelled to testify, (5) the cost of bringing witnesses

12    to trial, (6) the enforceability of the judgment, (7) any practical problems or other factors that

13    contribute to an efficient resolution.  *Leetsch v. Freedman*, 260 F.3d 1100, 1104-05 (9th Cir. 2001).

14        Regarding the first private factor (residence of parties and witnesses), Dickens does not

15    dispute the vast majority of witnesses to her claims of employment discrimination in Germany are

16    not located in the U.S.  Rather, she focuses on the convenience of a handful of individual whom

17    she claims were the "ultimate decision makers in this case" that reside in the U.S.  The only one of

18    these witnesses who allegedly had knowledge of her discrimination claims is Sherri Alexander,

19    who is identified in her unfiled FAC as "Head of Diversity and Inclusion." [2]  (FAC, ¶ 154, 156.)

20    Sievers unquestionably resided in Hamburg and worked in Europe, as set forth in the request for

21    judicial notice.  (ECF No. 21-5 ("RJN"), Exs. 8-11.)  Dickens' attempt to tie this case to the U.S.

22    by alleging that additional witnesses were based in the U.S. only illustrates her forum-shopping as

23    none of these witnesses had any relevance to her claims.  For example, she refers to David Case

---

[2] Alexander is vaguely identified, based solely on information and belief, as having been "given

substantial power to intercede in personnel matters."  Even if true, no facts are alleged establishing

the scope of any such authority, who supposedly gave her that authority, and whether she engaged

in any conduct related to alleged harassment or discrimination affecting Dickens in Germany.

1   ("Head of Global Security"), Nick Meadows (identified as reporting to Case), Nick Elvrum (same),

2   Chris Jensen ("NXP's Chief Human Resources Officer"), and Pam Brown as witnesses to her

3   claims, but the FAC does not allege that any of those witnesses had any direct or plausible

4   involvement in her claims.  (FAC at ¶¶ 26, 35, 186, 187.)

5   　　　　Moreover, Dickens' allegation that her managers Gordon Caffrey and John Boggie reported

6   to David Case "by way of" Nick Meadows and Nick Elvrum, is flatly untrue.  (FAC, ¶ 26.)

7   Caffrey and Boggie did not report to Case, Meadows, or Elvrum, and Dickens' organization did not

8   report to Case.  (Declaration of Peter van Disseldorp in Support of Motion to Dismiss, ¶ 3.)  In

9   short, contrary to the vague allegations in the FAC based primarily on "information and belief" that

10  various U.S.-based employees supposedly had ultimate authority over the terms and conditions of

11  Dickens' employment, she offers no actual evidence of this.  Instead, all the material witnesses live

12  outside of the U.S, which establishes this forum's inconvenience to the litigants.  *Gates Learjet*

13  *Corp. v. Jensen*, 743 F.2d 1325, 1335-36 (9th Cir. 1984); *Kleiner v. Spinal Kinetics, Inc.*, No. 5:15-

14  CV-02179-EJD, 2016 WL 1565544, at *7 (N.D. Cal. Apr. 19, 2016).

15  　　　　Regarding private factors three and four (obtaining evidence), Dickens' Opposition also

16  does not address the legal and procedural challenges of obtaining evidence in Germany for use in a

17  U.S. civil legal proceeding.  (ECF No. 21 at 30.)  Likewise, Dickens does not dispute the

18  evidentiary issues with obtaining employee personnel data under the German Federal Data

19  Protection Act and the European Union's General Data Protection Regulation.  (*Id.*)  Rather,

20  Dickens flippantly claims "in the post-COVID world, a great deal of testimony is taken via online

21  platforms" and "[t]hese are not the eighties, and records are not kept in hard copy."  (Opp. at

22  22:16-17, 22:22-24.)  While it is true cooperative witnesses may be willing to testify via online

23  platforms, she does not address the procedural challenges to compel unwilling witnesses to testify

24  nor does she acknowledge the obvious inconvenience caused by time zone differences (Germany is

25  9 hours ahead of the SF Bay Area) and the disruptions to business operations.  Additionally, while

26  Dickens claims that "[a]ll of the documents in this case are held and maintained in NXP's records

27  and communication database," she does not explain the basis for this absurdly overbroad claim nor

28  does she explain **where** those records are stored.  (*Id.* at 22:22-24.)

