THOMAS M. MCINERNEY, CA Bar No. 162055
thomas.mcinerney@ogletree.com
GRAHAM M. HELM, CA Bar No. 316002
graham.helm@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
One Embarcadero Center, Suite 900
San Francisco, CA  94111
Telephone:    415-442-4810
Facsimile:    415-442-4870

Attorneys for Defendant
NXP USA, Inc. (erroneously sued as
NXP SEMICONDUCTORS)

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTOINETTE DICKENS,<br><br>             Plaintiff,<br><br>      v.<br><br>NXP SEMICONDUCTORS,<br><br>             Defendant. | Case No. 5:23-cv-01073-BLF<br><br>**DEFENDANT NXP USA, INC.'S OPPOSITION TO PLAINTIFF ANTOINETTE DICKENS' MOTION FOR LEAVE TO AMEND THE COMPLAINT**<br><br>Date:         December 21, 2023<br>Time:        9:00 a.m.<br>Location:   Courtroom 3, San Jose Courthouse<br><br>Complaint Filed: March 9, 2023<br>Trial Date:         None Set<br>Judge:              Hon. Beth L. Freeman |

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................1

II. FACTUAL BACKGROUND ..................................................................................1

    A. Dickens Worked in Germany for NXP Germany, a Foreign Corporation Based in Germany ........................................................................1

    B. Dickens Claims Her Managers Engaged in Unlawful Conduct ...................2

    C. Dickens Filed Her Complaint Based on Alleged Conduct Occurring in Europe ...........................................................................................................3

III. LEGAL ARGUMENT ............................................................................................3

    A. Dickens' Proposed Claims Under Title VII Are Futile ................................4

        1. Dickens Worked for NXP Germany, Not NXP USA ........................4

        2. The FAC Does Not Sufficiently Allege an Integrated Enterprise .............................................................................................6

            i. No Plausible Facts of Interrelated Operations ......................6

            ii. No Plausible Facts of Common Management .....................8

            iii. No Plausible Facts of Centralized Control of Labor Relations .............................................................................8

            iv. No Plausible Facts of Common Ownership or Financial Control ..................................................................................9

    B. Dickens Seeks to Amend in Bad Faith .........................................................9

IV. CONCLUSION .....................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*American Title Ins. Co. v. Lacelaw Corp.*,
   861 F.2d 224 (9th Cir. 1988) .................................................................................................5

*Buchanan v. Watkins & Letofsky, LLP*,
   30 F.4th 874 (N.D. Cal. 2022) ................................................................................................4

*Chiu v. Mann*,
   No. C 02-4590 VRW, 2003 WL 716247 (N.D. Cal. Feb. 24, 2003) .......................................6

*Genentech, Inc. v. Abbott Lab'ys*,
   127 F.R.D. 529 (N.D. Cal. 1989) ............................................................................................3

*Hernandez v. DMSI Staffing, LLC.*,
   79 F. Supp. 3d 1054 (N.D. Cal. 2015), *aff'd sub nom. Hernandez v. DMSI Staffing, LLC*, 677 F. App'x 359 (9th Cir. 2017) ..........................................................5, 9

*Herrock v. Sutter Health*,
   No. 2:13-CV-00557-MCE, 2014 WL 5501217 (E.D. Cal. Oct. 30, 2014) ..............................9

*Johnson v. LKQ Foster Auto Parts, Inc.*,
   No. 2:15-CV-02413-KJM-AC, 2016 WL 3418341 (E.D. Cal. June 22, 2016) .......................6

*Kang v. U. Lim America, Inc.*,
   296 F.3d 810 (N.D. Cal. 2002) ...............................................................................................7

*Kaur v. Singh*,
   2014 WL 2208114 (E.D. Cal. May 28, 2014) .....................................................................5, 9

*Laird v. Capital Cities/ABC, Inc.*,
   68 Cal. App. 4th 727 (1998) ...........................................................................................6, 7, 8

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
   194 F.3d 980 (9th Cir. 1999) ..................................................................................................4

*Luna v. Universal Studio City Prods. LLLP*,
   No. CV 12-9286 PSG (SSX), 2013 WL 12308198 (C.D. Cal. Aug. 27, 2013) ...............6, 8, 9