1    Regarding factor seven, the administrative difficulties of litigating in this Court favor

2  dismissal because almost all the relevant witnesses live in Europe.  Dickens' counter-arguments

3  rely on cases that either support NXP USA's position or are irrelevant.  In *Century Aluminum Co.*

4  *v. AGCS Marine Ins. Co.*, No. 11-CV-02514 YGR NC, 2012 WL 2357446 (N.D. Cal. June 14,

5  2012), the issue concerned a motion for leave to take additional depositions beyond the limit under

6  Rule 30 of the Federal Rules of Civil Procedure, including two proposed deponents located in

7  Iceland.  *Id.* at *2.  The court denied the request as to the two proposed deponents in Iceland

8  because "the burden and expense of the proposed discovery outweighs its likely benefit."  *Id.* at 3.

9  Dickens appears to rely on *24/7 Customer, Inc. v. Liveperson, Inc.*, No. 315CV02897JSTKAW,

10  2016 WL 6673983, at *1 (N.D. Cal. Nov. 14, 2016), which had nothing to do with depositions of

11  foreign witnesses.  Finally, Dickens' reliance on *Multiven, Inc. v. Cisco Sys., Inc.*, No. C08-05391

12  JW HRL, 2010 WL 1222310, at *1 (N.D. Cal. Mar. 24, 2010), undermines her arguments.  In

13  *Multiven*, the defendant noticed the depositions of the plaintiff's executives, who were also

14  individual counter-defendants that lived in Switzerland.  *Id.*  Those witnesses objected to the

15  depositions taking place in the U.S. because they could not enter the U.S. legally due to the lack of

16  appropriate visas, and the defendant rejected their offer to appear for deposition via video

17  conference or in person in Canada or in another country where they may legally enter.  *Id.*

18  Accordingly, the witnesses filed a motion to modify the deposition notices to change the location

19  of the depositions.  *Id.*  Since Swiss law forbids depositions from taking place in Switzerland

20  without prior approval from the Swiss government and the parties agreed Canada did not restrict

21  the foreign depositions of ***willing*** witnesses, the Court granted the motion and ordered the

22  depositions to occur in Canada.  *Id.* at **1-2.

23    Here, *Multiven* highlights the administrative challenges of conducting international

24  discovery because the parties had to engage in motion practice, including disputes over cost, even

25  though the witnesses were willing to appear for deposition and travel to other countries.  The court

26  in *Multiven* did not address the challenges that may arise when witnesses are ***unwilling*** to appear

27  for deposition at the time and place selected by the noticing party.  Dickens simply assumes all

28  witnesses will voluntarily travel to California or appear for deposition via video conference, all

1  witnesses can legally enter the U.S., and no conflict of law issues exist.

2  **2.    The Public Factors Weigh in Favor of Dismissal**

3  The public factors courts consider are: (1) the local interest in the lawsuit, (2) the court's

4  familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the

5  court, and (5) the costs of resolving a dispute unrelated to a particular forum. *Leetsch*, 260 F.3d

6  at 1105.

7  Regarding the first factor, Dickens provides no legal support for her argument that

8  Germany has no local interest in this case. However, Germany unquestionably has an interest in

9  deciding the issues in this case because Germany has its own laws prohibiting discrimination,

10  harassment, retaliation, and unequal pay, and has an interest in determining whether NXP

11  Germany, as Dickens' employer, complied with such laws involving Dickens' German

12  employment. Regarding the second factor, it is hard to argue (and Dickens does not even address)

13  against the fact that German courts are eminently more qualified to adjudicate German legal issues

14  involving German employment.