*Menzel v. Scholastic, Inc.*,
   No. 17-CV-05499-EMC, 2018 WL 1400386 (N.D. Cal. Mar. 19, 2018) ...............................7

*Moore v. Kayport Package Express*,
   885 F.2d 531 (9th Cir. 1989) ..............................................................................................3, 4

*Perez v. DXC Tech. Servs. LLC*,
   No. 17-CV-06066-BLF, 2020 WL 5517276 (N.D. Cal. Sept. 14, 2020) ................................6

*Reyna v. WestRock Co.*,
   2020 WL 5074390 (N.D. Cal. Aug. 24, 2020) ................................................................. 4, 7

*Rubinstein v. SAP AG*,
   No. C 11-06134 JW, 2012 WL 726269 (N.D. Cal. Mar. 1, 2012) ....................................... 8

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ............................................................................................ 5

*United States v. Corinthian Colleges*,
   655 F.3d 984 (9th Cir. 2011) ............................................................................................ 4

**STATUTES**

42 U.S.C.

   § 2000e-1(c)(2) ............................................................................................................ 4, 6

   § 2000e-1(c)(3)(A)-(D) ..................................................................................................... 6

Title VII ................................................................................................................... 1, 3, 4, 6

Section 1981 ............................................................................................................................. 1

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure

   Rule 12(b)(6) ................................................................................................................. 1, 5

   Rule 15(a)(2) ...................................................................................................................... 3

## I. INTRODUCTION

Plaintiff Antoinette Dickens, a resident of Germany, is a former employee of NXP Semiconductors Germany GmbH ("NXP Germany") in Hamburg who, in order to forum-shop her lawsuit for jurisdiction in California, filed this employment discrimination lawsuit in this District against a non-existent entity (dubbed "NXP Semiconductors) and served NXP Germany's U.S. affiliate, NXP USA, Inc. ("NXP USA"), a company for which she never worked.  Because she recognizes that NXP USA's pending Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure and *Forum Non Conveniens* (ECF No. 21) will completely dispose of her meritless lawsuit, Dickens now seeks leave to amend her pending Complaint.  While she acknowledges that her Section 1981 claim must now be dismissed (ECF No. 36 at 8, n. 1), her proposed Title VII amendments are still futile and fail to establish an actionable claim.

Because Title VII only applies outside this country to U.S. citizens working for U.S. companies or to employment with foreign companies that are part of an integrated enterprise with U.S. companies, she attempts to add allegations, primarily on "information and belief," to establish that NXP Germany and NXP USA are an integrated enterprise.  But her new allegations are conclusory, contradictory, and implausible.  For example, she alleges that unnamed "senior management" in the U.S. are supposedly involved in all global decisions, but she fails to allege who these executives were, how they controlled these decisions, and whether they were even employed by NXP USA.  She simply cannot avoid the fact, established by her employment contract properly incorporated by reference into her first amended complaint ("FAC"), that she worked in Germany for a separate and distinct company from NXP USA.  The Court should not countenance this blatant forum-shopping.

## II. FACTUAL BACKGROUND

### A. Dickens Worked in Germany for NXP Germany, a Foreign Corporation Based in Germany

Dickens negotiated and executed her written employment agreement with NXP Germany in January 2018 while in Germany.  (Declaration of Florian Hartwich ("Hartwich Dec."), ¶ 5, Ex. 1 (NXP USA was not a party to the contract).)  This employment contract stated that her "place of

work shall be Hamburg," the locale where she lived, worked, and reported to NXP managers. (*Id.*; ECF No. 37-1, Ex. 2 ("FAC") at ¶¶ 4, 13, 99.) NXP Germany is registered and incorporated under the laws of Germany and is headquartered in Germany. (RJN, Exs. 4, 5.)