15  Regarding the third factor, Dickens similarly cites no legal authority or evidence to support

16  her position that this case would not impose a burden on a local jury. Dickens' argument and the

17  allegations in the unfiled FAC evidence forum-shopping because the only persons with alleged ties

18  to the U.S. had nothing to do with Dickens' claims. According to Dickens, the only relation a

19  California jury has to this litigation is that "the people of California **actually do care** that

20  companies that profit from doing business here abide by principles of employment equality and fair

21  play"—not that her claims arose in California. (Opp. at 24:13-15 (emphasis in original).) Dickens

22  does not dispute that Germany provides an adequate alternative forum because Germany has anti-

23  discrimination laws and offers a satisfactory remedy. Rather, Dickens seeks to avoid bringing her

24  claims in Germany because "a jury in Germany [] would struggle to understand Plaintiff's claims

25  in this case" and "German courts do not have a grasp on the nuances of historic and systemic race

26  discrimination, and the intersectionality of race and gender at issue in this case," and therefore

27  "[n]either German courts, nor German jurors would have the basis to appreciate the impact of that

28  sort of harassment on a Black American woman." (*Id.* at 10:19-22, 24:16-18, 25:7-10.) Those

1   (offensive) assertions indicate Dickens' belief that a California jury would be more sympathetic to

2   her claims than a German jury.  That is quintessential forum-shopping.

3                   **C.    The FAC Also Fails to State Title VII Claims Under Rule 12**

4            The Complaint should be dismissed without leave to amend because the proposed unfiled

5   FAC still fails to allege fact sufficient to show, as required by Title VII, that she worked overseas

6   for NXP USA or that NXP USA controlled NXP Germany.  42 U.S.C. § 2000e-1(c)(2) (Title VII

7   "shall not apply with respect to the foreign operations of an employer that is a foreign person not

8   controlled by an American employer.").

9                   **1.    The FAC Still Fails to Allege Sufficient Facts that Dickens Worked for**
10                          **NXP USA**

11           Against the fatal allegations in the Complaint, Dickens attempts to cure her Complaint by

12   relying on the new or amended allegations in the FAC that contradict the fundamental bases of her

13   original Complaint.  The FAC, however, does not allege any plausible facts that NXP USA

14   employed her to survive a Rule 12(b)(6) motion.

15           ***First***, Dickens attempts to get around the judicial admission in her Complaint that NXP

16   Germany employed her pursuant to an employment contract (Compl., ¶ 10) by eliminating

17   reference to that employment contract in her FAC.  FAC at ¶¶ 10, 302; *see American Title Ins. Co.*

18   *v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings and pretrial

19   orders, unless amended, are considered judicial admissions conclusively binding on the party who

20   made them.")  This tactical maneuver appears intended to circumvent the incorporation by

21   reference doctrine, which "is intended to 'prevent plaintiffs from surviving a Rule 12(b)(6) motion

22   by deliberately omitting documents upon which their claims are based.'"  *Al-Bustani v. Alger*, No.

23   C22-5238JLR, 2023 WL 1778814, at *3 (W.D. Wash. Feb. 6, 2023) (quoting *Swartz v. KPMG*

24   *LLP*, 476 F.3d 756, 763 (9th Cir. 2007)).  Nevertheless, the FAC still alleges Dickens' claims arose

25   pursuant to "her employment contract[.]"  (FAC at ¶¶ 310, 316, 323, and 350.)

26           ***Second***, Dickens similarly attempts to avoid the judicial admission in her Complaint that

27   NXP Germany employed her by now alleging in the FAC that NXP NV—the ultimate parent

28   company of NXP Germany and NXP USA, and not named as a Defendant in this action—was her

employer doing business in the U.S.  (FAC at ¶¶ 1, 6, 16.)  Dickens alleged in the original

Complaint that "Defendant is… registered in the state of Delaware," but now she alleges in the

FAC that "Defendant is… registered in the Netherlands, with wholly owned subsidiaries in the

United States, Germany, Taiwan, and several other countries" and is publicly traded on a U.S.

stock exchange.  (*Id.*, ¶¶ 1, 33.)  Those allegations refer to the parent corporation, which evidences

another apparent tactic to create a connection with the U.S and cannot upend her judicial admission

that she was employed by NXP Germany.