To the contrary, NXP USA is a United States corporation formed and registered in Delaware and headquartered in Texas. (Request for Judicial Notice ("RJN"), Exs. 2, 3.) No officers of NXP Germany are officers of NXP USA. (RJN, Exs. 3, 5.) Kurt Sievers, the CEO Dickens alleges is based in San Jose, California, is in fact the CEO of foreign corporation NXP Semiconductors N.V. ("NXP NV"), an employee of NXP Germany seconded to NXP NV, and he works and resides in Europe. (FAC, ¶¶ 1, 36-38; RJN, Exs. 8-11.) NXP NV is incorporated and headquartered in the Netherlands and is the indirect parent company of NXP USA. (RJN, Exs. 8, 12.)

### B. Dickens Claims Her Managers Engaged in Unlawful Conduct

In both the original Complaint and FAC, Dickens did not allege any plausible facts of unlawful conduct that occurred in California. (FAC, ¶ 8.) Rather, all of the events giving rise to her claims occurred in either NXP Germany's Hamburg office (where she worked) or in the Netherlands. (*Id.* at ¶¶ 4, 13, 204, 205.)

Specifically, Dickens claims her "NXP managers in Germany"—Gordon Caffrey, John Boggie, Matthias Wagner, Gabor Hornyak, and Peter Van Disseldorp—discriminated and harassed her based on her race and gender beginning "when Plaintiff first arrived in Hamburg" and entirely while she *in Europe* and . (FAC at ¶¶ 4, 19, 24, 43, 59, 117, 259, 275-371.) For example, Caffrey and Boggie allegedly made unwelcomed comments to Dickens "*in* Plaintiff's *presence*" at her Hamburg office. (FAC at ¶¶ 85, 102-108, 111-113, 277, 278, 329, 330 (emphasis added).) Wagner allegedly engaged in unwelcomed conduct "*in*[] Plaintiff's *office*[.]" (*Id.* at ¶¶ 59, 60, 67, 281-285, 333 (emphasis added).) Hornyak allegedly engaged in unwelcomed conduct "a few days *before* Plaintiff" traveled on vacation to the U.S., and in other conduct that allegedly occurred *in Hamburg* and *in the Netherlands*. (*Id.* at ¶¶ 162, 165, 174, 175 (emphasis added), 233-236.) Van Disseldorp, residing in the Netherlands, supposedly engaged in unwelcomed conduct while Dickens was recovering from a surgery *in Germany*. (*Id.* at ¶¶ 259, 263, 264.) She further alleges that Caffrey and Hornvak denied

her promotions *in Germany*.  (FAC at ¶¶ 93, 94, 96, 97, 135-138, 164, 171-174).

The FAC also alleges Dickens raised complaints to an HR staffer in Hamburg (FAC at ¶ 77), the Workers' Council in Germany (*id.* at ¶¶ 126, 131, 152, 171, 178, 188, 229), and the HR teams in Germany and the Netherlands (*id.* at ¶¶ 151-154, 157, 167, 169, 179, 185, 199-201, 211, 217, 229-232), but Dickens finds fault with all these individuals and organizations, believing they did not respond appropriately.  (*Id.* at ¶¶ 82, 173, 199-203, 214, 215, 222, 224, 231, 232.)[1]  All of these events, either explicitly or by reasonable implication based on the allegations, occurred in Germany or the Netherlands, and these events had zero connection to the U.S.

### C. Dickens Filed Her Complaint Based on Alleged Conduct Occurring in Europe

NXP USA filed its Motion to Dismiss in part on the grounds that Dickens failed to state a claim under Title VII because (1) she failed to identify or make any allegations against NXP USA; (2) NXP USA never employed Dickens, and therefore Dickens did not work overseas for an American employer; and (3) Dickens did not allege that NXP USA and NXP Germany were an integrated enterprise.  (ECF No. 21 at 20:24-6, 23:4-6.)  On July 12, 2023, Dickens filed her Opposition to the Motion to Dismiss based exclusively on the facts alleged in the ***not yet*** filed proposed FAC and other unsupported facts.  (ECF Nos. 36, 37.)

Dickens now seeks leave to file the FAC, which attempts to artfully plead around these facts with conclusory, immaterial, and contradictory allegations.