>	*Finally*, Dickens attempts to prevent NXP USA from relying on judicial notice to show her
managers in Germany did not report to management of NXP USA by eliminating reference to
specific management of NXP USA.  In the Complaint, she alleged her managers in Germany
reported up to "CEO Kurt Sievers" [sic], who she claimed is in San Jose, California.  (FAC, ¶ 4.)
Because the corporate filings properly subject to judicial notice reflect that Sievers resides in
Germany, is employed by NXP Germany, and is CEO of NXP NV, headquartered in the
Netherlands, Dickens now alleges in the FAC that her managers in Germany "reported to"
*unnamed* "leaders in the United States" – some of whom worked for NXP NV.  (*Id.*; RJN, Exs. 8-
11.)  Yet, Dickens does not identify who are these supposed leaders or if any of them actually
worked for NXP USA or controlled NXP Germany.

>	However, based on the facts alleged in her Complaint, FAC, and those that are subject to
judicial notice and incorporation by reference, Dickens cannot plausibly allege that she was
employed by NXP USA during the events that are the subject of this lawsuit.  *See Johnson v. LKQ
Foster Auto Parts, Inc.*, No. 2:15-CV-02413-KJM-AC, 2016 WL 3418341, at *3 (E.D. Cal. June
22, 2016); *Dawson v. One Call Med., Inc.*, No. 320CV01188LABKSC, 2021 WL 5513516, at *2
(S.D. Cal. Sept. 21, 2021).

## 2.   The FAC Does Not, and Cannot, Adequately Allege Integrated Enterprise

>	Although Dickens' Opposition concedes that the Complaint does not allege an integrated
enterprise between NXP USA and NXP Germany, the FAC still fails to allege plausible facts that
NXP USA controlled NXP Germany for purposes of Title VII exemption.  *See* 42 U.S.C.

§ 2000e-1(c).  "Control" is determined by the four factor integrated enterprise test: (1) the interrelation of operations; (2) the common management; (3) the centralized control of labor relations (the most important factor); and (4) the common ownership or financial control.  42 U.S.C. § 2000e-1(c)(3)(A)-(D); *Luna v. Universal Studio City Prods. LLLP*, No. CV 12-9286 PSG (SSX), 2013 WL 12308198, at **3-6 (C.D. Cal. Aug. 27, 2013); *Laird v. Capital Cities/ABC, Inc.*, 68 Cal.App.4th 727, 737-741 (1998), *disapproved of on other grounds by Reid v. Google, Inc.*, 50 Cal.4th 512 (2010).

The decision in *Luna v. Universal Studio City Prods. LLLP* is instructive in showing why the Court should dismiss Plaintiff's Title VII claims without leave to amend.  *Luna v. Universal Studio City Prods. LLLP*, 2013 WL 12308198.  In *Luna*, the court granted the defendants' Rule 12(b)(6) motion because the plaintiff failed to allege sufficient facts that the defendants were an integrated enterprise under *Laird*, *supra*.  To support this theory, the plaintiff alleged the defendant NBCUniversal is a wholly-owned subsidiary of the defendant Comcast, and NBCUniversal owns the defendants Vivendi, UCSP, Universal Parks & Resorts, Universal Studio, and USCL.  *Id.* at *4. The court found that the plaintiff did not allege facts sufficient to show an interrelation of operations factor because allegations (1) that the defendants' names were listed on a paycheck was insufficient to show who financed the paycheck; and (2) that Comcast executives "weigh in on, make decisions, direct, and establish the policies and procedures of NBCUniversal" were conclusory allegations since the plaintiff's complaint "does not specify ***which*** executives make policies for the subsidiaries, nor does it specify the scope of the executives' authority or the policies implemented."  *Id.* (emphasis in original).