## III. LEGAL ARGUMENT

Under FRCP Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave."  *Id.*; *Genentech, Inc. v. Abbott Lab'ys*, 127 F.R.D. 529, 530 (N.D. Cal. 1989).  Courts look to the following factors to determine whether to permit amendment: undue delay, bad faith or dilatory motive, futility of amendment, prejudice to the opposing party, and repeated failure to cure deficiencies by previous amendments.  *Moore v. Kayport Package*

---

[1] Dickens also alleges she met by video conference with Sherry Alexander, "the Head of Diversity and Inclusion," to discuss her concerns, but Alexander indicated that she "would reach out to Lars Reger [], who was located in Hamburg[.]"  (*Id.*, at ¶¶ 155, 157, 159 (emphasis added).)

*Express*, 885 F.2d 531, 538 (9th Cir. 1989).  "Leave to amend need not be given if a complaint, as amended, is subject to dismissal."  *Moore*, 885 F.2d at 538.  Under a futility analysis, the court determines if the complaint's "deficiencies can be cured with additional allegations that are '***consistent with*** the challenged pleading' and ***do not contradict*** the allegations in the original complaint."  *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (emphasis added and citations omitted); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) ("Where the legal basis for a cause of action is tenuous, futility supports the refusal to grant leave to amend.").

### A. Dickens' Proposed Claims Under Title VII Are Futile

Dickens' Title VII claims are futile because NXP USA never employed her or controlled her employer NXP Germany.  Title VII extends limited protection to American citizens working overseas for ***American employers*** or for foreign persons controlled by American employers.  42 U.S.C. § 2000e-1(c)(2) (Title VII "shall not apply with respect to the foreign operations of an employer that is a foreign person not controlled by an American employer.").  Dickens does not dispute that NXP Germany is a "foreign person" and not an "American employer" due to it being incorporated and headquartered in Germany.  (RJN, Exs. 4-7; *see* ECF No. 36; *Buchanan v. Watkins & Letofsky, LLP*, 30 F.4th 874, 878 (N.D. Cal. 2022) (the exemption for the "foreign operations of an employer that is a foreign person" means "a corporation whose place of incorporation is a foreign country.").)

#### 1. Dickens Worked for NXP Germany, Not NXP USA

The FAC fails to state Title VII claims against NXP USA because 1) she fails to identify or make any allegations specifically against NXP USA, and 2) Dickens did not work overseas for an American employer because NXP USA never employed her.  *Reyna v. WestRock Co.*, 2020 WL 5074390, *1, n.1 (N.D. Cal. Aug. 24, 2020) (a named defendant is not a party to a lawsuit if the complaint does not allege any claims against that party).  As with the Complaint, the FAC evasively alleges her claims against a generic and non-existent entity "NXP Semiconductors," to avoid identifying an actual entity against which it is brought.  (FAC at 2:2-6.)  Nevertheless, the FAC still alleges Dickens' claims arose pursuant to "her employment contract[.]"  (FAC at ¶¶ 310,

316, 323, 350.)  Per her contract, Dickens was employed by NXP Germany to work in Hamburg, Germany, which is consistent with her allegations that she "resides and works for Defendant in its Hamburg, Germany office" and "reported to NXP managers in Germany[.]"  (Hartwich Dec., ¶ 5, Ex. 1; FAC at ¶ 4.)  Despite all of this, Dickens attempts to pursue her claims against NXP USA.

Against these fatal allegations, Dickens attempts to avoid an adverse ruling on the Motion to Dismiss by asserting new or amended allegations that contradict the fundamental bases of her original Complaint.  *See Kaur v. Singh*, 2014 WL 2208114, **8, 11 (E.D. Cal. May 28, 2014); *Hernandez v. DMSI Staffing, LLC.*, 79 F. Supp. 3d 1054, 1059 (N.D. Cal. 2015), *aff'd sub nom. Hernandez v. DMSI Staffing, LLC*, 677 F. App'x 359 (9th Cir. 2017).  **First**, Dickens attempts to get around the judicial admission in her Complaint that she had an NXP Germany employment contract by eliminating some references to her employment contract in her FAC to circumvent the incorporation by reference doctrine.  FAC, ¶¶ 10, 302; *see American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988); *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (the incorporation by reference doctrine, which is intended to "prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based.").