Similarly, the court found that allegations "that various, ***unspecified*** Comcast executives oversee NBCUniversal and make decisions regarding NBCUniversal's policies and procedures" was insufficient to show common management.  *Luna*, 2013 WL 12308198 at *5 (emphasis added).  Such allegations "do not suggest that the executives did not respect [the other defendants'] separate corporate identities."  *Id.* (citing *Rhodes v. Sutter Health*, No. CIV 2:12-0013 WBS DAD, 2012 WL 662462, at *6 (E.D. Cal. Feb. 28, 2012 ("The Complaint alleges no facts suggesting that individuals with roles at both GMG and SGMF did not respect defendants' separate corporate

identities or that Sutter Health or SGMF are so intertwined in GMG's operations as to justify holding them liable alongside GMG as a single employer.")).  The plaintiff also failed to allege sufficient facts of a centralized control of labor relations based on conclusory allegations that (1) the plaintiff worked for all the defendants; (2) Comcast had "necessary control over decision-making, direction, and policies and procedures"; and (3) the defendants managed the plaintiff's working conditions.  *Id.*  The plaintiff failed to allege detail of any purported "joint decisions made by Defendants."

### i.        The FAC Does Not Allege Plausible Facts of Interrelated Operations

"To make a sufficient showing of interrelation of operations, a plaintiff must allege facts that suggest that the ***parent*** has exercised control to a degree that exceeds the control normally exercised by a parent corporation." *Luna*, 2013 WL 12308198, *4 (emphasis added and internal quotes omitted); *Laird*, 68 Cal. App. 4th at 737 (plaintiff has a "heavy burden" to "hold a parent corporation liable" because the "strong presumption that a parent company is not the employer of its subsidiary's employees.").  Dickens cannot show an interrelation of operations because NXP USA is not the parent corporation of NXP Germany.  The FAC concedes, and NXP NV's SEC filings confirm, that NXP USA and NXP Germany are both subsidiaries of NXP NV—not that NXP Germany is a subsidiary of NXP USA.  (FAC, ¶ 16; RJN, Ex. 12.)

Regardless, the new allegations of supposed interrelated operations are conclusory and insufficient to show NXP USA exercised an abnormal degree of control over NXP Germany.  The allegation that "Defendant made no distinction between its subdivisions and entities, routinely and seamlessly placing people from offices in Asia on European projects, people in Europe on U.S. projects" does not specify ***who*** from NXP USA made those decisions, the scope of those persons' authority, ***who*** employed the people that moved offices, of that NXP USA financed the paychecks of NXP Germany employees.  (FAC, ¶ 28.)  Although the Dickens alleges "important management decisions" were made in the U.S. (*id.*, ¶ 25) such as "decisions about resources and budgets were driven by United States based leadership in San Jose" (*id.*, ¶ 15), the FAC does not identify ***what*** those decisions were, ***who*** made the decisions, or ***who*** employed the decision makers.

Moreover, that "all NXP employees have an email address of NXP.com" does not show that NXP USA controlled NXP Germany.  (FAC, ¶ 31.)  Affiliated companies commonly use the same URL in their email addresses, but this alone is not indicia of control sufficient to establish that NXP USA had interrelated operations with NXP Germany.  *See*, *e.g*., *Laird*, 68 Cal. App. 4th at 739 (*citing to Frank v. U.S. West, Inc*., 3 F.3d 1357, 1363 (10th Cir. 1993); *Adam Technologies LLC v. Well Shin Technology Co., Ltd*., 2021 WL 141371, *8 (D.N.J. 2021) (slip op.) (the same email address, without specific allegations of how one entity controlled the other, is not enough to state a claim based on a theory of veil piercing); *Reyna*, 2020 WL 5074390, **2-4 (allegation of common policies among affiliate entities that refer to employer as "WestRock" when all affiliate names include "WestRock" is insufficient to established centralized control); *Sightline Payments, LLC v. Everi Holdings Inc*., No. 6:21-CV-01015-ADA, 2022 WL 2078215, at *5 (W.D. Tex. June 1, 2022) (corporate defendants' use of unified social media account, one website, and same domain name in email addresses insufficient to find "alter ego"); *In re Toyota Hybrid Brake Litig*., No. 4:20-CV-127, 2021 WL 2805455, at *5 (E.D. Tex. July 6, 2021) (declining to find alter ego involving Toyota subsidiaries even though group of companies all presented themselves as "Toyota"); *In re Chinese-Manufactured Drywall Prods. Liab. Litig*., 168 F. Supp. 3d 918, 937 (E.D. La. 2016) (the sharing of a common logo and part of a common name does not evince alter ego status).  NXP USA objects to Dickens' argument that NXP "has one website" because the FAC does not allege that, but regardless, having one website does not show control.  (Opp. at 16:18)