**Second**, she alleges a new theory that NXP NV—the ultimate parent company that she does not name as a party to this action—does business in the U.S. while employing her.  (FAC, ¶¶ 1, 6, 16.)  However, the original Complaint alleged "Defendant is… registered in the state of **Delaware**," whereas the FAC now alleges "Defendant is… registered in the **Netherlands**, with wholly owned subsidiaries in the United States [and] Germany" and is publicly traded on a U.S. stock exchange.  (*Id.*, ¶¶ 1, 33 (emphasis added).)  Those allegations refer to the parent corporation, not the company with which she had her employment agreement, which falsely evidences another improper tactic to create a connection with the U.S.  (RJN, Exs. 2, 3, 8, 12.)

**Finally**, Dickens attempts to prevent NXP USA from relying on judicial notice to show her managers in Germany did not report to management of NXP USA by eliminating references to specific management team members with NXP USA.  In the Complaint, she alleged her managers in Germany reported up to "CEO Kurt Seivers", who she claimed lived and worked in San Jose, California.  (FAC at ¶ 4.)  Because the corporate filings properly subject to judicial notice reflect

1  that Sievers in reality resides in Germany, is employed by NXP Germany, and is CEO of NXP NV,
2  Dickens now alleges in the FAC that her mangers in Germany "reported to" unnamed and
3  unidentified "leaders in the United States". (RJN, Exs. 8-11; FAC, ¶ 4.)  Dickens does not identify
4  who are these supposed leaders or if any of them actually worked for NXP USA or controlled NXP
5  Germany.

6      However, based on the facts alleged in her Complaint, FAC, and those that are subject to
7  judicial notice, Dickens simply cannot plausibly allege that she was employed by NXP USA during
8  the events that are the subject of this lawsuit.  *Johnson v. LKQ Foster Auto Parts, Inc.*, No. 2:15-
9  CV-02413-KJM-AC, 2016 WL 3418341, at *3 (E.D. Cal. June 22, 2016).

    **2.    The FAC Does Not Sufficiently Allege an Integrated Enterprise**

11      Title VII may only apply to the foreign operations of a foreign employer if that foreign
12  employer is controlled by an American employer.  42 U.S.C. § 2000e-1(c)(2); *see Chiu v. Mann*,
13  No. C 02-4590 VRW, 2003 WL 716247, at *3 (N.D. Cal. Feb. 24, 2003).  "Control" is determined
14  by the four factor integrated enterprise test: (1) the interrelation of operations; (2) the common
15  management; (3) the centralized control of labor relations (the most important factor); and (4) the
16  common ownership or financial control.  42 U.S.C. § 2000e-1(c)(3)(A)-(D); *Luna v. Universal
17  Studio City Prods. LLLP*, No. CV 12-9286 PSG (SSX), 2013 WL 12308198, at **3-6 (C.D. Cal.
18  Aug. 27, 2013) (granting motion to dismiss because the plaintiffs' failed to allege an integrated
19  enterprise theory); *Perez v. DXC Tech. Servs. LLC*, No. 17-CV-06066-BLF, 2020 WL 5517276, at
20  *5 (N.D. Cal. Sept. 14, 2020) (same).  "Corporate entities are presumed to have separate
21  existences, and the corporate form will be disregarded only when the ends of justice require this
22  result."  *Laird v. Capital Cities/ABC, Inc.*, 68 Cal. App. 4th 727, 737 (1998).

        **i.    No Plausible Facts of Interrelated Operations**

24      "To make a sufficient showing of interrelation of operations, a plaintiff must allege facts
25  that suggest that the ***parent*** has exercised control to a degree that exceeds the control normally
26  exercised by a parent corporation."  *Luna*, 2013 WL 12308198, *4 (emphasis added and internal
27  quotes omitted).  Dickens cannot show an interrelation of operations because NXP USA is not the
28  parent corporation of NXP Germany.  The FAC concedes, and the documents properly subject to

judicial confirm, that NXP USA and NXP Germany are both subsidiaries of the same parent corporation—not that NXP Germany is a subsidiary of NXP USA. (FAC at ¶ 16; RJN, Ex. 12.)