The FAC also fails to allege other non-conclusory facts of interrelated operations.  *See Kang v. U. Lim America, Inc.*, 296 F.3d 810, 815 (N.D. Cal. 2002) (interrelated operations depends on factors such as whether the companies operated at separate locations, filed separate tax returns, held separate director and shareholder meetings, conducted separate banking, purchased good separately, entered into lease agreements separately, and were separately managed).  Dickens' allegation based on information and belief that "NXP NV has delegated corporate and employee relations policy to its wholly owned subsidiary, NXP USA" is conclusory and fails to state the facts on which that belief is based.  (FAC, ¶ 18)  Although "facts may be alleged upon information and belief, that does not mean conclusory allegations are permitted." *Menzel v. Scholastic, Inc.*, No.

1    17-CV-05499-EMC, 2018 WL 1400386, at *2 (N.D. Cal. Mar. 19, 2018) (allegations "on

2    information and belief must still be 'based on factual information that makes the inference of

3    culpability plausible[.]'").  Again, the FAC fails to allege critical facts such as **which** policies, **who**

4    delegated that authority to NXP USA, and **how** NXP USA implemented such policies with respect

5    to NXP Germany's employees.  As set forth in *Laird* and the cases cited above, the mere fact that

6    affiliated entities use common policies (FAC, ¶ 34) or use the same name in dealing with the public

7    (*id.*, ¶ 31) are insufficient to show interrelated operations.  *Laird*, 68 Cal. App. 4th at 739-40.

8            **ii.        The FAC Does Not Allege Plausible Facts of Common

9                         Management**

10           "Factors that indicate common management are evidence that an employee serves as a

11   manager of both corporations or evidence that a manager of one company influenced day-to-day

12   managerial decisions of the other company."  *Luna*, 2013 WL 12308198, *5.

13           Dickens does not allege that her managers were employed by both NXP USA and NXP

14   Germany.  To the contrary, the FAC alleges she had an employment contract with her employer

15   (which incorporates by reference her employment contract with NXP Germany), that she worked in

16   Hamburg, and that she reported to managers in Germany.  (FAC, ¶¶ 4, 13, 40, 310, 316, 323, 350).

17   The FAC fails to allege any facts supporting her "information and belief" that "Case was the final

18   decision maker on all matters related to hiring, assignment and termination of personnel in his

19   division."  (*Id.*, ¶ 26.)  The FAC does not allege critical facts such as **who** employed Case, the

20   scope of his authority, or specifics about **what** important management decisions Case made

21   concerning Dickens' employment such as assigning her work or overseeing her work.  In fact, the

22   remaining allegations show Case had no involvement with Dickens' employment.  Dickens claims

23   in her Opposition that "[Case] is resident in the United States, and reports directly to the CEO of

24   the parent Company, Mr. Seivers (sic)," but the FAC does not allege that reporting relationship and

25   the documents subject to judicial notice show Sievers is the CEO of NXP NV.  (Opp. at 16:24-25.)

26           **iii.       The FAC Does Not Allege Plausible Facts of Centralized Control

27                        of Labor Relations**

28           There are no allegations that anyone employed by NXP USA in the U.S. hired Dickens,

                                                           13

1   managed her employment, paid her, or discriminated against her.  Because NXP Germany—not

2   NXP USA—hired and employed Dickens, the only plausible inference of the allegation that

3   "Plaintiff reported to NXP managers in Germany" is that those managers were not employees of

4   NXP USA.  Dickens does not allege NXP USA employed Christoph Herbst (who initially managed

5   and hired her) or any of her subsequent managers.  To the extent Dickens alleges Case was the final

6   decision maker concerning her employment, those allegations are undermined by her allegations that

7   Herbst was the person who hired her and that her subsequent managers made all the key decisions

8   concerning her job duties, work assignment, performance reviews, and promotional decisions.