Regardless, the new allegations of supposed interrelated operations are conclusory and insufficient to show NXP USA exercised an abnormal degree of control over NXP Germany. The allegation that "Defendant made no distinction between its subdivisions and entities, routinely and seamlessly placing people from offices in Asia on European projects, people in Europe on U.S. projects" does not specify *who* from NXP USA made those decisions, the scope of those persons' authority, *who* employed the people that moved offices, of that NXP USA financed the paychecks of NXP Germany employees. (FAC, ¶ 28.) Although the Dickens alleges "important management decisions" were made in the U.S. (*id.*, ¶ 25) such as "decisions about resources and budgets were driven by United States based leadership in San Jose" (*id.*, ¶ 15), the FAC does not identify *what* those decisions were, *who* made the decisions, or *who* employed the decision makers.

Moreover, that "all NXP employees have an email address of NXP.com" does not show that NXP USA controlled NXP Germany. (FAC, ¶ 31.) Affiliated companies commonly use the same URL in their email addresses, but this alone is not indicia of control sufficient to establish that NXP USA had interrelated operations with NXP Germany. *See*, *e.g.*, *Laird*, 68 Cal. App. 4th at 739 (*citing to Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1363 (10th Cir. 1993)); *Reyna*, 2020 WL 5074390, **2-4.

The FAC also fails to allege other non-conclusory facts of interrelated operations. *See Kang v. U. Lim America, Inc.*, 296 F.3d 810, 815 (N.D. Cal. 2002) (factors of interrelated operations include whether the companies operated at separate locations, filed separate tax returns, held separate director and shareholder meetings, conducted separate banking, purchased good separately, entered into lease agreements separately, and were separately managed). Dickens' allegation based on information and belief that "NXP NV has delegated corporate and employee relations policy to its wholly owned subsidiary, NXP USA" is conclusory and fails to state the facts on which that belief is based. (FAC, ¶ 18.) Although "facts may be alleged upon information and belief, that does not mean conclusory allegations are permitted." *Menzel v. Scholastic, Inc.*, No. 17-CV-05499-EMC, 2018 WL 1400386, at *2 (N.D. Cal. Mar. 19, 2018). Again, the FAC fails to

allege critical facts such as which policies, who delegated that authority to NXP USA, and how NXP USA implemented such policies with respect to NXP Germany's employees. And, as set forth in *Laird*, the mere fact that affiliated entities use common policies or use the same name in dealing with the public are insufficient to show interrelated operations. (FAC, ¶¶ 31, 34.)

### ii. No Plausible Facts of Common Management

"Factors that indicate common management are evidence that an employee serves as a manager of both corporations or evidence that a manager of one company influenced day-to-day managerial decisions of the other company." *Luna*, 2013 WL 12308198, *5. Here, Dickens does not allege her managers were employed by both NXP USA and NXP Germany. To the contrary, the FAC alleges she entered into a contractual relationship with her employer (contracted with NXP Germany), worked in Hamburg, and reported to managers in Germany. (FAC at ¶¶ 4, 13, 40, 310). Dickens' allegation "[o]n information and belief" that "Case was the final decision maker on all matters related to hiring, assignment and termination of personnel in his division" (*id.*, ¶ 26) is not supported by any critical facts such as **who** employed Case, the scope of his authority, or **what** important management decisions Case made that impacted Dickens' employment. The remaining allegations show Case had no involvement with Dickens' employment.

### iii. No Plausible Facts of Centralized Control of Labor Relations

There are no allegations that anyone employed by NXP USA in the U.S. hired her, managed her employment, paid her, or discriminated against her. Because NXP Germany—not NXP USA—hired and employed Dickens, the only plausible inference of the allegation that "Plaintiff reported to NXP managers in Germany" is that those managers were not employees of NXP USA. It follows that her subsequent managers made all the key decisions concerning her job duties, work assignment, performance reviews, and promotional decisions. The FAC also fails to allege supporting facts to support her "information and belief" that (1) HR staff in the U.S. decided not to promote her and local HR business partners do not have that authority (FAC at ¶ 204); and (2) "NXP NV has delegated corporate and employee relations policy to its wholly owned subsidiary, NXP USA" (*id.*, ¶ 18). *Rubinstein v. SAP AG*, No. C 11-06134 JW, 2012 WL 726269, at *8 (N.D. Cal. Mar. 1, 2012) (allegations that German parent corporation's Chief Human