9        Dickens also fails to allege facts to support her "information and belief" or conclusory

10   allegations that (1) HR staff in the U.S. decided not to promote her and local HR business partners

11   do not have that authority (FAC, ¶¶ 204, 210); (2) HR staff in the U.S. determined her

12   compensation (*id.*, ¶ 206); and (3) "NXP NV has delegated corporate and employee relations

13   policy to its wholly owned subsidiary, NXP USA" (*id.*, ¶ 18).  *See Rubinstein v. SAP AG*, No. C

14   11-06134 JW, 2012 WL 726269, at *8 (N.D. Cal. Mar. 1, 2012) (allegations that German parent

15   corporation's Chief Human Resources Officer and Labor Relations Director had authority over all

16   of the U.S. subsidiary corporation's employees and failed to promote and investigate plaintiff's

17   claims was insufficient to establish claims against German corporation under the integrated

18   enterprise test).  Moreover, the fact that the FAC does not allege NXP USA has any ownership

19   stake in NXP Germany—since two entities are both merely indirect subsidiaries of the same parent

20   corporation—undermines any notion that NXP USA has any authority to control the hiring or

21   firing of NXP Germany's employees.  *Herrock v. Sutter Health*, No. 2:13-CV-00557-MCE, 2014

22   WL 5501217, at *5 (E.D. Cal. Oct. 30, 2014) (affiliate relationship, "even if one assumes for

23   argument's sake that the entities are viewed as linked," is insufficient).

24        Accordingly, Dickens is unable to establish that that any entity other than NXP Germany

25   employed her or otherwise controlled the terms and conditions of her employment in Germany.

26   //

27   //

28   //

**iv.    The FAC Does Not Allege Plausible Facts of Common Ownership or Financial Control**

As confirmed by *Luna*, the factor of "'common ownership or control [by itself] is never enough to establish parent liability.'"  *Luna*, 2013 WL 12308198, at *6 (quoting *Laird*, 68 Cal. App. 4th at 738).   Although the FAC alleges NXP USA and NXP Germany have common ownership, the FAC only alleges a single conclusory fact of financial control.  The FAC merely alleges, without any reference to actual evidence, that "decisions about resources and budgets were driven by United States based senior leadership in San Jose."  (FAC, ¶ 15.)  Again, this vague allegation in the FAC does not identify *who* made those decisions, the scope of authority of such persons to make such decisions, or *which entity* employed such persons.  Presumably this allegation is based, at least in part, on Dickens' objectively false claim that Sievers was employed in San Jose, which is disproven by the documents for which this Court should take judicial notice. (RJN, Exs. 9-11.)

NXP USA also objects to Dickens' unsupported arguments that: (1) "the actual operations are managed out of their headquarters in California and Texas.  Those functions include, but are not limited to directing business functions, onboarding of clients, setting of fee schedules, development of business lines, allocation of personnel and resources to projects, supervision of contract execution, fixing budgets and establishing revenue targets" (Opp. at 18:1-6); (2) NXP USA's operations are analogous to the internal business operations of JP Morgan Chase Investments (*id*. at 18:9-18); and (3) "actual revenue generation is achieved collaboratively through global teams" (*id*. at 18:23-24).  No allegations in the FAC support these speculative arguments.

## III.    CONCLUSION

Based on the foregoing, NXP USA respectfully requests the Court grant the Motion to Dismiss without leave to amend.

//

//

//

//

1

2

DATED:  August 2, 2023

OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.

3

4

5

6

7

By:  /s/ Graham M. Helm
     THOMAS M. MCINERNEY
     GRAHAM M. HELM
     Attorneys for Defendant
     NXP USA, Inc. (erroneously sued as
     NXP SEMICONDUCTORS)

8

9

56705190.v2-OGLETREE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER
F.R.C.P. 12(B)(6) AND *FORUM NON CONVENIENS*