Resources Officer and Labor Relations Director had authority over all of the U.S. subsidiary corporation's employees and failed to promote and investigate plaintiff's claims was insufficient to establish claims against German corporation under the integrated enterprise test). The simple fact that NXP Germany and NXP USA are affiliates under the same parent corporation, without more, is insufficient to establish centralized control of labor relations. *Herrock v. Sutter Health*, No. 2:13-CV-00557-MCE, 2014 WL 5501217, at *5 (E.D. Cal. Oct. 30, 2014).

### iv. No Plausible Facts of Common Ownership or Financial Control

The factor of "'common ownership or control [by itself] is never enough to establish parent liability.'" *Luna*, 2013 WL 12308198, at *6 (quoting *Laird*, 68 Cal. App. 4th at 738). Although the FAC alleges common ownership, the FAC only alleges a single conclusory fact of financial control. The FAC merely alleges, without any factual support, that "decisions about resources and budgets were driven by United States based senior leadership in San Jose." (FAC at ¶ 15.) Again, the FAC does not identify *who* made those decisions, the scope of authority of such persons to make such decisions, or *which entity* employed such persons. Presumably this allegation is based, at least in part, on the objectively false claim that Kurt Sievers was employed in San Jose, which is disproven by the documents for which this Court may take judicial notice. (RJN, Exs. 9-11.)

### B. Dickens Seeks to Amend in Bad Faith

The FAC evidences Dickens' bad faith in bringing this Motion because she (1) alleges new or amended facts that are conclusory, contradictory, and/or implausible for the sole purpose of avoiding an adverse ruling on NXP USA's pending Motion to Dismiss; (2) those same facts show Dickens has engaged in forum-shopping; and (3) the timing of this Motion forces NXP USA to preview potential future motion to dismiss arguments if the Court grants the Motion to Dismiss with leave to amend. The sum of these procedural tactics manifest her bad faith.

Denial of a motion to amend is proper when the movant seeks amendment in bad faith. *Hernandez v. DMSI Staffing, LLC.*, 79 F. Supp. 3d 1054, 1059 (N.D. Cal. 2015). Evidence of bad faith includes forum-shopping and other procedural gamesmanship where amendment appears motivated to avoid an adverse ruling on a pending motion. *Id.*; *Kaur v. Singh*, 2014 WL 2208114, **8, 11 (E.D. Cal. May 28, 2014).

Here, the FAC evidences Dickens' bad faith because she now alleges implausible and conclusory facts that NXP USA employed her and that NXP USA is an integrated enterprise with NXP Germany, as detailed above.  Dickens' failure to allege sufficient plausible facts that NXP USA controlled NXP Germany show Dickens bring this Motion to avoid an adverse ruling on NXP USA's Motion to Dismiss.  Indeed, Dickens has already used those allegations to support her Opposition to NXP USA's Motion to Dismiss.

Moreover, those allegations also evidence bad faith forum-shopping in light of the fact that the persons she alleged had ties to the U.S. (*e.g.*, Sherry Alexander, Kurt Sievers) either did not discriminate against her or were indisputably not based in the U.S.  And, ironically for someone claiming discriminatory treatment, she offers patronizing and prejudiced tropes with respect to her fellow German residents by arguing that "the people of California *actually do care*…[about] equality and fair play" while "a jury in Germany [] would struggle to understand Plaintiff's claims in this case" because "German courts do not have a grasp on the nuances of historic and systemic race discrimination, and the intersectionality of race and gender at issue in this case." (ECF No. 36 at 24-25 (emphasis in original).)

## IV.   CONCLUSION

Based on the foregoing, NXP USA respectfully requests the Court deny this Motion.

DATED: August 3, 2023

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By:  /s/ Graham M. Helm
  THOMAS M. MCINERNEY
  GRAHAM M. HELM
  Attorneys for Defendant
  NXP USA, Inc. (erroneously sued as NXP SEMICONDUCTORS)

57545765.v2-OGLETREE